## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **MARK HAMMERVOLD,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 4:20-cv-00165** |
| **DIAMONDS DIRECT USA OF DALLAS, LLC, DAVID BLANK, DIAMOND CONSORTIUM, INC. d/b/a THE DIAMOND DOCTOR, and JEWELERS MUTUAL INSURANCE COMPANY,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## <u>DEFENDANT DIAMOND DIRECT USA OF DALLAS, LLC'S</u>
## <u>MOTION TO DISMISS AND BRIEF IN SUPPORT</u>

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

John M. Barcus
Texas Bar No. 24036185
john.barcus@ogletree.com
Jeff T. Leslie
Texas Bar No.24091294
jeff.leslie@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  (214) 987-3800
Fax:  (214) 987-3927

**ATTORNEYS FOR DEFENDANT DIAMONDS DIRECT USA OF DALLAS, LLC**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iii-vi

STATEMENT OF THE ISSUE TO BE DECIDED...................................................1

INTRODUCTION ....................................................................................................1

FACTS AND ASSUMPTIONS ALLEGED IN THE COMPLAINT ...........................5

    A.    Hammervold's Allegations about Diamond Doctor and Blank ..............................5

    B.    Hammervold's Admittedly Speculative Allegations Against
        Diamonds Direct ...........................................................................7

ARGUMENT AND AUTHORITY .........................................................................12

    A.    Standard of Review under Rule 12(b)(6)...........................................12

    B.    Elements of Civil Conspiracy ........................................................13

    C.    The Elements of Abuse of Process ..................................................15

    D.    Hammervold's Claim is Barred by Limitations..................................18

    E.    Hammervold Has Not Pleaded a Viable Abuse of Process Claim
        against Diamond Doctor and Blank; His Conspiracy Claim against
        Diamonds Direct Therefore Fails.....................................................20

    F.    Hammervold Has Not Pleaded a Viable Claim for Civil
        Conspiracy ..................................................................................23

    G.    Hammervold Has Failed to State a Claim Upon Which Relief May
        Be Granted ..................................................................................26

RELIEF REQUESTED............................................................................................27

CERTIFICATE OF SERVICE ................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acord v. Young Again Prods., Inc.*,
   No. H-11-3591, 2013 WL 754144 (S.D. Tex. Feb. 7, 2013)...................................................16

*Agar Corporation, Inc. v. Electro Circuits Int'l, Inc.*,
   580 S.W.3d 136 (Tex. 2019).........................................................................................15, 20

*Allison v. J.P. Morgan Chase Bank, N.A.*,
   No. 1:11-CV-342, 2012 WL 4633177 (E.D. Tex. Oct. 2, 2012) ............................................14

*Aly v. City of Lake Jackson*,
   453 F. App'x 538 (5th Cir. 2011) .................................................................................17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................12

*Bailey v. Willis*,
   No. 4:17-CV-00276-ALM-CAN, 2018 WL 3321461 (E.D. Tex. Jan. 11, 2018)...................18

*Baubles & Beads v. Louis Vuitton, S.A.*,
   766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ) ..........................................15, 21, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................12

*Berry v. Indianapolis Life Ins. Co.*,
   608 F. Supp. 2d 785 (N.D. Tex. 2009) ..........................................................................14, 24

*Biliouris v. Patman*,
   751 F. App'x 603 (5th Cir. 2019) .......................................................................................13

*Breitling v. LNV Corp.*,
   No. 3:15-cv-0703, 2015 WL 5896131 (N.D. Tex. Oct. 5, 2015) ..........................................17

*Charboneau v. Davis*,
   No. 4:13-cv-00678-ALM-CAN, 2017 WL 9250306 (E.D. Tex. Feb. 16, 2017)..............20, 21

*Chevron Oronite Co., L.L.C. v. Jacobs Field Services North America*,
   951 F.3d 1219 (5th Cir. 2020) ............................................................................................13

*Coleman v. Carrington Mortg. Servs., LLC*,
   No. 4-19-CV-0231-ALM-CAN, 2019 WL 7195392 (E.D. Tex. Dec. 3, 2019) .....................18

iii

*Cooper v. Trent*,
    551 S.W.3d 325 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ..................................15

*Crear v. US Bank, NA*,
    No. 3:14-cv-3136-P, 2015 WL 12731741 (N.D. Tex. May 26, 2015) ...................................21

*Dallas Symphony Ass'n, Inc. v. Reyes*,
    571 S.W.3d 753 (Tex. 2019)...............................................................................................15

*DeLeon v. City of Dallas*,
    No. 3:02-cv-1097-K, 2005 WL 3500271 (N.D. Tex. Dec. 21, 2005)....................................16

*Diamond Consortium, et al. v. Manookian*,
    Case No. 4:16-CV-00094-ALM ..................................................................................... *passim*

*Diamond Consortium, Inc., et al. v. Hammervold, et al.*,
    Cause No. 4:17-CV-00452-ALM ................................................................................... *passim*

*Enriquez-Gutierrez v. Holder*,
    612 F.3d 400 ....................................................................................................................13

*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017)...................................................................................13, 14, 24

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ............................................................................................13

*Gatheright v. Clark*,
    680 F. App'x 297 (5th Cir. 2017) .....................................................................................17

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ............................................................................................26

*In re Great Lakes Dredge & Dock Co. LLC*,
    623 F.3d 201 (5th Cir. 2010) ............................................................................................12

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) ......................................................................................12, 26

*Hunt v. Baldwin*,
    68 S.W.3d 117 (Tex. App.—Houston [14th Dist.] 2001, no pet.)..........................................21

*Jones v. Alcoa, Inc.*,
    339 F.3d 359 (5th Cir. 2003) ............................................................................................18

*Loco Brands, LLC v. Butler America, LLC*,
    No. 6:18-CV-69-JDK-KNM, 2019 WL 3015046 (E.D. Tex. Jan. 28, 2019) ...................14, 24

iv

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ..............................................12

*Massey v. Armco Steel Co.*,
    652 S.W.2d 932 (Tex. 1983)..........................................................14, 25

*Ortega v. Young Again Prods., Inc.*,
    548 F. App'x 103 (5th Cir. 2013) ..........................................17

*Patel v. Pac. Life Ins. Co.*,
    No. 3:08-cv-0249-B, 2009 WL 145626 (N.D. Tex. May 22, 2009)..................14, 24

*Pitts & Collard, L.L.P. v. Schecter*,
    369 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2011, not pet.) ..........................16

*R2 Investments LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ..............................................26

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,
    73 F.3d 546 (5th Cir. 1996) ..............................................15

*Sligh v. Fator*,
    No. 4:19-CV-00036-ALM-CAN, 2019 WL 6833899 (E.D. Tex. Nov. 15,
    2019) ..............................................18

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*,
    --- F. Supp. 3d ---, 2019 WL 4346538 (E.D. Tex. Sept. 12, 2019)..................13, 24

*Tex. Beef Cattle Co. v. Green*,
    921 S.W.2d 203 (Tex. 1996)..........................................16, 23

*Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*,
    No. 4:13-cv-00625, 2015 WL 1025207 (E.D. Tex. March 4, 2015) ........................16

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996)..........................................15

*Tri v. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005)..........................................14

*United States v. Trowbridge*,
    No. 9:14-CV-138, 2016 WL 836486 (E.D. Tex. Jan. 22, 2016) ..........................15

*Walker v. Beaumont I. S. D.*,
    No. 1:15-CV-379, 2016 WL 3456983 (E.D. Tex. Jan. 22, 2016) ..........................14

*Wolcott v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ..............................................12

**Statutes**

42 U.S.C. § 1983................................................................................................................17, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................... *passim*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **MARK HAMMERVOLD,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 4:20-cv-00165** |
| **DIAMONDS DIRECT USA OF DALLAS,** | § | |
| **LLC, DAVID BLANK, DIAMOND** | § | |
| **CONSORTIUM, INC. d/b/a THE DIAMOND** | § | |
| **DOCTOR, and JEWELERS MUTUAL** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT DIAMOND DIRECT USA OF DALLAS, LLC'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant Diamonds Direct USA of Dallas, LLC ("Diamonds Direct") files its Motion to Dismiss and Brief in Support ("Motion") and states:

## STATEMENT OF THE ISSUE TO BE DECIDED

1.      Whether Plaintiff's Original Complaint fails to state a claim upon which relief may be granted with respect to Diamonds Direct.

## INTRODUCTION

2.      Well over four years ago, in early February 2016, Diamond Consortium, Inc. d/b/a The Diamond Doctor ("Diamond Doctor") filed suit in this Court against attorney Brian Manookian ("Manookian"), in a case styled *Diamond Consortium, et al. v. Manookian*, Case No. 4:16-CV-00094-ALM. Diamonds Direct was not a party to that lawsuit. Diamond Doctor later added Manookian's law firm as a defendant. Meanwhile, Diamond Doctor sued Manookian in state court in Dallas; Manookian removed that lawsuit to the Northern District, from whence it was transferred to this Court, assigned case number 4:16-CV-00382, and later consolidated with

the first-filed federal suit. Manookian filed a counterclaim. Both sides sought dismissal under Rule 12(b)(6). The Court denied the motions.[1]

3.    On September 4, 2016, Diamond Doctor filed its Second Amended Complaint, adding claims against attorney Mark Hammervold ("Hammervold") and his law firm. Diamond Doctor alleged four causes of action against Manookian and his firm, including a RICO claim, business disparagement, tortious interference, and defamation, but only one against Hammervold and his firm: civil conspiracy.[2] Diamond Doctor later filed a "Consolidated Amended Complaint," adding Hammervold as a defendant on the RICO claim.[3] Hammervold filed a motion to dismiss.[4] The Court denied that motion on April 26, 2017.[5]

4.    Hammervold's retained counsel filed a motion to withdraw, and Hammervold sought to represent himself *pro se*. The Court denied the motion to withdraw on May 31, 2017.[6] Hammervold filed notices of appeal of the order denying his motion to dismiss and the order denying his motion to withdraw, and sought a stay pending appeal, allegedly warranted because one of the grounds for his motion to dismiss was an argument arising under the Texas Citizens' Participation Act. On June 27, 2017, the Court severed the claims against Hammervold into a separate cause of action, so that the claims involving Manookian could proceed to trial.[7] The new suit was styled *Diamond Consortium, Inc., et al. v. Hammervold, et al.*, Cause No. 4:17-CV-00452-ALM. The parties to *Diamond Consortium v. Manookian* announced a settlement on August 16, 2017.[8]

---

[1] Movant Diamonds Direct is not related to or an affiliate of any kind of Diamond Doctor.
[2] Doc. 99 in *Diamond Consortium v. Manookian*.
[3] Doc. 131 in *Diamond Consortium v. Manookian*.
[4] Doc. 137 in *Diamond Consortium v. Manookian*.
[5] Doc. 180 in *Diamond Consortium v. Manookian*.
[6] Doc. 224 in *Diamond Consortium v. Manookian*.
[7] Doc. 268 in *Diamond Consortium v. Manookian*.
[8] Manookian's license to practice law in Tennessee has been suspended since October 2019.

5.      Meanwhile, Hammervold pursued his appeal in the Fifth Circuit. He lost. On May 3, 2018, in its case number 17-40582, the Fifth Circuit affirmed this Court's conclusion that the TCPA did not shield Hammervold from liability for the acts Diamond Consortium alleged that he committed, and declined to exercise pendent appellate jurisdiction over this Court's denial of Hammervold's motion to dismiss the RICO claim. On June 14, 2018, in its case number 17-40609, the Fifth Circuit affirmed this Court's denial of Hammervold's retained counsel's motion to withdraw. Hammervold unsuccessfully sought *en banc* review of both decisions.

6.      On return of the matter to this Court, Hammervold's retained counsel again sought permission to withdraw. The Court granted that motion. Hammervold then filed *another* motion to dismiss, and sought leave to file a motion for summary judgment. The Court denied the motion to dismiss and the motion for leave on February 19, 2019.[9] On February 28, 2019, Diamond Doctor and its principal, David Blank ("Blank"), who at some point in the preceding three years had become a party to the litigation, filed an unopposed motion for voluntary dismissal without prejudice. The Court granted the motion, dismissed the plaintiffs' claims against Hammervold and his law firm without prejudice, and directed the clerk to close the case.[10]

7.      Dissatisfied with having prevailed, on March 21, 2019, Hammervold filed a twenty-five page motion, with forty-six exhibits, asking the Court to award attorneys' fees against Diamond Doctor and its attorneys, both as sanctions and under what he called a "bad faith exception to the American Rule." Hammervold essentially argued that fees should be awarded as sanctions because Diamond Doctor and Blank engaged in abuse of the judicial process. On February 20, 2020, the Court denied the motion, explaining that:

---

[9] Doc. 80 in *Diamond Consortium v. Hammervold.*
[10] Doc. 89 in *Diamond Consortium v. Hammervold.*

> [E]ven when a party is pursuing a meritorious claim or defense, ***sanctions may be
> assessed when the party abuses the judicial process in the method of prosecution
> of that claim or defense***. ***A party should not be penalized for maintaining an
> aggressive litigation posture.*** But advocacy simply for the sake of burdening an
> opponent with unnecessary expenditures of time and effort clearly warrants
> recompense for the extra outlays attributable thereto. After a review of the
> Hammervold Defendants' briefs, it does not appear that they challenge the method
> of prosecution or that Plaintiffs were burdening the Hammervold Defendants with
> unnecessary expenditures of time. The Hammervold Defendants do not identify any
> motion filed by Plaintiffs that was duplicative or done for purposes of harassment,
> but instead focus on the frivolousness of suit. Regardless, ***the Court finds that
> Plaintiff's conduct throughout the course of litigation [was] appropriate***.
> Plaintiffs' motion practice was not duplicative or harassing. The length of time
> between the filing of suit and the ultimate dismissal was in large part due to the
> interlocutory appeal and not based on the actions of the Plaintiffs. Thus, this does
> not rise to the level of proof required to obtain a bad faith finding.

*See* Doc. 107 in *Diamond Consortium v. Hammervold*, at pp. 6-7 (citations and alterations omitted).] The Court further noted that "if the Hammervold Defendants attempt to argue that Plaintiffs' voluntary dismissal suggests that the case was meritless***, the Court will not engage in speculation as to the reasons Plaintiffs dismissed their suit***." *Id.* A week later, Hammervold filed the above-styled suit against Diamond Doctor, Blank, Diamond Doctor's insurance company, and Diamonds Direct, alleging a cause of action against all defendants for "conspiracy to abuse process" in the long course of the litigation described above. [Doc. 1 ¶¶ 144-152.][11] ***Diamonds Direct had no involvement whatsoever in the underlying litigation***, which the Court has already determined was not vexatious or harassing.[12] As set forth below, Hammervold has failed to state a claim against Diamonds Direct upon which relief may be granted.

---

[11] Hammervold has sued the other three defendants for malicious prosecution as well. [Doc. 1 ¶¶ 153-161.]
[12] Diamonds Direct is not, and is not alleged to be, under any sort of common ownership or control with Diamond Doctor, and is not alleged to have been a party to *Diamond Consortium v. Manookian* or *Diamond Consortium v. Hammervold.*

## FACTS AND ASSUMPTIONS ALLEGED IN THE COMPLAINT

To understand why Hammervold's claims against Diamonds Direct are subject to dismissal, the Court must first understand the general nature of Hammervold's claims against Diamond Doctor and Blank. By reciting and summarizing Hammervold's factual allegations, Diamonds Direct does not agree that they are truthful or accurate:

**A.** **Hammervold's Allegations about Diamond Doctor and Blank.**

8.      Most of Hammervold's allegations in the Complaint [Doc. 1] focus on Diamond Doctor and Blank. Distilled to its essence, Hammervold claims that a diamond grading service known as "EGL" consistently overgraded diamonds, and that Diamond Doctor sold some diamonds graded by EGL. People in the diamond industry were concerned with potential fallout when EGL's systemic overgrading was exposed. Beginning in 2014, Manookian and his firm began soliciting consumers who had purchased overgraded diamonds on his website, "diamondlawsuit.com." In 2015, Manookian advertised heavily in Dallas and solicited consumers who had purchased EGL diamonds from Diamond Doctor. In late 2015, Manookian boasted in a press release that he was going to file class action lawsuits on behalf of "hundreds of thousands" of consumers.

9.      Diamond Doctor believed that Manookian and his firm's advertisements and tactics constituted trademark violations, defamation, misrepresentation, and violations of ethical rules applicable to Manookian as a lawyer. Diamond Doctor then considered hiring Manookian's firm for a monthly retainer. Manookian "entertained, but ultimately declined" this proposal, which in turn caused Diamond Doctor and Blank to send additional complaints to the Tennessee Bar (Manookian was licensed only in Tennessee; his license has since been suspended), which Hammervold believes was improper. Meanwhile, around the same time, Hammervold formed a

solo practice and partnered with Manookian's firm on diamond overgrading cases in Tennessee and Maryland. When word got around the industry about these lawsuits, one diamond retailer retained a public relations firm to offer guidance on how to respond. Hammervold thinks that guidance, which eventually ended up in Blank's hands, was too aggressive.

10.     Diamond Doctor eventually sued Manookian over his tactics (in *Diamond Consortium v. Manookian*). Hammervold was not named as a defendant. While *Manookian* was pending, Hammervold sent some DTPA demand letters to Diamond Doctor's customers. Diamond Doctor tried settling with Manookian, and as part of that settlement, offered to settle the pre-litigation claims alleged in Hammervold's DTPA letters. Manookian's lawyers told Diamond Doctor that it would need to deal directly with Hammervold, and so Diamond Doctor's lawyers reached out to him. Hammervold considered but ultimately decided not to settle his clients' claims. Diamond Doctor decided it did not like Hammervold's tactics in soliciting customers, and so added him to the *Manookian* lawsuit as a defendant. Around the same time, Hammervold filed suit against Diamond Doctor on behalf of some customers in Texas state court.

11.     Hammervold does not like the way Diamond Doctor handled its lawsuit against him. Diamond Doctor tried to settle before Hammervold was scheduled to be deposed, but Hammervold declined the offer. Hammervold decided he wanted to terminate his retained counsel and appear *pro se*. The Court turned down that request, and Hammervold brought interlocutory appeals of that order and another unfavorable order to the Fifth Circuit. The Court severed those claims into *Diamond Consortium v. Hammervold*, so that the *Manookian* suit could continue. Diamond Doctor settled with Manookian soon thereafter. As part of the settlement, Diamond Doctor bought some websites from Manookian.

12.     Once the Fifth Circuit denied Hammervold's appeals and the *Hammervold* case resumed in this Court, Diamond Doctor tried to settle with Hammervold. Hammervold rejected Diamond Doctor's settlement offers. As trial approached, Hammervold sought permission to file an untimely motion for summary judgment. The Court told him he could not. A few days before the case was set for trial, Diamond Doctor tried one last time to settle, and allegedly told Hammervold all it wanted was "peace." The parties did not settle, and Diamond Doctor and Blank voluntarily dismissed their claims against Hammervold the next day. Finally, as discussed above, Hammervold filed a motion for fees as sanctions, which the Court denied.[13]

## B.     Hammervold's Admittedly Speculative Allegations Against Diamonds Direct.

13.     Diamonds Direct makes only rare appearances in Hammervold's 132-pagragraph statement of facts. There is an allegation that Diamonds Direct, like Diamond Doctor, at some unidentified point in the past sold overgraded diamonds. [Doc. 1 ¶¶ 16-17.] That is false, but it is also irrelevant to any of Hammervold's claims. Nearly everything else is alleged "on information and belief." In other words, guesswork.

14.     As mentioned above, in response to lawsuits filed by Hammervold's clients in Tennessee and Maryland against another diamond retailer, a public-relations firm prepared a memo advising that retailer to have a plan in place in the event other, similar lawsuits were filed. [Doc. 1 ¶ 72 and Exh. 6 (Doc. 1-11).] A representative of the other retailer allegedly emailed the memo to Blank, and selected "Plan of attack" as his subject line. *Id*. In January 2016, Blank allegedly wrote to a colleague at yet another diamond retailer that "I am instructing my lawyers to sue the guy," *i.e.*, Manookian, "and have him start spending money." [Doc. 1 ¶ 74 and Exh. 7 (Doc. 1-13).] There is no reference to Hammervold in Blank's alleged email. Then, "***based on***

---

[13] Doc. 107 in *Diamond Consortium v. Hammervold.*

*information and belief*, Diamonds Direct was also apprised of this 'plan of attack' and agreed and conspired to help Diamond Doctor execute a concerted plan of attack against Hammervold and others willing to represent consumers to pursue diamond overgrading claims against those who had sold large volumes of overgraded EGL-1 diamonds." [Doc. 1 ¶ 75.] The good-faith basis for Hammervold's supposed "belief" is not described, nor is the date on which or method by which Diamonds Direct was allegedly informed of the "plan of attack."

15.     According to Hammervold, "between February and May 2016," *i.e.*, after the "plan of attack" email from a non-party to Blank, Blank "began having discussions with Diamonds Direct about Diamonds Direct acquiring The Diamond Doctor." [Doc. 1 ¶ 82.] Hammervold claims that he sent DTPA notices to Diamond Doctor on behalf of a number of potential litigants in March 2016. [Doc. 1 ¶ 83.] Hammervold then guesses, again "*based on information and belief*, Diamonds Direct was very interested in purchasing the Diamond Doctor, but was concerned about threatened litigation by claimants represented by Hammervold and the potential to file a class action lawsuit, or to represent additional claimants against Diamonds Direct in future lawsuits." [Doc. 1 ¶ 84.] "*Based on information and belief*, Blank and Diamonds Direct discussed ways that Blank could seal-off Hammervold from representing claimants in future suits in order to address this concern." [*Id.*] The meaning of "seal-off" is unstated.

16.     Hammervold claims that in June 2016, Don Godwin, who at the time represented Diamond Doctor, told Hammervold in a recorded phone call that Diamond Doctor was willing to settle those DTPA claims, "but *only if* Hammervold and his then local counsel, Bill Dipple, agreed to never represent any claimants *against Diamond Doctor*." [*Id.* ¶ 92.] Neither Hammervold nor Godwin mentioned Diamonds Direct in the phone call. [Doc. 1 ¶ 84 and Exh. 11 (Doc. 1-16).] Godwin asked Hammervold to consider that type of settlement, and made clear that he was only

proposing it *if* Hammervold's research found it to be proper: "you understand I'm not asking you to do anything improper," Godwin said, to which Hammervold replied, "Oh yeah. We're just discussing it right now. You haven't asked me to do things specifically." [Doc. 1-16 at p. 5.] Hammervold decided against entering into that type of settlement agreement. According to Hammervold, "Blank, The Diamond Doctor, Diamonds Direct, and Jeweler's Mutual Insurance Company, continued to look for another way to achieve this unlawful end," *i.e.*, a global settlement of Hammervold's clients' claims **against Diamond Doctor**. Why Diamonds Direct would care about Hammervold's clients' claims against Diamond Doctor is unexplained.

17.     Hammervold notes that in September 2016, Diamond Doctor and Blank amended their complaint in *Diamond Consortium, Inc. v. Manookian* to add Hammervold as a defendant. They sought "only monetary damages," but "did not seek – and could not lawfully have sought – to enjoin Hammervold from soliciting and/or accepting representation of clients pursuing claims against Blank, The Diamond Doctor, and/or Diamonds Direct." [Doc. 1 ¶ 101.]

18.     Hammervold alleges that in August 2016, he followed through on the prior threat to file DTPA suits against Diamond Doctor on behalf of several consumers. [Doc. 1 ¶ 102.] He alleges that "Diamond Doctor and/or Diamonds Direct made a claim to Jewelers Mutual in connection with the consumer claims. Jewelers Mutual [allegedly] assigned those claims internal claim number '45-002624' and the internal title: 'Diamonds Direct.' **Based on information and belief**, Diamonds Direct assumed control and/or indirectly controlled the manner in which those consumer claims were litigated." [Doc. 1 ¶ 103.][14]

---

[14] If the allegation is true, which Diamonds Direct does not concede, Diamonds Direct has no idea why Jewelers Mutual assigned that title.

19.     Hammervold next claims that in October or November 2016, "Blank and Diamonds Direct finalized Diamonds Direct's acquisition of The Diamond Doctor. ***Based on information and belief***, in connection with that acquisition, Diamonds Direct and Diamond Doctor agreed and conspired to use the federal lawsuit as leverage to intimidate Hammervold into agreeing not to solicit or pursue any future claims against either Diamonds Direct or Diamond Doctor. . . . ***Based on information and belief***, Blank agreed that he would protect and/or indemnify Diamonds Direct from future claims by Hammervold and/or his clients. ***Based on information and belief***, Diamonds Direct required this provision and/or paid a premium to Blank for it." [Doc. 1 ¶ 105.] "***Based on information and belief***, Diamonds Direct acquired the Diamond Doctor's customer transaction information, and expressly and/or constructively assumed the warranties Diamond Doctor had made to consumers regarding those transactions." [Doc. 1 ¶ 107.][15]

20.     Once again "***on information and belief***," Hammervold alleges that after the transaction between Blank/Diamond Doctor and Diamonds Direct was complete, "Diamonds Direct, including Amit Berger,[16] remained informed, and were actively involved in, The Diamond Doctor's lawsuit in federal court against Manookian and Hammervold, as well as the consumer claims Hammervold was pursuing against Diamond Doctor in Texas state court." [Doc. 1 ¶ 108.]

21.     Whether intentionally or otherwise, from this point forward in the Complaint, Hammervold implies that Diamonds Direct was or became a party to *Diamond Consortium v.*

---

[15] The terms of the transaction between Diamond Doctor and Blank, on the one hand, and Diamonds Direct, have absolutely no relevance to Hammervold's abuse of process claim, and it is unclear why he has informed the Court of his assumptions about the terms, which are confidential. Diamonds Direct does not rely on this fact for purposes of the Motion, and the Court need not take note of it, but for the Court's information, it was an asset purchase, and Diamonds Direct did not assume contractual or legal liability for warranty claims made arising out of Diamond Doctor's sales to consumers. It is for that reason that one of the negotiated terms of the asset purchase was for Diamond Doctor and Blank to agree to indemnify and defend Diamonds Direct against any claims that might be brought against it by disgruntled former customers of Diamond Doctor. Again, none of this has anything in the world to do with "abuse of process." This is a standard and ordinary provision for an asset purchase of a retailer.
[16] Amit Berger is one of the principals of Diamonds Direct.

*Manookian* and later *Diamond Consortium v. Hammervold*. He does this by beginning to refer collectively to "Defendants," when what he is really describing is the alleged conduct of the litigation in those cases by the plaintiffs therein, Diamond Doctor and Blank. For example, he recites what he alleges to have been the substance of a phone call between himself and Randy Johnston, who at the time represented Diamond Doctor and Blank, on the eve of Hammervold's deposition. [Doc. 1 ¶¶ 110-112.] Hammervold did not like the terms of the offer, which he refers to as "Defendants' demands," when really they were the "demands" only of Diamond Doctor and Blank.

22.     Hammervold spends a great deal of time discussing the settlement of *Diamond Consortium v. Manookian*, *i.e.*, claims that did not involve him in any way. He alleges that, "***based on information and belief***, Amit Berger and Diamonds Direct were informed of and provided input in the negotiations of settlement between Manookian and Blank and Diamond Doctor." [Doc. 1 ¶ 114.] Hammervold makes no effort to explain the basis for this belief. Once Manookian settled out, Hammervold claims that "Blank and Diamond Doctor continued to demand – as part of any settlement – that Hammervold unlawfully agree not to solicit any future claims against Blank, Diamond Doctor, ***or Diamonds Direct***." [Doc. 1 ¶ 119; *see* ¶ 123.] Hammervold does not allege that Diamond Doctor asked for this settlement term at the behest of Diamonds Direct.

23.     Hammervold does not allege any further involvement on the part of Diamonds Direct, even "on information and belief." He makes a concluding statement that "prior to the Defendants' filing of the lawsuit, Hammervold's Google page primarily reflected his various accolades. Now, Hammervold will forever be associated with the Defendants' patently false allegations that he participated in a criminal conspiracy to 'shake down' or 'extort' The Diamond Doctor." [Doc. 1 ¶ 143.] Of course, as Hammervold is well aware, Diamonds Direct played no

role *and has not been alleged to have played a role* in the filing of the lawsuit, and Diamonds Direct made no such allegations. His complaint is with Diamond Doctor and Blank. Diamonds Direct is unjustifiably along for the ride.

## ARGUMENT AND AUTHORITY

The Court should grant the Motion for the following reasons:

**A.**    **Standard of Review under Rule 12(b)(6).**

24.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Twonbly*, 550 U.S. at 555. In deciding whether the complaint states a valid claim for relief, courts must "accept all ***well-pleaded*** facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 623 F.3d 201, 210 (5th Cir. 2010) (emphasis supplied). Courts must not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (citing cases). "A claim for relief is implausible on its face when the well-pleaded facts do not permit the court to infer more than the ***mere possibility*** of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (emphasis supplied) (quoting *Iqbal*).

25.    The Court generally must limit itself to the contents of the pleadings and their attachments, but when a pleading references documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court may also consider matters "of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)

(quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). It is "clearly proper" for the Court to take judicial notice of matters of public record when considering a Rule 12(b)(6) motion. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Court may also "take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *Chevron Oronite Co., L.L.C. v. Jacobs Field Services North America*, 951 F.3d 1219, 1229 n. 14 (5th Cir. 2020) (quoting *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)). *See, e.g.*, *Biliouris v. Patman*, 751 F. App'x 603, 605 (5th Cir. 2019) (same); *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410-411 (district courts have "the right to take notice of their own files and records in adjudicating cases between the same parties raising substantially similar issues as those addressed in previous cases"). The Court therefore may – and should – take judicial notice of the proceedings in *Diamond Consortium v. Manookian* and *Diamond Consortium v. Hammervold*.

## B.      Elements of Civil Conspiracy.

26.      Under Texas law, "a claim of civil conspiracy requires the following elements:  (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, --- F. Supp. 3d --- , 2019 WL 4346538, at *33 (E.D. Tex. Sept. 12, 2019) (citing cases).

27.      "An actionable civil conspiracy requires specific intent to accomplish something unlawful or to accomplish something lawful by unlawful means." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). "This inherently requires a meeting of the minds on the object or course of action." *Id.* "Thus, an actionable civil conspiracy exists only as to those parties ***who are aware of the intended harm or proposed wrongful conduct at the***

*outset of the combination or agreement*." *Id.* (emphasis supplied) (citing *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968)). The plaintiff "must allege that there was a preconceived plan and unity of design and purpose." *Loco Brands, LLC v. Butler America, LLC*, No. 6:18-CV-69-JDK-KNM, 2019 WL 3015046, at *7 (E.D. Tex. Jan. 28, 2019) (granting motion to dismiss) (citing cases).[17] *See, e.g.*, *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 794 (N.D. Tex. 2009) (dismissing civil conspiracy claim because the complaint "failed to specify who was involved, precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties"); *Patel v. Pac. Life Ins. Co.*, No. 3:08-cv-0249-B, 2009 WL 145626, at *16 (N.D. Tex. May 22, 2009) (dismissing conspiracy claim because the plaintiff "identified no specific time or place in which any meeting of the minds" took place).

28.     "For liability to attach, there must be an *unlawful*, *overt* act in furtherance of the conspiracy." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (emphasis supplied). "Merely proving a joint intent to engage in the conduct that resulted in the injury is not sufficient to establish a cause of action for civil conspiracy." *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005). A pleading alleging conspiracy must include "facts regarding an agreement between the alleged conspirators" and the "overt acts which were the subject of the agreement." *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *12 (E.D. Tex. Oct. 2, 2012) (granting Rule 12(b)(6) motion). A naked assertion of an agreement to do something unlawful is insufficient. *Id. See, e.g.*, *Walker v. Beaumont I. S. D.*, No. 1:15-CV-379, 2016 WL 3456983, at *11 (E.D. Tex. Jan. 22, 2016) (granting motion to dismiss because plaintiff "provided no evidence of a meeting

---

[17] Judge Kernodle later adopted Magistrate Judge Mitchell's Report and Recommendation. *See* 2019 WL 281252.

of the minds or that [the defendant accused of conspiracy] agreed with the objective of the conspiracy").

29.      Civil conspiracy is a derivative tort that is "connected to the underlying tort and survives or fails alongside it." *Agar Corporation, Inc. v. Electro Circuits Int'l, Inc.*, 580 S.W.3d 136, 140-141 (Tex. 2019). In other words, "a defendant's liability for conspiracy depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). "There can be no conspiracy to engage in conduct that did not occur." *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 763 (Tex. 2019) (citing *Tilton*). If the underlying tort has not been sufficiently alleged, it cannot support a claim of conspiracy. *United States v. Trowbridge*, No. 9:14-CV-138, 2016 WL 836486, at *5 (E.D. Tex. Jan. 22, 2016).

**C.      The Elements of Abuse of Process.**

30.      To prevail on his cause of action against Diamonds Direct for conspiracy to abuse process, Hammervold first must also prevail on the underlying claim of abuse of process. To do so, Hammervold must plead and prove that (1) he was served with valid process; (2) the defendant made an "illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;" (3) the defendant "had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process;" and (4) plaintiff suffered damages "as a result of such illegal act." *Cooper v. Trent*, 551 S.W.3d 325, 333-334 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex. App.—Texarkana 1989, no writ) (same).

31.      "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Baubles & Beads*, 766 S.W.2d at 379. *See, e.g.*, *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 577 (5th Cir.

1996) (citing *Baubles & Beads*). Instead, abuse of process only exists "where the original process is used to accomplish an end other than that which the writ was designed to accomplish." *Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*, No. 4:13-cv-00625, 2015 WL 1025207, at *8 (E.D. Tex. March 4, 2015).[18] *See, e.g.*, *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2005 WL 3500271, at *5 (N.D. Tex. Dec. 21, 2005) (the defendant's use of the process must be "a use neither warranted [nor] authorized by the process").

32.     "The facts must show that the original issuance of a legal process is justified, ***but the process itself is subsequently used for a purpose for which it was not intended.*** When the process issued for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process has occurred." *Acord v. Young Again Prods., Inc.*, No. H-11-3591, 2013 WL 754144, at *18 (S.D. Tex. Feb. 7, 2013) (quoting *Hunt v. Baldwin*, 68 S.W.3d 117, 129-130 (Tex. App.—Houston [14th Dist.] 2001, no pet.)).[19]

33.     To prove an action for abuse of process, the plaintiff must establish that it suffered a "special injury." *Pitts & Collard, L.L.P. v. Schecter*, 369 S.W.3d 301, 332-333 (Tex. App.—Houston [1st Dist.] 2011, not pet.). To show a "special injury," the plaintiff must show a physical interference with the plaintiff's person or property, such as arrest, attachment, injunction, or sequestration. *Id.* The purpose behind such requirement is to ensure that every litigant has free and open access to the judicial system without fear of countersuit for abuse of process. *Id. See, e.g.*, *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 208 (Tex. 1996) (applying same standard to cause of action for malicious prosecution).

---

[18] Judge Schell adopted Magistrate Judge Bush's Report and Recommendation on March 30, 2015. *See* 2015 WL 1467172.
[19] Judge Rosenthal adopted Magistrate Judge Malloy's Memorandum and Recommendation on February 27, 2013. *See* 2013 WL 754140.

---

34.     The statute of limitations for abuse of process in Texas is two years. *Ortega v. Young Again Prods., Inc.*, 548 F. App'x 103, 113 (5th Cir. 2013); *Breitling v. LNV Corp.*, No. 3:15-cv-0703, 2015 WL 5896131, at *7 (N.D. Tex. Oct. 5, 2015). Construing Mississippi law,[20] the Fifth Circuit recently held that the cause of action accrues and limitations begins to run upon "the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *Gatheright v. Clark*, 680 F. App'x 297, 302 (5th Cir. 2017) (citing 1 A.L.R.3d 953 (1965)).

35.     In another case, the Fifth Circuit considered the accrual date, and therefore the timeliness, of a claim asserted under 42 U.S.C. § 1983. *Aly v. City of Lake Jackson*, 453 F. App'x 538, 639 (5th Cir. 2011). The plaintiff had been arrested in January 2007 and charged with credit card fraud. The charges were dropped in March 2008, and he filed suit in November 2009, claiming that his arrest and prosecution had been in violation of Section 1983. The limitations period for Section 1983 claims is determined by reference to the most analogous common law claim in the state where the case was filed – in that case, Texas. The court decided that the plaintiff's cause of action was most "analogous to the common law tort of abuse of process," rather than malicious prosecution. *Id.*at 540. The court relied on Professors Prosser and Keeton:

> Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is used is the only thing of importance. Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that process was obtained without probable cause or in the course of a proceeding begun without probable cause.

---

[20] The elements of the cause of action in Mississippi are the same:  "(1) an illegal and improper perverted use of the process, which was neither warranted nor authorized by the process; (2) ulterior motive or purpose of a person in exercising such illegal, perverted, or improper use of process; and (3) resulting damage or injury." *Gatheright*, 680 F. App'x at 302. The statute of limitations in Mississippi is one year. *Id.*

*Id.* at 540 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 121 at 897

(5th ed. 1984)). Relying on that authority, the plaintiff's "claim accrued on January 26, 2007, when

he was arrested and charges against him were brought. . . . [Plaintiff's] complaint, however, was

not filed until November 16, 2009, more than two years after his claim accrued. Accordingly,

[Plaintiff's] complaint is barred by Texas' statute of limitations." *Id.*[21]

## D.     Hammervold's Claim is Barred by Limitations.

36.     As discussed immediately above, the statute of limitations for "abuse of process"

in Texas is two years. The only clearly discernible "process" involving Hammervold is the

issuance of citation and summons to Hammervold upon Diamond Doctor's decision to amend its

pleading in *Diamond Consortium, Inc. v. Manookian.* That occurred on or shortly after the Second

Amended Complaint was filed, on September 14, 2016.[22] If his cause of action accrued that day,

his deadline to file suit for abuse of process was September 14, 2018. He did not file this suit until

February 28, 2020, more than eighteen months after limitations had run. To the extent his claims

arise out of the filing of suit and issuance of process, they are barred.

37.     A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means

to raise a statute of limitations defense, so long as the bar to relief appears on the face of the

complaint or other appropriately considered materials, as it does here. *Jones v. Alcoa, Inc.*, 339

F.3d 359, 366 (5th Cir. 2003). *See, e.g.*, *Coleman v. Carrington Mortg. Servs., LLC*, No. 4-19-CV-

0231-ALM-CAN, 2019 WL 7195392 (E.D. Tex. Dec. 3, 2019) (citing Jones); *Sligh v. Fator*, No.

---

[21] "Whereas state law determines the length of the limitations period" in a Section 1983 claim, "federal law determines the accrual date." *Bailey v. Willis*, No. 4:17-CV-00276-ALM-CAN, 2018 WL 3321461, at *7 (E.D. Tex. Jan. 11, 2018).

[22] The clerk issued summonses to Hammervold and his law firm on September 15, 2016. *See* Doc. Nos. 100 and 101 in *Diamond Consortium v. Manookian.*

4:19-CV-00036-ALM-CAN, 2019 WL 6833899 (E.D. Tex. Nov. 15, 2019) (citing *Jones* and granting motion to dismiss based on limitations).

38.     Nothing that occurred either before or after the filing of the lawsuit and issuance of a citation and summons constitutes "process." Indeed, one of the things that most upsets Hammervold is the settlement communication from then-attorney Don Godwin to Hammervold, in which Hammervold understood and agreed that Diamond Doctor was *not* asking him to do anything improper. It occurred on June 2, 2016, several months *before* Hammervold was added as a defendant. [Doc. 1 ¶ 92.] Even if that conversation constituted process, which it patently did not, any claims arising out of it have been barred for years.

39.     Likewise, the conversation between Hammervold and Diamond Doctor's then-attorney Randy Johnston, which Hammervold grossly misinterprets to mean that Johnston asked Hammervold to provide false testimony, occurred on May 24, 2017. Even if that constitutes "process," the claim is barred. The settlement between Manookian and Diamond Doctor fell on August 16, 2017. Barred. Finally, the settlement communication sent by Diamond Doctor's then-attorney Howard Klatsky occurred on January 31, 2018. Hammervold believes the offer was "wrongful," but even if a wrongful offer constitutes "process" (which it does not), Hammervold waited too long to sue, because the limitations period begins to run when the act occurs, not when the litigation in which the process was obtained comes to an end.

40.     Hammervold filed suit on February 28, 2020. He has not alleged that any "process" was issued or obtained by *any* Defendant within the two years preceding the date of his lawsuit. On February 28, 2018, the trial court proceedings were at a standstill because of Hammervold's ultimately unsuccessful appeals to the Fifth Circuit. The only things that happened after remand, at least as alleged in the Complaint, were motion practice, a final settlement discussion at a Chicago

hotel bar with Diamond Doctor's fourth attorney, and dismissal of the lawsuit. Of course, Hammervold has not alleged that any process was issued or obtained by Diamonds Direct *at any time*. However, since he relies on conspiracy to assert any claims at all against Diamonds Direct, he is bound by the statute of limitations applicable to the underlying tort. *Agar*, 580 S.W.3d at 142-143. Because his abuse of process claim against the remaining Defendants is barred by limitations, no matter how expansively the term "process" is construed – and there is no justification for construing it expansively, in light of the case law cited above – his conspiracy claim against Diamonds Direct is barred, too, and should be dismissed.

**E.**     **Hammervold Has Not Pleaded a Viable Abuse of Process Claim against Diamond Doctor and Blank; His Conspiracy Claim against Diamonds Direct Therefore Fails.**

41.     As explained above, civil conspiracy is a derivative tort that is "connected to the underlying tort and survives or fails alongside it." *Agar*, 580 S.W.3d at 140-141. For the reasons set forth below, Hammervold has failed to allege a cause of action for abuse of process (against any Defendant) sufficient to withstand a motion to dismiss. For that reason, the Court should grant the Motion and dismiss Hammervold's cause of action against Diamonds Direct for conspiracy to abuse process.

42.     The facts alleged by Hammervold, even if true, do not demonstrate that Diamond Doctor and Blank's suit against him amounted to an "illegal, improper or perverted" use of any legal process. Hammervold fails to allege that Diamond Doctor and Blank "used legal process in any manner other than the manner for which it was intended." *Charboneau v. Davis*, No. 4:13-cv-00678-ALM-CAN, 2017 WL 9250306, at *13 (E.D. Tex. Feb. 16, 2017) (citing *Brown v. Edwards*, 721 F.2d 1442, 1454-1455 (5th Cir. 1984)).[23] Rather, Hammervold "merely asserts Defendants

---

[23] This Court adopted Magistrate Judge Nowak's Report and Recommendation on March 29, 2017. *See* 2017 WL 1159765.

took these actions with an ulterior motive, and such allegation does not suffice to state an abuse of process claim." *Id.* (citing *Baubles & Beads*).

43. Hammervold has not alleged that "the original process, such as a writ, has been ***abused to accomplish an end other than that which the writ was designed to accomplish***." *Crear v. US Bank, NA*, No. 3:14-cv-3136-P, 2015 WL 12731741, at *3 (N.D. Tex. May 26, 2015) (emphasis supplied) (granting a motion to dismiss) (quoting *Hunt v. Baldwin*, 68 S.W.3d 117, 129-130 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). The *Crear* case is illustrative. The plaintiff was upset that a bank filed "foreclosure and eviction proceedings . . . even though [Plaintiff] had filed a supersedeas bond." *Crear*, 2015 WL 12731741, at *1. She sued the bank and its attorneys for abuse of process. *Id.* They moved to dismiss under Rule 12(b)(6). *Id.* at *2. After discussing *Hunt* and *Baubles & Beads*, the court explained that while Plaintiff may have been upset over the filing of the FED action, she "has failed to claim that Defendants used any process for a purpose it was not intended to serve. According to the complaint, Defendants used the filings in the manner and for the purpose for which those filings were intended, namely to evict Crear. Because of this, Crear has failed to state a plausible claim for abuse of process." *Id.* at *3. Filing a legal proceeding, even if the defendant therein believes it to be groundless, as Hammervold believes was the case with *Diamond Consortium v. Hammervold*, is not a basis for an abuse of process claim.

44. Simply put, what Hammervold has alleged is that Diamond Doctor (and later Blank) sued him and served him with process, using that process in precisely the manner in which it was intended – to compel him to answer the lawsuit. Did Diamond Doctor and Blank have an ulterior motive in suing him? Maybe. Hammervold appears to believe so. Diamonds Direct has no way of knowing, having been entirely uninvolved in the litigation from its beginning in 2016 through its conclusion in 2020, but as explained above, proof that the adverse party had an ulterior

motive in the *use* of process ***is not abuse of process***, in the absence of proof that the adverse party used the process in an illegal or perverted manner for which it was never intended. Hammervold takes issue with some informal settlement discussions and formal settlement offers that he believes would have been "unethical" for him to accept. Making a settlement offer is not even a *use* of legal process, much less an abuse of process. As the transcript attached to the Complaint makes clear, Hammervold understood and *agreed* that Diamond Doctor was not asking him to do anything improper. Hammervold was free to reject the offers, did so, and ultimately prevailed when Diamond Doctor dismissed the lawsuit.

45.     Hammervold is upset that one of Diamond Doctor's attorneys allegedly expressed a desire to see Hammervold exceed the limits of his insurance policy. Perhaps that is an "ulterior motive" if the definition of that term is stretched to its very limits, but it is not an abuse of legal process. "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Baubles & Beads*, 766 S.W.2d at 378-379. In *Baubles & Beads*, the defendant in a counterfeit and trademark suit accused the plaintiffs therein of "abusing the legal process of seizure of property to further other improper and perverted uses . . . specifically, they alleged that the Defendants improperly used the process to intimidate Plaintiffs, to obtain publicity and to increase Christmas sales of [Plaintiffs'] products, to decrease the sales of Defendants, to threaten Defendants with criminal prosecution, and to falsely accuse Defendants of a crime." *Id.* at 379. The court of appeals affirmed summary judgment,[24] explaining that "these pleadings do not ***allege*** any coercive use of the process." *Id.* (emphasis supplied).

---

[24] The defendant/appellant offered no summary judgment evidence, and relied instead on their interpretation of the pleadings. *Id.*at 379.

46.     Hammervold has not alleged facts that, if true, would amount to an "illegal, improper or perverted" use of legal process. He therefore has not alleged facts that would allow a trier of fact to conclude that *anyone* engaged in "abuse of process." Without an underlying tort, Hammervold's cause of action against Diamonds Direct fails as a matter of law. The Court should grant the Motion and dismiss Hammervold's claim against Diamonds Direct for this reason alone.

47.     Alternatively and in addition, Hammervold has failed to plead that he suffered any "special injury." Diamond Doctor and Blank never requested any sort of relief that could constitute a physical interference with Hammervold's person or property, such as an arrest, attachment, injunction, or sequestration. Hammervold mentions an ***agreed*** injunction in *Diamond Consortium v. Manookian*, but he was not a party to that injunction and it does not restrict his behavior in any way. Moreover, the record reveals that Diamond Doctor and Blank never sought an injunction or other restraint of any kind against Hammervold. To the extent Hammervold claims that he was indirectly affected by the ***agreed*** injunction, his claim fails as a matter of law. *See Tex. Beef Cattle*, 921 S.W.2d at 210 (holding that the reach of the special injury does not include the incidental effects for an injunction on those who were not directly targeted by the injunction).

**F.     Hammervold Has Not Pleaded a Viable Claim for Civil Conspiracy.**

48.     Alternatively and in addition, to the extent the Court finds that Hammervold has adequately pleaded a cause of action against Diamond Doctor and Blank for abuse of process, and that the claim is not barred by limitations, the Court still should dismiss Hammervold's claim against Diamonds Direct because he has not alleged facts that, if true, would establish every element of the cause of action.

49.     As discussed above, "a claim of civil conspiracy requires the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object

or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *StoneCoat*, --- F. Supp. 3d --- , 2019 WL 4346538, at *33. Hammervold has not alleged facts demonstrating a meeting of the minds at the outset of the scheme that included Diamonds Direct, and he has not alleged an *unlawful*, overt act by any defendant.

50.      "An actionable civil conspiracy exists only as to those parties ***who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement***." *Parker*, 514 S.W.3d at 222 (emphasis supplied). According to Hammervold, the conspiracy to abuse process arose even before the filing of *Diamond Consortium, Inc. v. Manookian*. As he tells the story, genesis occurred when Blank enthusiastically agreed with a non-party jewelry retailer's public relations firm's game plan to respond to consumer actions filed by Manookian and Hammervold against a different non-party jewelry retailer. Hammervold alleges (as always, ***based on information and belief***) that Diamonds Direct was also "apprised" of the P.R. firm's suggestions and "agreed and conspired to help Diamond Doctor execute a concerted plan of attack[.]" [Doc. 1 ¶ 75.] That formulaic and conclusory recitation will not do.

51.      Hammervold has failed to "allege that there was a preconceived plan and unity of design and purpose." *Loco Brands*, 2019 WL 3105046, at *7. He has conspicuously "failed to specify who was involved, precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties." *Berry*, 608 F. Supp. 2d at 794. He has conspicuously "identified no specific time or place in which any meeting of the minds" took place. *Patel*, 2009 WL 145626, at *16. Hammervold has made no other allegations regarding the formation of the conspiracy or the alleged "meeting of the minds" on a precise and specific plan of action, or even of what the "object" of that plan might have been, other than to generally

---

**DEFENDANT DIAMONDS DIRECT USA OF DALLAS, LLC'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**                                    **Page 24**

follow ("Let's fight!") the P.R. firm's generic advice ("have a crisis response plan in place"). That is not an actionable meeting of the minds.

52.     In addition, Hammervold has failed to allege an "***unlawful, overt act***" by any party to the alleged conspiracy. *Massey*, 652 S.W.2d at 934. The only "overt act" of which Diamonds Direct stands accused is "coordinating meetings with Manookian and Blank to attempt to reach a settlement that would seal off Manookian and Hammervold." [Doc. 1 ¶ 149.] Coordinating meetings is not unlawful. Diamond Doctor allegedly committed the "overt act" of making settlement offers that, if accepted, would have required Hammervold to agree not to "solicit for and/or accept any other diamond cases against Defendants." [Doc. 1 ¶ 146(a).] Making a settlement offer is not unlawful.

53.     Diamond Doctor and Blank allegedly pursued *Diamond Consortium v. Hammervold* "in a way aimed to drain Hammervold's insurance policy and financial resources." [Doc. 1 ¶ 146(b).] The Court has already determined that there was nothing improper or vexatious about Diamond Doctor and Blank's pursuit of their claims against Hammervold, and in any event, vexatious litigation is not *unlawful*. Diamond Doctor and Blank "obtain[ed] an agreed injunction" *issued by this Court* that prevents Diamond Doctor, Blank, and Manookian, "and persons in active concert or participation with them," from harassing, disparaging, or defaming each other. [Doc. 1 ¶ 146(d)-(e).][25] Seeking and obtaining agreed injunctive relief as part of a settlement is not unlawful, and Hammervold's suggestion that this Court signed an "illegal" order is preposterous.

54.     More generally, Hammervold's point seems to be that it would have been "unlawful" for him to accept the "illegal terms" offered by Diamond Doctor and Blank. *Id.* First, Hammervold's only contention is that accepting the settlement terms would have been a "violation

---

[25] The order is Doc. 360 in *Diamond Consortium v. Manookian.*

of an ethical rule." [Doc. 1 ¶ 122.] Violating ethical rules is disfavored, of course, and can lead to suspension of one's law license and perhaps imposition of a civil fine, but it is not unlawful. More importantly, though, the fact that Hammervold refused to perform what he contends would have been "illegal" has nothing whatsoever to do with whether one of the *Defendants* actually committed an "***unlawful, overt***" act in furtherance of the object of their alleged combination. It is smoke and mirrors. For all of those reasons, even if the Court determines that Hammervold has adequately alleged a cause of action against some or all of the remaining Defendants for "abuse of process," the Court should dismiss Hammervold's sole claim against Diamonds Direct, for conspiracy to abuse process, because Hammervold has not alleged facts that, if true, would satisfy the elements of the cause of action. To the contrary, he has failed with regard to multiple elements, and each of those failures is independently fatal to his claim against Diamonds Direct.

## G.  Hammervold Has Failed to State a Claim Upon Which Relief May Be Granted.

55.     In summary, to overcome a Rule 12(b)(6) motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 566 U.S. at 678). "A claim for relief is implausible on its face when the well-pleaded facts do not permit the court to infer more than the ***mere possibility*** of misconduct." *Harold H. Huggins Realty*, 634 F.3d at 796 (emphasis supplied) (quoting *Iqbal*). The court must not "strain to find inferences favorable to the plaintiffs or accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). When considered in this light, when the relevant substantive case law is applied, Hammervold's purely and admittedly speculative

allegations against Diamonds Direct fail to state a claim upon which relief may be granted for each and all of the reasons set forth above, and must be dismissed.

## **RELIEF REQUESTED**

For the foregoing reasons, Diamonds Direct respectfully requests that the Court grant the Motion; enter a take-nothing judgment for Diamonds Direct and against Hammervold on each of his claims, causes of action, and requests for relief, dismissing the same with prejudice; award Diamonds Direct its reasonable and necessary attorneys' fees and costs; and grant all other relief, general or special, at law or in equity, to which Diamonds Direct may be justly entitled.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/ *John M. Barcus*
John M. Barcus
Texas Bar No. 24036185
john.barcus@ogletree.com
Jeff T. Leslie
Texas Bar No.24091294
jeff.leslie@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  (214) 987-3800
Fax:  (214) 987-3927

**ATTORNEYS FOR DEFENDANT DIAMONDS DIRECT USA OF DALLAS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The foregoing instrument was filed using the Court's CM/ECF system on May 4, 2020, which will transmit a copy to all counsel of record.

/s/ *John M. Barcus*
John M. Barcus

42530970.1