IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARK HAMMERVOLD, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DIAMONDS DIRECT USA OF DALLAS, | § | Case No. 4:20-cv-165 |
| LLC, DAVID BLANK, DIAMOND | § | |
| CONSORTIUM, INC. D/B/A THE | § | |
| DIAMOND DOCTOR, AND JEWELERS | § | |
| MUTUAL INSURANCE COMPANY, | § | |
| Defendants. | § | |

**JEWELERS MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Shawn W. Phelan
sphelan@thompsoncoe.com
State Bar No. 00784758
Thomas M. Horan II
State Bar No. 24063938
thoran@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

**COUNSEL FOR JEWELERS MUTUAL
INSURANCE COMPANY**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**.................................................................................................................... 1

**STATEMENT OF ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1)** ............................ 2

**FACTUAL BACKGROUND** ................................................................................................. 2

**LEGAL STANDARD** ........................................................................................................... 5

**ARGUMENT AND AUTHORITIES** .................................................................................... 7

     A.    This Lawsuit is Governed by Texas Law, Not Illinois Law as Alleged by Hammervold. ................................................................................................ 7

     B.    Hammervold's Claims Are Barred by Res Judicata. .............................................. 9

     C.    Hammervold's Claims Are Barred by Collateral Estoppel................................... 12

     D.    Hammervold's Abuse of Process Claims is Barred by Limitations. .................... 13

     E.    Even if Not Time-Barred, Hammervold Has Failed to Plead a Plausible Claim for Abuse of Process Against Jewelers Mutual.......................................... 16

     F.    Hammervold Has Failed to Plead a Plausible Claim for Malicious Prosecution.......................................................................................................... 20

          1.    Diamond Doctor Lawsuit was Not Terminated in Hammervold's Favor .........................................................................................................20

          2.    Hammervold Did Not Plead nor Suffer Special Injury.............................21

     G.    Hammervold Fails to Plausibly Allege Essential Elements of His Conspiracy Claim.............................................................................................. 22

**CONCLUSION** ................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aly v. City of Lake Jackson*,
 53 F. App'x 538 (5th Cir. 2011) ............................................................................... 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................... 5

*Associated Recovery v. Does 1-44*,
 No. 3:16-CV-1025-L, 2018 WL 1517863 (N.D. Tex. Mar. 28, 2018) ...................... 6

*Bailey v. Willis*,
 No. 4:17-CV-00276, 2018 WL 3321461 (E.D. Tex. Jan. 11, 2018)......................... 13

*Ball v. A.O. Smith Corp.*,
 451 F.3d 66 (2d Cir. 2006) ...................................................................................... 13

*Bayou Contracting, Inc. v. Home Indem. Co.*,
 39 F.3d 321, 1994 WL 612762 (5th Cir. Oct. 26, 1994) ......................................... 22

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).............................................................................................. 5, 25

*Biliouris v. Patman*,
 751 F. App'x 603 (5th Cir. 2019) ............................................................................... 7

*Black v. N. Panola Sch. Dist.*,
 461 F.3d 584 (5th Cir. 2006) ................................................................................... 12

*Brown v. Edwards*,
 721 F.2d 1442 (5th Cir. 1984) ................................................................................. 17

*Charboneau v. Davis*,
 No. 4:13-cv-00678-ALM-CAN, 2017 WL 9250306 (E.D. Tex. Feb. 16, 2017) ...................... 17

*Coleman v. Carrington Mortg. Servs., LLC*,
 No. 4-19-CV- 0231-ALM-CAN, 2019 WL 7195392 (E.D. Tex. Dec. 3, 2019) ........................ 6

*Davis v. Dallas Area Rapid Transit*,
 383 F.3d 309 (5th Cir. 2004) ...................................................................................11

*DeLeon v. City of Dallas*,
 No. 3:02-cv-1097-K, 2005 WL 3500271 (N.D. Tex. Dec. 21, 2005) ...................... 16

*Dorsey v. Portfolio  Equities, Inc.*,
 540 F.3d 333 (5th Cir. 2008) ..................................................................................... 7

*Duzich v. Advantage Fin. Corp.*,
  395 F.3d 527 (5th Cir. 2004) ..................................................................... 20

*Enriquez-Gutierrez v. Holder*,
  612 F.3d 400 ................................................................................................. 7

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ...................................................................... 7

*Funk v. Stryker Corp.*,
  673 F. Supp. 2d 522 (S.D. Tex. 2009) ...................................................... 25

*Gatheright v. Clark*,
  680 F. App'x 297 (5th Cir. 2017) .............................................................. 14

*In re Missionary Baptist Found. of Am., Inc.*,
  712 F.2d 206 (5th Cir. 1983) ...................................................................... 7

*In re Paige*,
  610 F.3d 865 (5th Cir. 2010) .................................................................... 10

*Ingalls Shipbuilding v. Fed. Ins. Co.*,
  410 F.3d 214 (5th Cir.2005) ....................................................................... 7

*Jackson Marine Corp. v. Thomas Jordan, Inc.*,
  794 F.2d 989 (5th Cir. 1986) .................................................................... 10

*Jones v. Alcoa, Inc.*,
  339 F.3d 359 (5th Cir. 2003) ...................................................................... 6

*Kansa Reinsurance Co., Ltd. v. Cong. Mtg. Corp. of Tex.*,
  20 F.3d 1362 (5th Cir. 1994) ...................................................................... 6

*Kelly v. Huzella*,
  No. 94-20905, 71 F.3d 878, 1995 WL 726544 (5th Cir. Nov. 16, 1995) .................................. 10

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ................................... 7

*L.L.C. v. Jacobs Field Services*,
  North America, 951 F.3d 1219 ..................................................................... 7

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...................................................................... 6

*Marlin v. Moody Nat'l Bank, N.A.*,
  248 F. App'x 534 (5th Cir. 2007) .............................................................. 23

*Matter of Dallas Roadster, Limited*,
    846 F.3d 112 (5th Cir. 2017) ...............................................................................11, 12

*Mayo v. Hartford Life Ins. Co.*,
    354 F.3d 400 (5th Cir.2004) ....................................................................................... 7

*McCoy v. Hernandez*,
    203 F.3d 371 (5th Cir. 2000) .................................................................................... 13

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) .................................................................................... 25

*Mims v. Carrier Corp.*,
    88 F. Supp.2d 706 (E.D. Tex. 2000)....................................................................11, 12

*Ortega v. Young Again Prods., Inc.*,
    548 F. App'x 103 (5th Cir. 2013) ............................................................................. 13

*Proctor & Gamble Co. v. Amway Corp.*,
    376 F.3d 496 (5th Cir. 2004) ...................................................................................... 9

*Production Supply Co. Inc. v. Fry Steel Inc.*,
    74 F.3d 76 (5th Cir. 1996) ................................................................................... 18, 20

*Rodriguez v. Carroll*,
    510 F. Supp. 547 (S.D. Tex. 1981) .......................................................................... 22

*Santiago v. Bank of New York Mellon*,
    No. 4:18-CV-533-ALM-CAN, 2018 WL 7138389 (E.D. Tex. Dec. 27, 2018) ........ 9

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,
    73 F.3d 546 (5th Cir. 1996) ...................................................................................... 16

*Sligh v. Fator*,
    No. 4:19-CV-00036-ALM-CAN, 2019 WL 6833899 (E.D. Tex. Nov. 15, 2019) ..... 6

*Spence v. Glock, Ges.m.b.H*,
    227 F.3d 308 (5th Cir.2000) ....................................................................................... 7

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC, --- F.*,
    Supp. 3d --- , 2019 WL 4346538 (E.D. Tex. Sept. 12, 2019) .................................. 22

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)................................................................................................... 12

*Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*,
    No. 4:13-cv-00625, 2015 WL 1025207 (E.D.Tex. March 4, 2015).......................... 16

*Torch Liquidating Trust ex. rel. Bridge Associates L.L.C. v. Stockstill*,
   561 F.3d 377 (5th Cir. 2007) ................................................................................ 22

*Williams v. Whitaker*,
   No. 4:19-CV-00085-ALM-CAN, 2019 WL 7859563 (E.D. Tex. Oct. 28, 2019) ..................... 11

*Wolcott v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ................................................................................. 7

**State Cases**

*Amstadt v. U.S. Brass Corp.*,
   919 S.W.2d 644 (Tex.1996) ................................................................................. 9

*Baubles & Beads v. Louis Vuitton, S.A.*,
   766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ)................................... 16, 18

*Citizens Ins. Co. of Am. v. Daccach*,
   217 S.W.3d 430 (Tex. 2007) ................................................................................11

*City of San Antonio v. Cortes*,
   468 S.W.3d 580 (Tex. App.—San Antonio 2015, pet. denied) ............................... 12

*Detenbeck v Koester*,
   886 S.W.2d 477 (Tex. App. - Houston [1st Dist.]1994)................................... 16, 17

*Duncan v. Cessna Aircraft Co.*,
   665 S.W.2d 414 (Tex.1984) ................................................................................. 7

*Finlan v. Dallas ISD*,
   90 S.W.3d 395 (Tex. App.—Eastland 2002, pet. denied) ...................................... 22

*First United Pentecostal Church of Beaumont v. Parker*,
   514 S.W.3d 214 (Tex. 2017) ................................................................................ 23

*Gutierrez v. Collins*,
   583 S.W.2d 312 (Tex.1979) ................................................................................. 7

*Ins. Co. of N. Am. v. Morris*,
   981 S.W.2d 667 (Tex. 1998) ................................................................................ 22

*John G. & Marie Stella Kennedy Mem'l Found. v. Dewhurst*,
   90 S.W.3d 268 (Tex. 2002) ................................................................................. 12

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
   962 S.W.2d 507 (Tex. 1998) ................................................................................ 12

*Juhl v. Airington*,
   936 S.W.2d 640 (Tex. 1996) ................................................................................ 23

*Massey v. Armco Steel Co.,*
   652 S.W.2d *932* (Tex. 1983) ......................................................................... 24

*McCall v. Tana Oil & Gas Corp.,*
   82 S.W.3d 337 (Tex. App.—Austin 2001) ...................................................... 20

*Patrick v. Howard,*
   904 S.W.2d 941 (Tex.App.—Austin 1995, no writ) ....................................... 13

*Pitts & Collard, L.L.P. v. Schechter,*
   369 S.W.3d 301 (Tex. App.—Houston 2011) ........................................... 16, 19

*RRR Farms Ltd. v. Am. Horse Prot Ass'n,*
   957 S.W.2d 121 (Tex. App. - Hous. 1997) ..................................................... 16

*Sysco Food Servs., Inc. v. Trapnell,*
   890 S.W.2d 796 (Tex. 1994) .................................................................... 12, 13

*Tex. Beef Cattle Co. v Green,*
   921 S.W.2d 203 (Tex. 1996) .............................................................. *passim*

**Federal Statutes**

18 U.S.C. § 1926(c) ............................................................................................. 1, 3

28 U.S.C. § 1927 ............................................................................................ 4, 10, 13

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 2, 5, 6

Federal Rule of Civil Procedure 41 ....................................................................... 4

**Other Authorities**

1 A.L.R.3d 953 (1965) ........................................................................................ 14

59 Tex. Jur. 3d Process, Notices, and Subpoenas §1 ........................................... 18

62 Am Jur.2d Process Section 1 .......................................................................... 18

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971) ........................ 8

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS. Section 155 .................. 8

## INTRODUCTION

Mark Hammervold's complaints arise out of prior litigation wherein Defendants David Blank and Diamond Consortium, Inc. d/b/a The Diamond Doctor (collectively, Diamond Doctor") filed suit against Hammervold, and others, for violations of the Racketeer Influenced Corrupt Organizations Act,18 U.S.C. § 1926(c) ("the RICO Act") and civil conspiracy. After Diamond Doctor non-suited its claims against Hammervold, he sought sanctions and attorneys' fees from this Court based on allegations that Diamond Doctor brought its claims in bath faith. This Court disagreed with Hammervold, denied his motions, and awarded him no relief. Hammervold never appealed that decision, but now attempts to take a second-bite of the proverbial apple in bringing the instant litigation.

Hammervold alleges that Defendant Jewelers Mutual Insurance Company ("Jewelers Mutual"), the insurance carrier for Diamond Doctor, directed Diamond Doctor to file the lawsuit against him and controlled the litigation and that such conduct constitutes abuse of process, malicious prosecution, and civil conspiracy. Setting aside for the moment that Hammervold's allegations are factually groundless and as self-admitted, only based on information and belief, Hammervold's claims fail for multiple reasons. This Court has already held that Diamond Doctor did not bring its claims against Hammervold in bad faith – an element of both an abuse of process claim and a malicious prosecution claim. Accordingly, the doctrines of res judicata and collateral estoppel bar Hammervold from relitigating these issues. Likewise, Hammervold's abuse of process claim is barred by limitations as he failed to file within two years of the accrual of his claim.  Even assuming Hammervold could get over the procedural bars of res judicata, collateral estoppel and limitations, he has not alleged essential elements necessary to his claims. Specifically, Hammervold cannot show that process was abused, that he was a prevailing party, or that he

suffered the requisite special injury necessary under the law. Finally, because Hammervold cannot prevail on his underlying tort claims, he cannot prevail on his conspiracy claims. For all these reasons, none of Hammervold's allegations state a plausible claim for relief, and Jewelers Mutual is entitled to dismissal of those claims with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1)

Pursuant to Local Rule CV-7, the issues to be decided by the Court are as follows:

1.  Whether Texas or Illinois law applies to Hammervold's claims.

2.  Whether Hammervold's claims are barred by res judicata.

3.  Whether Hammervold's claims are barred by collateral estoppel.

4.  Whether Hammervold's abuse of process claim is barred by limitations

5.  Whether Hammervold's allegations in support of his claims for abuse of process, malicious prosecution, and civil conspiracy, even when taken as true, state a plausible claim for relief.

## FACTUAL BACKGROUND

In February 2016, Diamond Doctor sued Brian Manookian, Brian Cummings, and Cummings Manookian, PLC (collectively, the "Manookian Defendants") alleging that they engaged in a scheme to defame and defraud Diamond Doctor. *See Diamond Consortium v. Brian Manookian,* 4:16-cv-94 (E.D. Tex. Feb. 3, 2016).[1] Diamond Doctor alleged the Manookian Defendants created a website and advertisements falsely accusing Diamond Doctor of committing fraud and deceiving customers by over-grading diamonds.[2] According to Diamond Doctor, the

---

[1] Since Jewelers Mutual was not a party to the original action it offers the following information as a recital and summarization of Exhibit A, this Court's Mem. Op. and Ord. (Document 107) in *Diamond Consortium, Inc., and David Blank v. Mark Hammervold and Hammervold*, PLC, No. 4:17-CV-452.
[2] *Id.*

Manookian Defendants attempted to coerce Diamond Doctor into retaining them as counsel by threatening lawsuits against Diamond Doctor if it refused.[3] The idea being that the Manookian Defendants would then be conflicted out of representing individuals wanting to sue Diamond Doctor related to the alleged fraud and over-grading of diamonds.[4] According to Diamond Doctor, this was a pattern engaged in by the Manookian Defendants with other jewelers and that other jewelers entered into such representation agreements with the Manookian Defendants.[5]

In September 2016, Diamond Doctor added Mark Hammervold and Hammervold, PLC (collectively, "Hammervold") to the lawsuit.[6] Diamond Doctor claimed that Hammervold was part of the Manookian Defendants' extortion scheme in that the Manookian Defendants would solicit clients to sue jewelers and then refer clients to Hammervold that the Manookian Defendants would otherwise be conflicted out of representing.[7] Based on those allegations, Diamond Doctor asserted claims against the Hammervold Defendants for violations of the Racketeer Influenced Corrupt Organizations Act,18 U.S.C. § 1926(c) ("the RICO Act") and for civil conspiracy.[8]

On October 12, 2016, Hammervold filed a motion to dismiss for failure to state a claim, which the Court denied.[9] Hammervold's then-counsel subsequently filed a motion to withdraw as counsel based on "limited resources" of Hammervold and to permit Mark Hammervold to represent himself and Hammervold, PLC.[10] That too was denied by the Court.[11] Hammervold

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.; Second Amended Complaint against Cummins Manookian, PLC, Brian Manookian, Mark Hammervold, Hammervold, PLC* (Document 99) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94.

[7] *Id.*

[8] *Id.*

[9] *Id.; Exhibit A; Motion to Dismiss* (Document 113) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94; *Amended Motion to Dismiss* (Document 173) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94; Mem. Op. and Ord. (Document 180) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94.

[10] *Id.; Opposed Motion to Withdraw* (Document 196) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94.

[11] *Id.;* Mem. Op. and Ord. (Document 224) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94.

appealed both orders and filed a motion to stay the case.[12] On the motion of the Manookian Defendants, the Court then severed the claims against Hammervold into a separate case - *Diamond Consortium v. Mark Hammervold,* 4:17-cv-452 (E.D. Tex. June 27, 2017). [13]

In the *Hammervold* case, Hammervold again petitioned the Court to allow Hammervold's then attorney to withdraw and allow Mark Hammervold to represent himself and Hammervold, PLC, pro se.[14] The Court granted Hammervold's motion on January 15, 2019.[15] Shortly thereafter, on February 28, 2019, Diamond Doctor filed a voluntary notice of dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41.[16] The Court granted the motion for voluntary dismissal on February 28, 2019.[17] Subsequently, on March 14, 2019, Hammervold filed a motion to amend the judgment that the Court entered, arguing that because the judgment was silent as to fees and costs, Hammervold wanted the Court to amend it to allow the Court to re-assess costs and attorney's fees.[18] A week later, on March 21, 2019, Hammervold filed a motion for sanctions and attorneys' fees.[19] Hammervold argued that the Court should shift the costs to Diamond Doctor and award attorneys' fees to Hammervold based on: (1) 28 U.S.C. § 1927; and (2) the "bad faith" exception to the American Rule.[20]

---

[12] *Exhibit A.*

[13] *Id.*

[14] *Id.; Motion for Withdrawal* (Document 20) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[15] *Id.;* Order (Document 51) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[16] *Id.;* Unopposed Motion for Voluntary Dismissal without Prejudice (Document 88) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[17] *Id.;* Order (Document 89) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[18] *Id.; Motion to Amend/Correct Order* (Document 90) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[19] *Id.; Motion for Sanctions* (Document 94) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[20] *Id.*

The Court denied that motion on February 20, 2020.[21] In reaching its decision, the Court found, among other things, that:

- There was no clear successful or unsuccessful litigant;

- Diamond Doctor did not act in bad faith in filing suit against Hammervold;

- Diamond Doctor advanced plausible claims for relief; and

- Diamond Doctor's conduct throughout the course of the litigation was appropriate, not duplicative, nor harassing.[22]

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must meet two criteria:  (1) it must assert a plausible claim; and (2) it must set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). Neither a "formulaic recitation of the elements of a cause of action" nor "naked assertions [of fact] devoid of further factual enhancement" is sufficient to withstand dismissal. *Iqbal*, 556 U.S. at 678 (citations omitted). To satisfy the standard under *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads enough factual content to allow the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id.* (citing *Twombly*, 550 U.S. at 556). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950.  Therefore, if allegations are merely "conclusory," they are "not entitled to be assumed true." *Id.*  Even if a court decides that the factual allegations are

---

[21] Exhibit A.

[22] *Id.*

entitled to an assumption of truth, however, the facts must also "plausibly suggest an entitlement to relief." *Id.* at 1951.

Dismissal under Rule 12(b)(6) is also appropriate when a successful affirmative defense appears on the face of the pleadings. *Kansa Reinsurance Co., Ltd. v. Cong. Mtg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). The affirmative defense of collateral estoppel is also properly resolvable in a motion to dismiss. *See, e.g., Associated Recovery v. Does 1-44*, No. 3:16-CV-1025-L, 2018 WL 1517863, at *12 (N.D. Tex. Mar. 28, 2018), *aff'd sub nom. Associated Recovery L.L.C. v. Does*, No. 18-10596, 2019 WL 1977074 (5th Cir. May 2, 2019) ("[R]esolving the collateral estoppel arguments of Movant Defendants in the context of Rule12(b)(6) is appropriate and will avoid unnecessary waste of scarce judicial resources."). Likewise, a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense, so long as the bar to relief appears on the face of the complaint or other appropriately considered materials, as it does here. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). *See, e.g., Coleman v. Carrington Mortg. Servs., LLC*, No. 4-19-CV- 0231-ALM-CAN, 2019 WL 7195392 (E.D. Tex. Dec. 3, 2019) (citing *Jones*); *Sligh v. Fator*, No. 4:19-CV-00036-ALM-CAN, 2019 WL 6833899 (E.D. Tex. Nov. 15, 2019) (citing *Jones* and granting motion to dismiss based on limitations).

The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. In addition, the Court may take judicial notice of certain matters, including the record in prior related proceedings, and draw reasonable

inferences therefrom. *Wolcott v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008)); *Chevron Oronite Cp., L.L.C. v. Jacobs Field Services North America,* 951 F.3d 1219, 1229 n. 14 (5th Cir. 2020) (quoting *In re Missionary Baptist Found. of Am., Inc.,* 712 F.2d 206,211 (5th Cir. 1983)). *See, e.g., Biliouris v. Patman,* 751 F. App'x 603, 605 (5th Cir. 2019) (same); *Enriquez-Gutierrez v. Holder,* 612 F.3d 400, 410-411 (district courts have "the right to take notice of their own files and records in adjudicating cases between the same parties raising substantially similar issues as those addressed in previous cases"); *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). In considering this Motion, Jewelers Mutual respectfully requests that the Court take judicial notice of the entire records in *Diamond Consortium, Inc. et al v. Brian Manookian et al,* 4:16-cv-94 (E.D. Tex. Feb. 3, 2016) and *Diamond Consortium, Inc. et al v. Mark Hammervold et al,* 4:17-cv-452 (E.D. Tex. June 27, 2017).

## ARGUMENT AND AUTHORITIES

### A.    This Lawsuit is Governed by Texas Law, Not Illinois Law as Alleged by Hammervold.

In diversity cases, federal courts apply the choice-of-law principles of the forum state—in this case, Texas. *See Ingalls Shipbuilding v. Fed. Ins. Co.,* 410 F.3d 214, 230 (5th Cir.2005); *Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 403 (5th Cir.2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Texas courts use the "most significant relationship test" for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause. *See Spence v. Glock,* Ges.m.b.H, 227 F.3d 308, 311 (5th Cir.2000) (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984)). The relevant factors under the "most significant relationship test" are found in the Restatement (Second) of Conflicts which was adopted by the Texas Supreme Court in *Gutierrez v. Collins,* 583 S.W.2d 312, 319 (Tex.1979).

Section 6 of the Restatement enumerates the relevant factors to consider in any choice of law analysis; these include:

"(a) the needs of the interstate and international systems;
(b) the relevant policies of the forum;
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(d) the protection of justified expectations;
(e) the basic policies underlying the particular field of law;
(f) certainty, predictability and uniformity of result; and
(g) ease in the determination and application of the law to be applied.
*Gutierrez* at 319 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)).

Section 145 lists factual matters generally applicable to all torts, these include:

"(a) the place where the injury occurred;
(b) the place where the conduct causing the injury occurred;
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
(d) the place where the relationship, if any, between the parties is centered."
*Id.*

In addition to these sections, which are generally applicable to all torts, the Restatement contains rule sections addressing specific torts where the law is sufficiently settled. *See generally* Title B of the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS. Section 155 (Malicious Prosecution and Abuse of Process) is particularly relevant to this case. Section 155 provides: "The rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

Here, Hammervold complains that Jewelers Mutual engaged in malicious prosecution and abuse of process arising out of litigation pending in Texas, not Illinois. Furthermore, although Hammervold appears to currently reside in Illinois based on his signature block, at the time of the

litigation in question, he resided in Tennessee.[23]   In short, Hammervold provides no explanation

as to why Illinois law should apply over the law of the forum state, Texas, other than the conclusory

statement that "Illinois law applies to this element under applicable choice of law principles."

Accordingly, this matter is governed by Texas law.

**B.      Hammervold's Claims Are Barred by Res Judicata.**

Under federal and Texas law, res judicata applies if: (1) the parties are identical or in

privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3)

the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause

of action was involved in both actions. *See Proctor & Gamble Co. v. Amway Corp.,* 376 F.3d 496,

499 (5th Cir. 2004); *see also Santiago v. Bank of New York Mellon,* No. 4:18-CV-533-ALM-CAN,

2018 WL 7138389, at *4 (E.D. Tex. Dec. 27, 2018), *report and recommendation adopted,*

*Santiago v. Bank of New York Mellon as Tr. to JP Morgan Chase Bank,* No. 4:18-CV-533, 2019

WL 4267437 (E.D. Tex. Sept. 10, 2019) (Mazzant, J.). "People can be in privity in at least three

ways: (1) they can control an action even if they are not parties to it; (2) their interests can be

represented by a party to the action; or (3) they can be successors in interest, deriving their claims

through a party to the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex.1996).

Here, all of the elements for res judicata are satisfied. First, there is no question that Hammervold

and Diamond Doctor are identical based on a comparison of Hammervold's complaint in this

lawsuit and Diamond Doctor's complaint in its lawsuit against Hammervold.[24] Further, taken

Hammervold's pleadings as true for the purposes of this motion only, Jewelers Mutual was in

---

[23] *See* Hammervold's signature block in *Diamond Consortium, Inc. v. Brian Manookian et al,* 4:16-cv-94 (E.D. Tex. Feb. 3, 2016) and *Diamond Consortium, Inc. et al v. Mark Hammervold et al,* 4:17-cv-452 (E.D. Tex. June 27, 2017)
[24] *Second Amended Complaint against Cummins Manookian, PLC, Brian Manookian, Mark Hammervold, Hammervold, PLC* (Document 99) in *Diamond Consortium, Inc., v. Brian Manookian et al,* No. 4:16-CV-94; *Complaint* (Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020).

privity with Diamond Doctor as Hammervold asserts that Jewelers Mutual is alleged to have controlled the litigation by "insisting" that Hammervold be named as a defendant in Diamond Doctor's lawsuit against Hammervold "as a way to intimidate and seal-off Hammervold from accepting consumer claims against Diamond Doctor and/or other Jewelers Mutual Insureds."[25] Second, the prior judgment was rendered by a court of competent jurisdiction, this Court.[26] Third, this same Court entered a final order granting the underlying Plaintiffs' voluntary dismissal, denied all relief not previously granted and ordered the clerk of the court to close the civil action.[27] This Court also entered a memorandum opinion and order denying Hammervold's motion to amend the judgment and reassess costs and attorney's fees and denying Hammervold's motion for sanctions and attorney's fees, which was never appealed. Based on the Court's memorandum opinion and order denying sanctions, Hammervold is precluded from asserting claims in this lawsuit since the Court's memorandum opinion and order constitutes a final ruling on the merits of the alleged wrongful conduct. *See In re Paige,* 610 F.3d 865, 871-72 (5th Cir. 2010) (affirming application of res judicata effect from an order on sanctions, which was a final ruling on the merits of sanctions and never appealed, to a subsequently filed claim in a separate adversary proceeding). The order denying sanctions under 28 U.S.C. § 1927 is not subsumed by the final judgment and is reviewed independently. *See Jackson Marine Corp. v. Thomas Jordan, Inc.,* 794 F.2d 989, 991-92 (5th Cir. 1986); *Kelly v. Huzella,* No. 94-20905, 71 F.3d 878, 1995 WL 726544, *5 (5th Cir. Nov. 16, 1995) (not designated for publication).

Finally, the fourth element is met because the same claim or causes of action were involved in both cases. To determine this fourth factor, the Fifth Circuit and Texas law use the "transaction

---

[25] *Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020), ¶ ¶ 127, 147, 148, and 154
[26] Exhibit A*.;* Order (Document 89) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.
[27] Exhibit A

test" to determine if the two lawsuits involve the same claims or causes of action. *Williams v. Whitaker*, No. 4:19-CV-00085-ALM-CAN, 2019 WL 7859563, *4 (E.D. Tex. Oct. 28, 2019), report and recommendation adopted, No. 4:19-CV-85, 2019 WL 6768621 (E.D. Tex. Dec. 12, 2019) (Mazzant, J.); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).

Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff regarding all or any part of the transaction or series of connected transactions, out of which the original action arose. *Id*. The facts making up a transaction are determined pragmatically, but the critical issue is whether the two actions are based on the same nucleus of operative facts. *Id*. A "transaction" or "series of transactions" is determined by weighing various factors such as: (1) whether the facts are related in time, space, origin, or motivation; (2) whether they form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).

Comparing the claims and allegations in Diamond Doctor's complaint with those presented in this case shows that Hammervold's claims are barred by res judicata. In both lawsuits, Hammervold contends that Diamond Doctor acted with malice and/or bad faith. This Court, however, already found that no bad faith existed in Diamond Doctor's prosecution of its claims against Hammervold. Because Hammervold alleges Jewelers Mutual is in privity with Diamond Doctor, res judicata precludes Hammervold from meeting the bad faith element required for abuse of process and malicious prosecution claims in this lawsuit, a required element of both claims. *See Mims v. Carrier Corp*. 88 F. Supp.2d 706, 721 (E.D. Tex. 2000) (malicious prosecution elements*); In Matter of Dallas Roadster, Limited*, 846 F.3d 112, 124 (5th Cir. 2017) (abuse of process elements); *see also  See Production Supply Co. Inc. v. Fry Steel Inc.*, 74 F.3d 76, 78  (5th Cir. 1996)

(affirming dismissal of malicious prosecution action based on res judicata when the court in the prior lawsuit denied a bad-faith finding request after plaintiff voluntarily dismissed its lawsuit without prejudice).

**C.     Hammervold's Claims Are Barred by Collateral Estoppel.**

For similar reasons, based on the Court's prior rulings in the *Hammervold* case, Hammervold's claims fail under the doctrine of collateral estoppel. The application of collateral estoppel and the preclusive effect the Court's orders are determined under Texas law. *Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 588 (5th Cir. 2006). Texas courts have held that issue preclusion applies when: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the first action.  *City of San Antonio v. Cortes,* 468 S.W.3d 580, 586 (Tex. App.—San Antonio 2015, pet. denied)  (citing *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008); *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801-02 (Tex. 1994); *John G. & Marie Stella Kennedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 288 (Tex. 2002)). As set forth below, all of the elements of collateral estoppel are satisfied in this case.

First, the issue of bad faith was fully and fairly litigated before this Court, with this Court finding that no bad faith existed in Diamond Doctor's prosecution of its claims against Hammervold.[28] Texas law provides that an issue has been actually litigated when it was properly raised by the pleadings, submitted for determination, and determined. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 521-22 (Tex. 1998). In fact, this Court found that Diamond Doctor's "conduct throughout the course of litigation appropriate."[29] The issue of bad

---

[28] Exhibit A.
[29] *Id.*

faith is an essential element for both abuse of process and malicious prosecution claims. *See Mims* 88 F.Supp.2d at 721 (malicious prosecution elements); *In Matter of Dallas Roadster, Limited,* 846 F.3d at 124 (abuse of process elements). Therefore, the Court's determination that no bad faith existed is fatal to Hammervold's claims.

Second, Texas courts have held that strict mutuality of parties is not required to establish issue preclusion. *Trapnell*, 890 S.W.2d at 802. Issue preclusion requires that only the party against whom the doctrine of collateral estoppel is asserted, Hammervold, was a party in the prior action. *See also McCoy v. Hernandez,* 203 F.3d 371, 374 (5th Cir. 2000) (same). Here, although Jewelers Mutual was not a party in Diamond Doctor's prosecution of claims against Hammervold, Hammervold is still precluded from relitigating the issue in this lawsuit since he was a party in that action.[30] Thus, collateral estoppel bars Hammervold from relitigating the issue of bad faith, a required element of both of his claims in this lawsuit. Because Hammervold cannot prove a required element to show his abuse of process and malicious prosecution claims, dismissal is warranted.  *See Production Supply Co.*, 74 F.3d at 78; *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69-70 (2d Cir. 2006) (applying Fifth Circuit law to hold collateral estoppel precluded the re-litigation of the malice element required in a §523(a)(6) adversary proceeding after a district court previously awarded sanctions under §1927 in a prior related lawsuit).

## D.      Hammervold's Abuse of Process Claims is Barred by Limitations.

Texas law applies a two-year statute of limitation to abuse of process claims. *Bailey v. Willis*, No. 4:17-CV-00276, 2018 WL 3321461, at *13 (E.D. Tex. Jan. 11, 2018); *Ortega v. Young Again Prods., Inc.*, 548 F. App'x 103, 113 (5th Cir. 2013). The claim accrues when the wrongful act causes an injury. *Patrick v. Howard*, 904 S.W.2d 941, 944 (Tex.App.—Austin 1995, no writ).

---

[30] Exhibit A; *Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020)

For example, in *Aly v. City of Lake Jackson,* Plaintiff asserted a claim under Section 1983 arising out of an alleged wrongful arrest for credit card fraud. *Aly v. City of Lake Jackson*, 53 F. App'x 538, 639 (5th Cir. 2011). The Fifth Circuit determined that Plaintiff's claim was most analogous to an abuse of process claim and that the cause of action accrued when process was "abused," i.e. when Plaintiff was arrested and charged with the credit card fraud. *Id.* at 540.

Although not controlling as far as Texas law, the Fifth Circuit also recently examined the accrual of an abuse of process claim under Mississippi law and the analysis is both instructive and applicable. In *Gatheright v. Clark,* the court held that a claim for abuse of process accrues and limitations begins to run upon "the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *Gatheright v. Clark*, 680 F. App'x 297, 302 (5th Cir. 2017) (citing 1 A.L.R.3d 953 (1965)). Although the court in *Gatheright* was construing Mississippi law, Mississippi's elements for abuse of process claims are analogous to those in Texas.[31]

In support of his abuse of process claim, Hammervold alleges the Defendants:

a) Demanded that Hammervold agree not to solicit for and/or accept any other diamond cases against Defendants;
b) Pursued *Diamond Consortium v. Hammervold* in a way aimed to drain Hammervold's insurance policy and financial resources, so he would have no other option but to agree to the illegal terms Defendants sought from him;
c) Threatened Hammervold and alternatively offered to settle with Hammervold if he would provide adverse, false testimony against Brian Manookian in *Diamond Consortium v. Manookian;*
d) Used the filing of the *Diamond Consortium v. Manookian* lawsuit to attempt to disqualify Hammervold from representing claimants in consumer cases against Blank and Diamond Doctor;
e) Obtained an agreed injunction that arguably applied as against Hammervold – as a party they alleged he was in "active concert" with Manookian, when Hammervold would not agree to same;

---

[31] (1) an illegal and improper perverted use of the process, which was neither warranted nor authorized by the process; (2) ulterior motive or purpose of a person in exercising such illegal, perverted, or improper use of process; and (3) resulting damage or injury." *Gatheright,* 680 F. App'x at 302. The statute of limitations in Mississippi is one year. *Id.*

    f)  Obtained an Agreed Permanent Injunction to silence Brian Manookian, a critical witness for Hammervold's defense against Blank and the Diamond Consortium's bogus claims against Hammervold.[32]

Jewelers Mutual denies that it engaged in any of the above activity or that any of the above activity would even support a claim for abuse of process. However, taking the above allegations as true and if they constitute "process," none of the above "processes" was issued or obtained by any Defendant within the two years preceding the date of his lawsuit. The complained of settlement communications happened as early as June 2016 and as late as January 2018.[33] Using the latest date possible, January 31, 2018, Hammervold would have had to file suit by January 31, 2020 related to any abuse of process arising out of the complained of settlement discussions. Likewise, the injunction referenced by Hammervold was entered by the Court on August 16, 2017.[34] Accordingly, Hammervold had until August 16, 2019 to pursue his abuse of process claim related to the injunction. Hammervold, however, did not file suit until February 27, 2020, so his abuse of process claims are barred as a matter of law.

Diamond Doctor's decision to amend its pleading in *Diamond Consortium, Inc. v. Manookian* adding Hammervold to the lawsuit and the issuance of the citation and summons on Hammervold is arguably the only actual process referenced by Hammervold in his abuse of process allegation. Caselaw discussed *infra*, however, is clear that an allegation that the lawsuit was instituted with improper motives is a claim for malicious prosecution, not abuse of process. Regardless, the Second Amended Complaint adding Hammervold was filed, on September 14, 2016.[35] Since his cause of action accrued on or about that day, his deadline to file suit for abuse of process was

---

[32] *Complaint* (Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020), ¶ 146.

[33] *Id.* at ¶¶ 92, 104, 123.

[34] *Agreed Permanent Injunction* (Document 360) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[35] *Second Amended Complaint against Cummins Manookian, PLC, Brian Manookian, Mark Hammervold, Hammervold, PLC* (Document 99) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94.

September 14, 2018. Again, he did not file this suit until February 27, 2020, more than eighteen months after limitations had run. To the extent his claims arise out of the filing of suit and issuance of process, they are time-barred.

**E.     Even if Not Time-Barred, Hammervold Has Failed to Plead a Plausible Claim for Abuse of Process Against Jewelers Mutual.**

To state a claim for abuse of process, Hammervold must allege: 1) Jewelers Mutual made an illegal, improper, or perverted use of the process after it was issued; 2) Jewelers Mutual had an ulterior motive or purpose in using the process; and 3) Hammervold suffered injury as a result. *See Detenbeck v Koester*, 886 S.W.2d 477, 480 (Tex. App. - Houston [1st Dist.]1994). When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs. *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex. App.—Texarkana 1989, no writ); *see, e.g., Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 577 (5th Cir. 1996) (citing *Baubles & Beads*). Instead, abuse of process only exists "where the original process is used to accomplish an end other than that which the writ was designed to accomplish." *Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*, No. 4:13-cv-00625, 2015 WL 1025207, at *8 (E.D.Tex. March 4, 2015); *see, e.g., DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2005 WL 3500271, at *5 (N.D. Tex. Dec. 21, 2005) (the defendant's use of the process must be "a use neither warranted [nor] authorized by the process").

More specifically, an abuse-of-process claimant must demonstrate that he suffered "special damages." *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 332 (Tex. App.—Houston 2011); *RRR Farms Ltd. v. Am. Horse Prot Ass'n*, 957 S.W.2d 121, 134 (Tex. App. - Hous. 1997) (noting that claimant must "show something more than the damages that are incidental to the filing of the lawsuit"). To satisfy the "special damages" requirement, "[t]here must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or

sequestration." *Tex. Beef Cattle Co. v Green*, 921 S.W.2d 203, 209 (Tex. 1996) (applying same standard to cause of action for malicious prosecution). "It is insufficient that a party has suffered the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees." *Id*. at 208.  Simply put, "the mere filing of a lawsuit cannot satisfy the special injury requirement especially when the filing causes no damages other than those to be expected of defending a lawsuit." *Id.*

Here, Hammervold has failed to set forth any specific factual allegations demonstrating that Jewelers Mutual invoked the legal process, let alone made an "illegal, improper or perverted use of the process" with an "ulterior motive or purpose." *Detenbeck*, 886 S.W.2d at 480; *Charboneau v. Davis*, No. 4:13-cv-00678-ALM-CAN, 2017 WL 9250306, at *13 (E.D. Tex. Feb. 16, 2017) (citing *Brown v. Edwards*,721 F.2d 1442, 1454-1455 (5th Cir. 1984)). Jewelers Mutual was neither a party to Diamond Doctor's lawsuit against Hammervold nor it is alleged in the pleadings.[36] Further, Hammervold does not allege that Jewelers Mutual itself filed suit against Hammervold or issued process against Hammervold. Instead, the crux of Hammervold's complaint against Jewelers Mutual is that Jewelers Mutual was actually behind the scenes directing Diamond Doctor's lawsuit against Hammervold. Specifically,

> "Based on information and belief, Jewelers Mutual Insurance Company continued to pay for the Blank and Diamond Doctor's attorneys fees' and expenses in prosecuting the federal lawsuit against Hammervold, even though there were no remaining affirmative claims against Blank or Diamond Doctor. Jewelers Mutual Insurance Company continued to fund and participate in the lawsuit against Hammervold as a way to intimidate and seal-off Hammervold from accepting consumer claims against Diamond Doctor and/or other Jewelers Mutual Insureds."

By Hammervold's own admission, Jewelers Mutual's role in Diamond Doctor's lawsuit was limited to the role every insurance carrier plays in litigation involving their insured: providing

---

[36] *Diamond Consortium, Inc. et al v. Mark Hammervold et al,* 4:17-cv-452 (E.D. Tex. June 27, 2017)

an attorney, paying for legal costs, and monitoring settlements.[37] None of those activities constitute wrongful activity that would support an abuse of process claim. On this basis alone, Jewelers Mutual is entitled to dismissal of Hammervold's claims.

Regarding the wrongful activity ascribed to all Defendants supporting his abuse of process claims, those activities fall in three categories: alleged settlement discussions, the agreed injunction with the Manookian parties, and the initial filing of the lawsuit.[38]

The term "process" means a warrant, writ, order, mandate, or other formal writing, issued by some court, body, or official having authority to issue process. 59 Tex. Jur. 3d Process, Notices, and Subpoenas §1; 62 Am Jur.2d Process Section 1. Accordingly, making a settlement offer is not even a use of legal process, much less an abuse of process. Regarding the agreed injunction with the Manookian parties, Hammervold was not a party to that injunction and it does not restrict his behavior in anyway.[39] Further, neither Jewelers Mutual nor Diamond Doctor ever sought an injunction against Hammervold.[40]

Regarding Diamond Doctor's act of adding Hammervold to the Manookian litigation, Hammervold claims this was done in an attempt "drain" Hammervold's insurance policy. However, even if an ulterior motive existed, it would still not rise to the level of abuse of process. "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Baubles & Beads*, 766 S.W.2d at 378-379." Here, Diamond Doctor sued Hammervold and served him with process, using that process in precisely the way it was intended which was to compel him to answer and appear in the lawsuit. Because

---

[37] *Id.*

[38] *Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020), ⁋ 146.

[39] *Agreed Permanent Injunction* (Document 360) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[40] *Second Amended Complaint against Cummins Manookian, PLC, Brian Manookian, Mark Hammervold, Hammervold, PLC* (Document 99) in *Diamond Consortium, Inc., v. Brian Manookian et al,* No. 4:16-CV-94.

Hammervold has not alleged facts, if true, that would amount to an "illegal, improper or perverted" use of legal process, he has failed to state a claim for abuse of process and his abuse of process claims should be dismissed.

Alternatively, Hammervold has not alleged "special damages." *Schechter*, 369 S.W.3d at 332. Diamond Doctor never requested any sort of relief that could constitute a physical interference with Hammervold's person or property, such as an arrest, attachment, injunction, or sequestration.[41] Although Hammervold cites to an agreed injunction in the Manookian lawsuit as part of his abuse of process claim, Hammervold was not a party to that injunction and Diamond Doctor never sought an injunction against Hammervold.[42] *See Tex. Beef Cattle,* 921 S.W.2d at 210 (holding that the reach of the special injury does not include the incidental effects for an injunction on those who were not directly targeted by the injunction).

Hammervold contends that the agreed injunction between Diamond Doctor and the Manookian parties entered as part of the settlement of their dispute prevented Diamond Doctor and the Manookian parties from engaging in any harassing conduct or disparaging or defaming the services, business, integrity, veracity or personal or professional reputations of either party in a personal or professional manner.[43] Inexplicably, Hammervold further alleges that the injunction applied to him as someone "in active concert or participation with [the Parties] who receive[s] actual notice of this order by personal service or otherwise."[44] Hammervold claims that obtaining such *agreed* injunction was an abuse of process because Diamond Doctor alleged Hammervold was in active concert with the Manookian parties and such injunction was used to silence Brian

---

[41] *Id.*

[42] *Agreed Permanent Injunction* (Document 360) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452.

[43] *Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020), ¶ 117.

[44] *Id.* at ¶ 118.

Manookian, a critical witness for Hammervold's defense against Diamond Doctor's claims.[45] At best, Hammervold merely pleads the incidental effects of an injunction between Diamond Doctor and the Manookian Defendants in an effort to support the special injury requirement of an abuse of process claim.[46] Such pleading, however, is insufficient to support a special injury under Texas law. *See Tex. Beef Cattle*, 921 S.W.2d at 210.

**F.   Hammervold Has Failed to Plead a Plausible Claim for Malicious Prosecution.**

To prevail on his claim for malicious prosecution under Texas law, Hammervold must establish that:  (1) a civil proceeding was instituted or continued against him; (2) the proceeding was instituted or continued by or at the insistence of the defendant; (3) the defendant acted with malice; (4) the defendant did not have probable cause for the proceeding; (5) the proceeding was terminated in his favor; and (6) he suffered special injury as a result of the proceeding. *Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 529 (5th Cir. 2004) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996)).

*1.     Diamond Doctor Lawsuit was Not Terminated in Hammervold's Favor*

To prove a malicious prosecution claim, one of the required elements Hammervold must meet is that the prior lawsuit was terminated in Hammervold's favor. *Tex. Beef Cattle Co.* 921 at 208. Diamond Doctor, however, voluntarily dismissed its lawsuit against Hammervold.[47] Texas law is clear that a voluntary dismissal is not a favorable termination for the plaintiff. *Duzich*, 395 F.3d at 530. While some courts have suggested that a voluntary dismissal could constitute a favorable termination under the right circumstances, none exist here and Hammervold has not pled any circumstances giving rise to that conclusion. *See McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d

---

[45] *Id.* at ⁋ 148.

[46] *Id.*

[47] Exhibit A; Unopposed Motion for Voluntary Dismissal without Prejudice (Document 88) in *Diamond Consortium et al v. Mark Hammervold et al,* 4:17-cv-452

337, 350 (Tex. App.—Austin 2001), rev'd in part on other grounds, 104 S.W.3d 80 (Tex. 2003).

Finally, this Court previously determined "there is not a clear successful litigant and unsuccessful

litigant. Plaintiffs voluntarily dismissed their case prior to trial, with no adverse rulings on

dispositive motions or adverse rulings looming."[48] Because the proceeding was not terminated in

his favor in the complained of action, Hammervold's malicious prosecution claim fails as a matter

of law and dismissal is appropriate.

### 2.       Hammervold Did Not Plead nor Suffer Special Injury

To prevail on his claim for malicious prosecution, Hammervold must establish he suffered

a special injury. *Tex. Beef Cattle Co.*, 921 S.W.2d at 208 (malicious prosecution claim). A "special

injury" constitutes a physical interference with the plaintiff's person or property, such as arrest,

attachment, injunction, or sequestration. *Tex. Beef Cattle*, 921 S.W.2d at 209.

Here, Hammervold fails to present any special injury. There is absolutely no allegation of

any physical interference with Hammervold's person or property, such as arrest, attachment,

injunction, or sequestration to support Hammervold's malicious prosecution claim.[49] Likewise,

Diamond Doctor never requested any sort of relief that could constitute a physical interference

with Hammervold's person or property, such as an arrest, attachment, injunction, or

sequestration.[50] In the absence of any actual grounds supporting a claim for malicious prosecution,

Hammervold alleges "special injury" in that the alleged malicious prosecution:

a)   created a potential "conflict of interest between Hammervold and prospective claimants
     that limited Hammervold's ability to accept additional representation of claimants against
     Blank and The Diamond Doctor;"

b)   damaged Hammervold's professional reputation in a manner that harmed his future job

---

[48] Exhibit A.

[49] *Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020).

[50] *Second Amended Complaint against Cummins Manookian, PLC, Brian Manookian, Mark Hammervold, Hammervold, PLC* (Document 99) in *Diamond Consortium, Inc., v. Brian Manookian et al*, No. 4:16-CV-94.

prospects;"

c)   and "the Defendants conspired to use litigation 'not to resolve any legal dispute between the parties, but to keep plaintiff from engaging in its business"[51]

Jewelers Mutual denies all of the above allegations, but even if true, none of these allegations support a "special injury" as determined by Texas law. *See Bayou Contracting, Inc. v. Home Indem. Co.,* 39 F.3d 321, 1994 WL 612762, *2 (5th Cir. Oct. 26, 1994) (not designated for publication) (holding that lost business, income or revenue did not meet the special injury requirement for a malicious prosecution claim); *Finlan v. Dallas ISD,* 90 S.W.3d 395, 406 (Tex. App.—Eastland 2002, pet. denied) (holding reputation and business loss damages do not meet the special injury requirement for malicious prosecution). Because Hammervold has failed to plead a "special injury" as required to bring a malicious prosecution claim, this Court should dismiss Hammervold's claim for failure to state a claim. *See Rodriguez v. Carroll*, 510 F. Supp. 547, 553-54 (S.D. Tex. 1981) (dismissing malicious prosecution claim for failure to plead a special injury); *see also   Torch Liquidating Trust ex. rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2007) (dismissal is proper if the complaint fails to plead a specific element of the claim).

## G.      Hammervold Fails to Plausibly Allege Essential Elements of His Conspiracy Claim.

To state a claim for civil conspiracy, a plaintiff must allege:  (1) a combination of two or more persons; (2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) injury suffered by him as a proximate result of the wrongful act. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998*); StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, --- F. Supp. 3d --- , 2019 WL 4346538, at *33 (E.D. Tex. Sept. 12, 2019). Importantly, the "meeting of

---

[51] *Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020), ¶ 158.

the minds" element requires Hammervold to plead facts demonstrating that Jewelers Mutual, as alleged co-conspirators, knew the object and purpose of the conspiracy, agreed to join the scheme, and did so with the specific intent to injure Plaintiff. *See, e.g.*, *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 538 (5th Cir. 2007); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). Thus, an actionable civil conspiracy exists only a to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement." *Parker,* 514 S.W.3d at 222.

Based on Hammervold's pleadings, the conspiracy entailed Jewelers Mutual conspiring with Diamonds Direct, Blank, and Diamond Doctor to "abuse process against Hammervold in the federal case and in the state law consumer cases, in order to coerce Hammervold into entering an illegal settlement agreement, in which Hammervold agreed to never solicit or pursue claims against The Diamond Doctor, Blank, and Diamonds Direct…"[52] Hammervold's petition is silent as to any facts or allegations related to any conspiracy related to his malicious prosecution claim.[53]

However, Hammervold alleges that this conspiracy began all the way back in January 2016 when the Diamond Doctor Defendants and Diamonds Directs concocted this "plan of attack" in response to consumer actions filed by Manookian and Hammervold against another jeweler.[54] As Hammervold tells the story, Diamond Doctor and Diamonds Direct viewed those lawsuits as a threat and instituted the proceedings against Hammervold in response.[55] There is no allegation, mention, or reference that Jewelers Mutual was part of this alleged plan in 2016.[56] Accordingly,

---

[52] *Id*. at ¶ 147.
[53] *Id*. at ¶ 154.
[54] *Id*. at ¶ 75.
[55] *Id.*
[56] *Id*. at ¶¶ 72-75.

there is no allegation that Jewelers Mutual knew the object and purpose of the conspiracy at the outset, agreed to join the scheme, and did so with the specific intent to injure Hammervold. In the absence of those allegations, Hammervold's conspiracy claim fails as a matter of law and dismissal is appropriate.

In addition, Hammervold has failed to allege an "unlawful, overt act" by any party to the alleged conspiracy. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Hammervold pleads that Diamonds Direct "[coordinated] meetings with Manookian and Blank to attempt to reach a settlement that would seal off Manookian and Hammervold."[57] Coordinating meetings, however is not illegal or unlawful. As to Jewelers Mutual, Hammervold contends that Jewelers Mutual's unlawful, overt act was "signing off on settlement demands communicated to Hammervold that would unlawfully seal Hammervold off from soliciting claims against Blank, Diamond Doctor, and/or Diamonds Direct."[58] First, other than Hammervold's one sentence in paragraph 148 of his petition, there is no other facts or allegations– even any based on information and belief – in Hammervold's petition that Jewelers Mutual was part of any decisions related to settlement offers made to Hammervold.[59] Second, even if Hammervold is right, making or approving a settlement offer is not unlawful. Finally, it is unclear from his petition if Hammervold claims that Diamond Doctor took any overt, unlawful acts in furtherance of the conspiracy. In the absence of any such allegations, clearly Hammervold's claim of conspiracy fails as to all Defendants. Alternatively, if Hammervold relies upon the enumerated allegations in paragraph

---

[57] *Id*. at ¶ 149.
[58] *Id*. at ¶ 148.
[59] *Complaint* (Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020).

146 of his petition as "overt acts," none of those acts – filing a lawsuit, making settlement offers, and seeking and obtaining agreed injunctions – are unlawful.[60]

Hammervold's conspiracy allegations are also made on "information and belief," which are insufficient as a matter of law.[61] In *Twombly*, the U.S. Supreme Court found that an allegation upon information and belief that defendants had entered into a conspiracy, without more, failed to provide sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 551; s*ee also Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009) (same). This is yet another reason Hammervold's civil conspiracy claim fails.

Finally, because Hammervold has failed to state a claim for the underlying torts on which his conspiracy claim relies, he has failed to state a claim for civil conspiracy. Under Texas law, civil conspiracy is a derivative tort; if a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails. *Meadows v. Hartford Life Ins. Co.,* 492 F.3d 634, 640 (5th Cir. 2007). Therefore, whether a plaintiff has stated a claim for civil conspiracy "rises and falls on whether he stated a claim on an underlying tort." *Meadows,* 492 F.3d at 640.

For each of these reasons, the Court should dismiss Hammervold's claim for civil conspiracy.

---

[60] *Id*. at ¶ 146.
[61] *See Complaint (*Document 1) in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al,* 4:20-cv-165 (E.D. Tex. February 27, 2020),¶ 84 ("*Based on information and belief*, Blank and Diamonds Direct discussed ways that Blank could seal-off Hammervold from representing claimants in future suits in order to address this concern.") (emphasis added); *Id*. at ¶ 89 ("*Based on information and belief*, Jewelers Mutual Insurance Company participated in these negotiations and had agreed to provide at least part of the money that was to be paid to Manookian if a hush agreement could be reached.") (emphasis added); *Id*. at ¶ 105 ("*Based on information and belief,* in connection with that acquisition, Diamonds Direct and Diamond Doctor agreed and conspired to use the federal lawsuit as leverage to intimidate Hammervold into agreeing not to solicit or pursue any future claims against either Diamonds Direct and Diamond Doctor.") *Id*. at ¶ 127 ("*Based on information and belief*, Jewelers Mutual Insurance Company continued to pay for the Blank and Diamond Doctor's attorneys fees' expenses in prosecuting the federal lawsuit against Hammervold, even though there were no remaining affirmative claims against Blank or Diamond Doctor.")

## CONCLUSION

For the reasons set forth above, Jewelers Mutual requests that the Court grant its motion to dismiss, that Hammervold's claims against Jewelers Mutual be dismissed with prejudice, that Hammervold take nothing by this suit, and that the Court grants such other and further relief, both general and specific, in law or at equity, as the Court deems just and proper.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:  */s/ Shawn W. Phelan*
     Shawn W. Phelan
     sphelan@thompsoncoe.com
     State Bar No. 00784758
     Thomas M. Horan II
     State Bar No. 24063938
     thoran@thompsoncoe.com
     THOMPSON, COE, COUSINS & IRONS, L.L.P.
     700 N. Pearl Street, 25th Floor
     Dallas, Texas 75201
     Telephone: (214) 871-8200
     Facsimile: (214) 871-8209

**COUNSEL FOR JEWELERS MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of May, 2020, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification to such users that are registered as e-filers with that system.

*/s/ Shawn W. Phelan*
Shawn W. Phelan
Thomas M. Horan II