**IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION**

| | | |
|---|---|---|
| **MARK HAMMERVOLD** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **No. 4:20-CV-00165-ALM** |
| **v.** | § | |
| | § | |
| **DIAMONDS DIRECT USA OF** | § | |
| **DALLAS,  LLC; DAVID BLANK;** | § | |
| **DIAMOND CONSORTIUM, INC.** | § | |
| **d/b/a THE DIAMOND DOCTOR; and** | § | |
| **JEWELERS MUTUAL INSURANCE** | § | |
| **COMPANY** | § | |

**PLAINTIFF MARK HAMMERVOLD'S RESPONSE IN OPPOSITION TO
DEFENDANTS DAVID BLANK AND DIAMOND CONSORTIUM, INC. D/B/A THE
DIAMOND DOCTOR'S 12(B)(6) MOTION TO DISMISS**

**MARK HAMMERVOLD**[1]
Mark Hammervold, IL #6320744
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
mark@hammervoldlaw.com

*Pro Se Plaintiff*

---

[1] Mark Hammervold is admitted to practice in this district, but is representing himself *pro se* in this case.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

FACTUAL BACKGROUND ........................................................................1

MOTION STANDARD ...........................................................................7

ARGUMENT .......................................................................................8

    I.    HAMMERVOLD'S CLAIMS FOR MALICIOUS PROSECUTION AND ABUSE OF PROCESS WERE NOT ADJUDICATED BY THIS COURT'S DENIAL OF HAMMERVOLD'S POST-JUDGMENT SANCTIONS MOTION IN THE UNDERLYING LAWSUIT ................................................8

        a.  Claim Preclusion Does Not Apply ...........................................8

        b.  Issue Preclusion Does Not Apply ............................................11

    II.   HAMMERVOLD HAS ALLEGED A SPECIAL INJURY ............................18

        a.  Illinois Law Should Govern Whether Hammervold Suffered a "Special Injury" or "Special Damages" Due to Defendants' Abuse of Process ......18

        b.  Alternatively, it is Premature to Conclusively Decide the Choice-of-Law Issue Against the Pleader at this Stage of the Case Before Any Discovery and Without Any Evidentiary Record ...........................................22

        c.  Hammervold has Clearly Alleged Damages Cognizable as a "Special Injury" Under Illinois Law ...................................................23

        d.  Even Under Texas Law, Hammervold has Pled a "Special Injury" .........25

    III.  HAMMERVOLD HAS PLEAD SUFFICIENT FACTS TO ESTABLISH THE FAVORABLE TERMINATION ELEMENT FOR MALICIOUS PROSECTION ....................................................................................27

    IV.  HAMMERVOLD HAS SUFFICIENTLY DEMONSTRATED THAT HE SUFFERED DAMAGES ....................................................................30

    V.   HAMMERVOLD HAS STATED A CLAIM FOR CONSPIRACY ...............30

CONCLUSION ....................................................................................30

# **TABLE OF AUTHORITIES**

*Alkek & Williams, Ltd. v. Tuckerbrook Alternative Invs., LP,* 2012 U.S. Dist. LEXIS 125 (S.D. Tex. Jan. 3, 2012) .................................................................................................................. 10

*Andrade v. Chojnacki*, 65 F. Supp. 2d 431 (W.D. Tex. 1999) .................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 7

*Ball v. A.O. Smith*, 451 F.3d 66 (2d Cir. 2006) .......................................................................... 17

*Baros v. Tex. Mex. Ry.,* 400 F.3d 228 (5th Cir. 2005) ................................................................ 16

*Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992) .................................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 7

*Berry v. McLemore*, 795 F.2d 452 (5th Cir. 1986) ..................................................................... 11

*Blanchard & Co., Inc. v. Contursi,* 2000 U.S. Dist. LEXIS 6672 (E.D. La. 2000) .................... 22

*Bossin v. Towber*, 894 S.W.2d 25 (Tex. App. 14th 1994) .......................................................... 14

*Brister v. A.W.I., Inc.,* 946 F.2d 350 (5th Cir. 1991) ............................................................. 12,15

*Bryant v. Military Dep't*, 597 F.3d 678 (5th Cir. 2010) ........................................................ 13,15

*Byerly v. Std. Ins. Co.,* 2020 U.S. Dist. LEXIS 51854 (E.D. Tex. Mar. 25, 2020) ..................... 28

*Chambers v. NASCO*, 501 U.S. 32 (1991) .................................................................................. 13

*Cohen v. Lupo*, 927 F.2d 363 (8th Cir. 1991) ........................................................................ 10,11

*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995) ....................................... 12,15,16

*Columbia Valley Healthcare Sys., L.P. v. Pisharodi,* 2020 Tex. App. LEXIS 806 (Tex. App. 13th Jan. 30, 2020) ........................................................................................................................ 25

*Constantin Land Trust v. Epic Diving & Marine Servs.*, LLC, 2012 U.S. Dist. LEXIS 63645 (E.D. La. May 4, 2012) ............................................................................................................ 8

*Constr. Cost Data, LLC v. Gordian Grp.*, 2017 U.S. Dist. LEXIS 77481 (S.D. Tex. Apr. 24, 2017) ................................................................................................................................... 19,24

*Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267 (Ill. 1997) .................. 10

*D-1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36 (5th Cir. 1989) .......................... 14

*Daniels v. Kelley*, 2010 Tex. App. LEXIS 5932 (Tex. App. 4th Jul. 28, 2010) .......................... 27

*Durham v. Supreme Court of Tennessee*, 2007 U.S. Dist. LEXIS 23252 (M.D. Tenn. Jan. 29, 2007) ....................................................................................................................................... 24

*Duzich v. Advantage Fin. Corp.*, 424 F.Supp. 910 (S.D.Tex. 2003) .......................................... 28

*Ellis County State Bank v. Keever*, 888 S.W.2d 790 (Tex. 1994) .............................................. 15

*Energy Coal S.P.A. v. Citgo Petroleum Corp.,* 836 F.3d 457 (5th Cir. 2016) ............................ 18

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................................................... 8

*FDIC v. Conner*, 20 F.3d 1376 (5th Cir. 1994) ..................................................................... 13,15

*Floyd v. CIBC World Mkts., Inc.,* 426 B.R. 622 (S.D. Tex. 2009) ............................................. 22

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999) ................................................................... 13

*Goldstein v. Dobashi,* 2012 Cal. App. Unpub. LEXIS 6598 (Cal. App. 1st Sept. 11, 2012) ....... 15

*Graber v. Fuqua*, 279 S.W.3d 608 (Tex. 2009) ................................................................... 9,10,13

*Greening v. Moran*, 739 F. Supp. 1244 (C.D. Ill. 1990) ............................................................ 27

*Gunnels v. City of Brownfield*, 153 S.W.3d 452 (Tex. App. 2013) ....................................... 13,14

*Haynesville Shale Rentals, LLC v. Total Equip. & Serv.*, 2012 U.S. Dist. LEXIS 147297 (S.D. Tex. Oct. 12, 2012) ................................................................................................................. 23

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007) ..................................... 8

*Incas & Monterey Printing & Packaging v. M/V Sang Jin*, 747 F.2d 958 (5th Cir. 1984) ......... 11

*Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203 (Tex. 1999) ................................. 10

*Izen v. Catalina*, 256 F.3d 324 (5th Cir. 2001).......................................................................... 28

*Janvey v. Proskauer Rose LLP*, 2015 U.S. Dist. LEXIS 187809 (N.D. Tex. Jun. 23, 2015)....... 22

*Leaf Trading Cards, LLC v. Upper Deck Co.,* 2020 U.S. Dist. LEXIS 27780 (N.D. Tex. Feb. 19, 2020)........................................................................................................................................ 22

*Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267 (E.D.N.Y. 2014) ........................ 28

*McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337 (Tex. App. – Austin 2001) ...................... 27,28

*Pet Silk, Inc. v. Jackson*, 2010 U.S. Dist. LEXIS 2826 (S.D. Tex. Jan. 14, 2010) ...................... 10

*Pic-Walsh Freight Co. v. Cooper,* 618 S.W.2d 449 (Mo. App. E.D. 1981) ................................. 14

*Pitts & Collard v. Schechter*, 369 S.W.3d 301 (Tex. App. 1st 2011)........................................... 21

*Pizza Hut, Inc. v. Lundy Enters., LLC*, 2013 U.S. Dist. LEXIS 201172 (N.D. Tex. Jun. 11, 2003) .................................................................................................................................................. 16,17

*Production Supply v. Fry Steel,* 74 F.3d 76 (5th Cir. 1996) ........................................................ 17

*Recoveredge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995)...................................................... 12

*Rothman v. City of Chicago*, 2003 U.S. Dist. LEXIS 8376 (N.D. Ill. May 14, 2003)............. 23,24

*Sadler v. Int'l Paper Co.*, 2010 U.S. Dist. LEXIS 130562  (W.D. La. Sept. 29, 2010).............. 30

*SB Int'l, Inc. v. Jindal*, 2007 U.S. Dist. LEXIS 34999 (N.D. Tex. May 14, 2007)....................... 7

*Smith v. Michigan Buggy Co.*, 175 Ill. 619 (1898) ..................................................................... 21

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016) ...................................... 9

*Southmark Corp. v. Coopers & Lybrand (in Re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999) .................................................................................................................................................. 10,12

*Southern Audio Servs. v. Carbon Audio, LLC*, 141 F. Supp. 3d 653 (M.D. La. 2015) ........... 22,23

*Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830 (5th Cir. 1998)............................................ 7,29

*Test Masters Educ. Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ............................................... 16

*Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996)................................................... 25,26

*Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) ........................................................... 19

*Toyota Motor Co. v. Cook*, 581 S.W.3d 278 (Tex. App. 9th 2019)............................................. 19

*Wilcon v. Travelers Indem. Co.*, 654 F.2d 976 (5th Cir. 1981) .................................................. 14

*Williams v. Divotoria*, 777 F. Supp. 1332 (E.D. La. 1991) ........................................................ 16

*Wright v. Ripley*, 65 Cal. App. 4th 1189 (Cal. App. 4th 1998).................................................... 17

## FACTUAL BACKGROUND

David Blank was the owner of a retail jewelry business called Diamond Consortium, Inc. d/b/a The Diamond Doctor ("Diamond Doctor"). From at least 2013 to 2015, the Diamond Doctor sold a large volume of diamonds that had been overgraded and fraudulently certified by EGL. Compl., Dkt. 1, ¶ 19. Diamond Doctor knew this practice was misleading, as evidenced by its own website. *Id.* ¶ 21. Diamond Doctor was not alone in taking advantage of the EGL scam. Other retailers, including Diamonds Direct had also sold large volumes over overgraded EGL diamonds. *Id.* at ¶ 40. The EGL scam came to a head in 2014, when Brian Manookian began filing consumer lawsuits directed at this practice, and jewelry industry leaders called for an end to the EGL scam. *Id.* at ¶¶ 28-34.

On April 17, 2015, Manookian announced that he would be filing class action lawsuits against prominent retailers that had sold large amount of overgraded diamonds. *Id.* at ¶ 41. At this same time, Diamonds Direct was negotiating to be acquired by Blackstone and was concerned that it would be targeted by a class action by Manookian. *Id.* at ¶ 42-43. Diamonds Direct sought to prevent Manookian from filing a class action against it by pre-emptively reaching out to Manookian and retaining him on an ongoing basis for a price in excess of the market rate for legal services. *Id.* at ¶¶ 44-46.

In October 2015, Manookian began an internet solicitation campaign for customers who had been scammed by Diamond Doctor. *Id.* ¶ 37-38. Blank and Diamond Doctor initially responded by making bad faith bar complaints and initiating frivolous bar complaints against Manookian, and when that was unsuccessful, Blank attempted to effectively bribe Manookian to stop the solicitation campaign and to not pursue consumer claims against Diamond Doctor. *Id.* at ¶¶ 49-54. Manookian entertained, but ultimately turned down, Blank's offer. *Id.* at ¶ 55.

1

After Manookian turned down Blank's offer, Blank pivoted to another bad faith strategy to prevent having to face the possibility of defending against consumer litigation on the merits and through normal processes. *Id.* at ¶¶ 56-59. Blank began making knowingly false allegations that Manookian had "extorted" him by demanding that the Diamond Doctor retain him. *Id.* ¶ 56.

Hammervold was not involved in either Manookian's solicitation campaign or any discussions between Manookian and Blank, but Hammervold drew the attention of several jewelers by filing lawsuits against Mervis Diamond in Maryland. These suits were seen as a significant threat to other jewelers who had sold large volumes of EGL diamonds, including Diamonds Direct and Diamond Doctor. *Id.* at ¶ 71.

In response to the Mervis lawsuits, another jeweler had a PR firm prepare a memo that was ultimately became known as the "plan of attack" against both Manookian and Hammervold. *Id.* at ¶¶ 72-74. The memo recommended jewelers to take "collective action" to invalidate Manookian and Hammervold including through demand letters, lawsuits, media campaigns and bar complaints. ¶ 72, ex. 6. The memo was sent to Blank in an email with the subject line "Plan of attack" that stated: "Collectively we need to work together on this issue." *Id.* ¶ 73, Ex. 7. Diamond Doctor's COO responded to an email forwarding the "Plan of Attack" by  commenting: "This is exactly what we were talking about Friday. Let's fight!!!!!!!!!!!!!! Get them all together and let's get that united front. We also need to set forth plan B." *Id.* Blank sent the memo to Mervis stating that he was going to sue Manookian to "have him start spending money." *Id.* at ¶ 74, Ex. 8. Blank encouraged Mervis to help him because it "would also help" Mervis against the consumer lawsuits Hammervold was pursuing. *Id.* Diamonds Direct was also among the jewelers Blank apprised of the "plan of attack." *Id.* ¶ 75.

In February 2016, Blank sued Manookian under RICO and for other causes of action. *Id.* ¶

2

76. The gravamen of the lawsuit was Blank's bad faith claim that Manookian had extorted  him by demanding that Diamond Doctor retain him for millions of dollars. *Id.* ¶¶ 76-78. Fundamental to Blank's lawsuit was the premise that it was illegal and wrongful for a lawyer to solicit or accept money just to go away. *See id.* ¶¶ 77-78. ***However, Blank's lawsuit was a complete sham because it was filed to accomplish the very act Blank was claiming was wrongful: the paying off of a lawyer to keep quiet and go away.***

On May 22, 2016, Blank gave an interview to the Dallas Morning News about his claims that Manookian had extorted him. *Id.* ¶ 86. Blank characterized the deal he actually proposed to Manookian as "hush money" and claimed he did not go through with it on principle. *Id.*

***Five*** days later, on May 27, 2016, Blank proposed to Manookian the same type of deal he was claiming was illegal in his pending lawsuit, but in this iteration, it was a "settlement" agreement, instead of a "retainer." *Id.* ¶ 87-88. Critically, Manookian had to "[a]gree not to bring or be part of any claims against The Diamond Doctor in the future" and *lie* to prospective clients, by telling them "something along lines of, 'Diamond Doctor did no wrong when we checked claims against them, but they will exchange your diamond for you.'" *Id.* ¶ 87.

Negotiations apparently hit a snag between Blank's attorneys and Manookian's attorneys because Blank had been incorrectly assuming Hammervold would be subject to the deal. *Id.* ¶ 90.

Blank and Diamond Doctor wanted Hammervold to be part of the "lawyer payoff" deal to make the EGL claims go away because Hammervold was representing claimants in threatened consumer cases against the Diamond Doctor. *Id.* ¶ 83.

On June 2, 2016, Blank's attorney had a call with Hammervold to attempt to include Hammervold and his clients in a "global settlement." *Id.* ¶ 92. Blank's attorney repeatedly told Hammervold that Blank would only be willing to settle Hammervold's claims if Hammervold

could agree that he would not represent any future claimants against Diamond Doctor. *Id.* ¶ 92. Hammervold recorded the call and a full transcript of the conversation is attached to the Complaint as Exhibit 11.

Hammervold communicated to Godwin that he could not agree to Diamond Doctor's demand that he agree not to accept any future claimants against Diamond Doctor. *Id.* ¶ 93.

After Hammervold communicated this, Blank and Diamond Doctor did not give up on trying to "seal off" Hammervold with an illegal agreement. *Id.* They continued to look for another way to achieve this unlawful end. *Id.*

In September 2016, Defendants added Hammervold as a defendant to their lawsuit against Manookian. *Id.* ¶ 100. They did so with malice and without probable cause. *Id.* ¶ 155-156.

Blank and Diamond Doctor's filing of the lawsuit was never about collecting money (the ostensible relief it was seeking against Hammervold), but about creating a mechanism to "settle" with the defendants for unlawful non-monetary terms that could not be ordered by the Court *Id.* 147. Throughout the pendency of the lawsuit, Blank and Diamond Doctor continued to demand, as part of any settlement, that Hammervold unlawfully agree not to solicit any future claims against Blank, Diamond Doctor, or Diamonds Direct. *Id.* ¶¶ 110-111, 119, 123, 145.

On June 27, 2017, Hammervold's claims were severed from Defendants claims against Manookian, because Hammervold was appealing the Court's denial of his motion to dismiss.

On the eve of trial between Defendants and Manookian, Defendants reached a settlement with Manookian. *Id.* ¶ 114. The Defendants' attorneys' claimed public victory because "the Blank family did not have to pay any money to [Manookian]." *Id.* ¶ 115. While this is a very odd brag for a plaintiff, another one of Blank's attorney later admitted to the Fifth Circuit Court of Appeals that Blank had settled the case by making a payment to Manookian that was structured as one of

4

his lawyers "purchasing" websites from Manookian. *Id.*

In addition to the payment from Blank to Manookian, the Parties entered an Agreed Permanent Injunction. *Id.* ¶ 117. In the negotiations leading up to the entry of the injunction, the Defendants asked Manookian to agree and/or facilitate Hammervold releasing all claims against Defendants and agreeing to be subject to the injunction. *Id.* ¶ 116. Since Hammervold would not agree to this, the Defendants wrote the injunction to apply, not just to the Parties, but also "those persons in active concert or participation with [the Parties] who receive actual notice of this order by personal service or otherwise." *Id.* It was a backdoor way for the injunction to apply to Hammervold, without Hammervold agreeing to be bound by it. *Id.* ¶ 146(e).

After the Fifth Circuit affirmed the denial of Hammervold's motion to dismiss and the case was remanded back to the trial court, Hammervold asked the Court (a second time) to proceed *pro se*. *Id.* ¶ 128. Hammervold was permitted to proceed pro se on January 15, 2019. *Id.* ¶ 129. Shortly thereafter, Hammervold received access to discovery materials, including David Blank's deposition, that the Defendants had mass designated as attorneys' eyes only. *Id.* ¶ 130. On January 29, 2019, Hammervold filed a motion for leave to file a motion for summary judgment because testimonial admissions from Blank's deposition demonstrated that the plaintiffs never had any evidentiary basis for their claims as against Hammervold. *Id.*

On February 4, 2019, Hammervold filed his motions in limine. *Id.* ¶ 132. Several of those motions in limine were effectively dispositive motions. *Id.*

On February 19, 2019, the Court denied Hammervold's motion for leave to file a motion for summary judgment on procedural grounds, without addressing the Plaintiffs' argument that a motion for summary judgment would be futile or the merits of the motion for summary judgment Hammervold sought leave to file. *Id.* ¶ 133. As a result of the court's order of February 19, 2019,

the court never addressed whether the Plaintiffs had any threshold evidence supportive of their allegations as against Hammervold and the court never addressed Hammervold's contention that Blank's testimonial admissions demonstrated that Hammervold was entitled to judgment as a matter of law. *Id.*

On February 25, 2019, Hammervold met with Defendants' attorney in Chicago to confer regarding pre-trial matters, but the Defendants' attorney was largely unprepared to do so. *Id.* ¶ 135. After the meeting, the Defendants' attorney invited Hammervold to have drinks and brought up settlement. *Id.* ¶ 136. Defendants' attorney stated that the Defendants were not looking for any money, but only wanted "peace." *Id.* Hammervold responded that he could not agree to limit his practice, as he had said before. *Id.*

One day before the pre-trial conference, Defendants notified Hammervold they were going to dismiss their claims against him. *Id.* ¶ 138. They were willing to do so "with prejudice" if Hammervold would release them, but Hammervold would not agree to that. *Id.*

The Defendants ultimately dismissed their claims against Hammervold on February 28, 2019 because they knew they were going to lose, due to the pending motions in limine, by directed verdict, or at trial. *Id.* ¶ 142.

After Defendants dismissed their claims, Hammervold filed a motion for attorneys' fees, which this Court denied. Dkt. 9-7. However, in doing so, this Court did not adjudicate the malicious prosecution or abuse of process claims Hammervold has plead against Defendants in this lawsuit. *See id.*

### DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

The Defendants' Statement of Facts does not address any of Hammervold's factual allegations, but rather, exclusively recites statements from this Court's order denying Hammervold's motion for attorneys' fees. In a footnote, Defendants ask this Court to take judicial

notice of this order, as well as the "entire record in this prior lawsuit." MTD at 2, n. 3.

This Court may take judicial notice of limited judicial facts – *e.g.,* that this Court denied Hammervold's motion for attorneys' fees in an order dated February 20, 2020 – but this Court may not take judicial notice of the factual findings of its previous orders, or of other factual content appearing in the record from the prior case for the truth of the matter asserted. *See Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830 (5th Cir. 1998); *SB Int'l, Inc. v. Jindal*, 2007 U.S. Dist. LEXIS 34499, *6 (N.D. Tex. May 14, 2007) ("If the defendant wishes the court to take judicial notice of the fact that these documents exist and were filed in the courts shown on the first page of each document, that is within the court's power and the court takes such notice. If, however, Jindal wishes the court to take judicial notice of the contents of those documents, the court concludes that any "facts" contained in the petitions, counterclaims, and motion are subject to reasonable dispute and, therefore, not appropriate for judicial notice.").

## MOTION STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,'" *id.*, it only requires sufficient factual allegations to "nudg[e] [the plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). But this "does not require 'detailed factual allegations,'" only "more than an unadorned, the-defendant-unlawfully-harmed-me accusation,'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555), that "'give[s] the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting*

*Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8.

When evaluating a Rule 12 motion, "(1) the complaint is construed in the light most

favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that

can be drawn from the pleading are drawn in favor of the pleader." 5B Charles A. Wright et al.,

Federal Practice & Procedure § 1357 & n.11 (3d ed.) (Rule 12(b)(6)); *see In re Katrina Canal*

*Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

A claim may be dismissed due to an affirmative defense only "if a successful affirmative

defense appears clearly on the face of the pleadings." *Constr. Cost Data, LLC v. Gordian Grp.*,

2017 U.S. Dist. LEXIS 77481, *15 (S.D. Tex. Apr. 24, 2017) (*quoting Clark v. Amoco Prod. Co.*,

794 F.2d 967, 970 (5th Cir. 1986). However, "a plaintiff is under no obligation to plead against a

possible affirmative defense or the possible exceptions to an affirmative defense." *Id.*

## ARGUMENT

David Blank and Diamond Doctor's motion to dismiss should be denied because this

Court's previous order denying Hammervold's post-judgment motion for attorneys' fees did not

was not an adjudication of Hammervold's malicious prosecution or abuse of process claims, and

Hammervold's Complaint sufficiently alleged claims for malicious prosecution, abuse of process,

and civil conspiracy against David Blank and Diamond Doctor.

**I.     HAMMERVOLD'S CLAIMS FOR MALICIOUS PROSECUTION AND ABUSE OF PROCESS WERE NOT ADJUDICATED BY THIS COURT'S DENIAL OF HAMMERVOLD'S POST-JUDGMENT SANCTIONS MOTION IN THE UNDERLYING LAWSUIT.**

### a.   CLAIM PRECLUSION DOES NOT APPLY.

Hammervold's malicious prosecution and abuse of process claims are not barred by the

doctrine of claim preclusion because the trial court's previous denial of Hammervold's post-

judgment motion for attorneys' fees pursuant to 28 U.S.C. § 1927 and the "bad faith" exception to

the American Rule did not adjudicate Hammervold's malicious prosecution and abuse of process

claims because Hammervold *did not* raise those claims – and *could not have* raised those claims –

through a post-judgment motion.

Claim preclusion only applies when each of the following are established: "(1) the parties

are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent

jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same

claim or cause of action was involved in both actions." *Snow Ingredients, Inc. v. SnoWizard, Inc.*,

833 F.3d 512, 521 (5th Cir. 2016).

Claim preclusion does not apply to Plaintiff's claims in this case because the denial of a

post-judgment motion for an award of attorneys' fees is not the equivalent of an adverse

adjudication of malicious prosecution or abuse of process claims. The denial of a motion for

attorneys' fees under § 1927, like the denial of a motion for attorneys' fees under Rule 11,[2] does

not preclude an independent suit for malicious prosecution or abuse of process. Rule 11 cannot

"serve as a surrogate for an action based upon a claim of malicious prosecution. . ." ." *Graber v.*

*Fuqua*, 279 S.W.3d 608, 613 (Tex. 2009) (*quoting McShares, Inc. v. Barry*, 266 Kan. 479, 970

P.2d 1005, 1014 (Kan. 1998)). "It is well settled that the Federal Rules of Civil Procedure,

including Rule 11, do not preempt malicious prosecution claims predicated on federal civil

actions." *Id.* "[T]he denial of a Rule 11 motion," or by extension a § 1927 motion, "does not

foreclose assertion of a subsequent suit for malicious prosecution under state law." *Alkek &*

---

[2] A post-judgment motion for an award of attorneys' fees under 28 U.S.C. § 1927 is similar to a motion for sanctions under Fed. R. Civ. P. 11, but the "standard for awarding sanctions under § 1927 is higher than that applicable to Federal Rule of Civil Procedure 11." *Wesolek v. Layton*, 2014 U.S. Dist. LEXIS 33103, *20 (S.D. Tex. Mar. 14, 2014); *see Ratliff v. Stewart*, 508 F.3d 225, 231 (5th Cir. 2007) ("Though rule 11 and § 1927 are not identical, . . . they largely run in parallel.") (internal citations removed).

*Williams, Ltd. v. Tuckerbrook Alternative Invs., LP,* 2012 U.S. Dist. LEXIS 125, *19 (S.D. Tex. Jan. 3, 2012); *see Cohen v. Lupo,* 927 F.2d 363, 365 (8th Cir. 1991)[3] (Adjudication of Rule 11 sanctions motion "does not have res judicata effect in [subsequent malicious prosecution case] because [a] malicious prosecution cause of action does not raise the same claim.").

Plaintiff's malicious prosecution and abuse of process claims are obviously not the "same claim" as Plaintiff's previous motion for attorneys' fees pursuant to § 1927,[4] but the Defendants argue that Plaintiff's claims are barred under the doctrine of *res judicata* under the Texas law "transactional test" because they arise from a similar subject matter to Hammervold's motion for attorneys' fees. MTD, p. 15-16. This argument has no merit.

Under Texas law, claim preclusion only bars re-litigation of claims that were either (1) actually litigated and finally decided by a competent tribunal; or (2) "claims or defenses that, through diligence, should have been litigated in the prior suit but were not." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). However, for claim preclusion to apply to a claim that was not actually litigated in the previous lawsuit, the standard is "similar to the rule of compulsory counterclaims." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992); *see Ingersoll-Rand Co.*, 997 S.W.2d at 207 (Tex. 1999) (applying the "transactional test" to determine whether a later-asserted claim was a "compulsory counterclaim" in the previous lawsuit). Claim preclusion does *not* apply to an unlitigated claim unless the defendant "could and should have been brought in the earlier litigation."). *D-1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989).

---

[3] *Cohen v. Lupo* was cited with approval by both the Texas Supreme Court in *Graber* and the district court in *Alkek*. *See* 279 S.W.3d at 613 (citing *Cohen*); 2012 U.S. Dist. LEXIS 125, *21 (citing *Cohen*).
[4] 28 U.S.C. § 1927 and a court's inherent authority to sanction are procedural mechanisms a district court can use to discipline parties, not "claims" for which the doctrine of claim preclusion can apply. *See Pet Silk, Inc. v. Jackson*, 2010 U.S. Dist. LEXIS 2826, *4-6 (S.D. Tex. Jan. 14, 2010); *c.f. Southmark Corp. v. Coopers & Lybrand (in Re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir. 1999).

Hammervold's malicious prosecution and abuse of process claims are not precluded due to the judgment and orders in the previous lawsuit because those claims were not actually litigated, those claims were not mandatory counterclaims, and Hammervold *could not* have raised those claims in post-judgment filings, where he sought sanctions based on related facts. *See Incas & Monterey Printing & Packaging v. M/V Sang Jin*, 747 F.2d 958, 964-965 (5th Cir. 1984) ("[E]ven under th[e] liberal standard [for compulsory counterclaims], it is clear that an action in the nature of wrongful seizure or malicious prosecution does not lie as a compulsory counterclaim under F.R. Civ. P. 13(a). Such a counterclaim [is] not 'arising out of the same transaction or occurrence' as the original action for purposes of federal practice. . . ."); *Cohen*, 927 F.2d at 365 (noting that while "Rule 11 sanctions must be sought by motion in a pending case. . .[t]he nucleus of operative fact necessary to maintain an action for malicious prosecution includes the conclusion of the underlying action. Whether Cohen would be victorious in the Bastien litigation could not have been determined until the conclusion of that case."); *Berry v. McLemore,* 795 F.2d 452, 455 (5th Cir. 1986) (district court's ancillary post-judgment jurisdiction "is limited to those actions that a court may take in that same action" and does not allow the district court "to consider claims in a new and independent action. . .").

Since Hammervold's malicious prosecution and abuse of process claims were not litigated in the previous lawsuit – and Hammervold was not compelled (or likely allowed) to raise those claims in that case – *res judicata* does not preclude Hammervold's claims in this case.

### b.  ISSUE PRECLUSION DOES NOT APPLY.

Defendants also argue that Hammervold's malicious prosecution and abuse of process were previously adjudicated by the Court's previous denial of Hammervold's motion for attorneys' fees due to the doctrine of issue preclusion. MTD at 16-18. This argument has no merit because the issues, legal standard, evidentiary standard, and the underlying policy considerations are different

between a post-judgement motion for sanctions pursuant the court's inherent authority or § 1927 and Hammervold's claims in this case. Additionally, the issues were not "fully and vigorously litigated" in the underlying case and it would be unfair to apply issue preclusion to disputed factual issues that should be resolved by a jury.

Issue preclusion only applies when the following four conditions are met: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1421-1422 (5th Cir. 1995). Issue preclusion is defeated where the issues, legal standards, or policies underlying the legal standards in the earlier judgment differ from the second suit. *Copeland*, 47 F.3d AT 1422; *see Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) (even when both suits arise out of the same factual setting, collateral estoppel does not apply unless both suits involve application of the same legal standard); *Brister v. A.W.I., Inc.,* 946 F.2d 350, 354 & n.1 (5th Cir. 1991) (even when issues are stated in "nearly identical language," collateral estoppel is unavailable when there are disparate policies underlying each inquiry which result in definite differences in application and result); *Southmark Corp. v. Coopers & Lybrand (in Re Southmark Corp.)*, 163 F.3d 925, 932 (5th Cir. 1999) ("Relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings.").

First, the Court's denial of Hammervold's motion for attorneys' fees does not preclude his claims in this case because the factual issues and legal standards used to assess them are not the same. *See Copeland*, 47 F.3d at 1422 ("Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings.").

Courts have inherent authority "to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement." *Chambers v. NASCO,* 501 U.S. 32, 33 (1991). However, "[t]he standard for the imposition of sanctions using the court's inherent powers is extremely high." *Goldin v. Bartholow*, 166 F.3d 710, 722–23 (5th Cir. 1999). "The court must find that the very temple of justice has been defiled by the sanctioned party's conduct." *Id.* Under § 1927, courts have discretion to award attorneys' fees if the party "multiplies the proceedings unreasonably and vexatiously." *Bryant v. Military Dep't*, 597 F.3d 678, 694 (5th Cir. 2010). "Sanctions under 28 U.S.C. § 1927 are punitive in nature and require clear and convincing evidence, that every facet of the litigation was patently meritless and evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Id.* Section 1927 sanctions "should be employed only in instances evidencing a serious and standard disregard for the orderly process of justice." *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994).

The issues and legal standards for adjudicating a malicious prosecution claim are different. The elements are" (1) the institution of proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice; (4) lack of probable cause; (5) favorable termination; and (6) special damages. *Graber,* 279 S.W.3d at 617 n. 9. In denying Hammervold's motion for attorneys' fees, the trial court did not adjudicate any of these issues. This Court did not decide (and did not need to decide) the issue of "probable cause" or "malice" in its Order denying the motion for attorneys' fees. Probable cause means "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the [plaintiff], that the person charged was [liable] of the [claims] for which he was prosecuted." *Gunnels v. City of Brownfield*,

153 S.W.3d 452, 458 (Tex. App. 2013).[5] Malice, in the context of malicious prosecution, is defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others." *Daniels v. Kelley*, 2010 Tex. App. LEXIS 5932, *16-17 (Tex. App. 4th Jul. 28, 2010). The Court did not address whether Defendants acted with "malice." *See* Dkt. 9-1.

An abuse of process claim also involves different issues and legal standards. The elements of abuse of process are (1) defendant made an improper use of the process; (2) the defendant had an ulterior motive or purpose; and (3) plaintiff suffered damages. *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App. 14th 1994). The Court did not address any of these issues in the context of the legal standard for an abuse of process claim. The legal standard for showing an "improper" use of process is whether process is used "not to enforce some legal remedy that the process was designed to afford, but was instead used to force the plaintiff to do some collateral thing which he could not legally and regularly be compelled to do." *Wilcon v. Travelers Indem.*, 654 F.2d 976, 982 (5th Cir. 1981). This Court did not address that issue. While this Court stated that Defendants' "conduct throughout the course of the litigation appropriate," this finding was specifically in reference to Defendants "method of prosecution" (*e.g.,* no apparent excessive motion practice). Dkt. 9-1 at 7. This Court did not approve as "appropriate" any of the specific conduct at issue in Hammervold's abuse of process claim. *Compare* Dkt. 9-1 *with* Compl., Dkt. 1, ¶¶ 105, 109, 146-147.

Even if the issues and legal standard were the same (they aren't), this Court's denial of the motion for attorneys' fees does not collaterally estop Hammervold's claims in this case because the evidentiary standard for any convergent issues previously decided by the Court was "clear and

---

[5] While the Court noted that the claims were complex and it had previously denied Hammervold's motion to dismiss in connection with its assessment of the "frivolousness" of the claims in the underlying suit, Dkt. 9-1 at 6, this does not amount to a finding of "probable cause." *See Pic-Walsh Freight Co. v. Cooper,* 618 S.W.2d 449, 452 (Mo. App. E.D. 1981) (denial of a motion to dismiss in the underlying case does not defeat probable cause element in subsequent malicious prosecution claim). The Court expressly declined to entertain Hammervold's argument that no evidence supported Defendants' claims. Dkt. 9-1 at 6, n. 6.

convincing evidence," while the evidentiary standard applicable to Hammervold's claims in this case is only "preponderance of the evidence." *Compare* Dkt. 9-1 at 3-4 (applying "clear and convincing" evidentiary standard) *with Ellis County State Bank v. Keever*, 888 S.W.2d 790, 793 (Tex. 1994) (For malicious prosecution claims, "all issues of fact are resolved from a preponderance of the evidence."). Since different evidentiary standards were applied, there is no collateral estoppel. *See Copeland,* 47 F.3d at 1422.

Even if the issues, legal standard and evidentiary standards were the same (they aren't), collateral estoppel would still not apply because the purpose and policy considerations underlying the court's discretion to reassess fees are different from those underlying the Hammervold's state law claims for malicious prosecution and abuse of process. *See Brister*, 946 F.2d at 354 & n.1; *compare Bynum v. Am. Airlines*, 166 Fed. Appx. 730, 733 (5th Cir. 2006) (purpose of inherent authority to sanction is to allow courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") and *FDIC,* 20 F.3d at 1384 (§ 1927 is "penal in nature" so "a strict construction of § 1927 is necessary) *with Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 469 (W.D. Tex. 1999) (noting that the purpose of the abuse of process tort is to provide compensation); *see also Goldstein v. Dobashi,* 2012 Cal. App. Unpub. LEXIS 6598, *33 (Cal. App. 1st Sept. 11, 2012) (explaining that "allowing a person denied sanctions to pursue a malicious prosecution case would not undermine the integrity of the judicial system by creating the possibility of inconsistent results" because sanctions serves a "different purpose" than a malicious prosecution action.).

Even if the issues were exactly the same (they aren't), collateral estoppel still should not be applied because the Court's prior decision to decline to award attorneys' fees was entirely discretionary, so none of its factual findings were "necessary" to that decision. Collateral estoppel only precludes a party from litigating an issue previously raised in an earlier action when "the

15

determination of the issue in the prior action was a ***necessary part*** of the judgment in that action." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). While a finding of "bad faith" is *necessary* to an award of sanctions, it is not necessary for the trial court to find the absence of bad faith in order to exercise its discretion to decline to award sanctions. *See e.g., Bryant*, 597 F.3d at 694 ("Although the district court did not articulate any specific reasons for its decision, we nonetheless find no abuse of discretion.").[6]

Additionally, the issues decided by the Court in denying Hammervold's motion for attorneys' fees were not "fully and vigorously litigated in the prior action." *Copeland*, 47 F.3d at 1422. "Collateral estoppel is unavailable when a new determination on the issue is warranted by differences in the quality or extensiveness of the procedure followed in the two courts*." Id.* The Court summarily decided Hammervold's motion for attorneys' fees based on the briefs alone, without oral argument.[7] While this was entirely appropriate for the nature of relief sought by that motion, a fresh determination of these issues is warranted by the differences in procedure that the Court used to adjudication Hammervold's motion and the adjudication process to which Hammervold is entitled in this case. *See Williams v. Divotoria*, 777 F. Supp. 1332, 1334 (E.D. La. 1991) ("Malice and probable cause are issues of fact to be determined by the [jury], unless only one conclusion can be drawn from the evidence."); *Baros v. Tex. Mex. Ry.,* 400 F.3d 228 (5th Cir. 2005) (finding issues were not "fully and vigorously litigated" when they were adjudicated in the context of a petition for temporary injunction); *Pizza Hut, Inc. v. Lundy Enters., LLC*, 2013 U.S. Dist. LEXIS 201172, *30 (N.D. Tex. Jun. 11, 2003) (declining to apply collateral estoppel from

---

[6] The element of "necessity" is consequential here because *if* a finding of the absence of bad faith was *required* to deny Hammervold's motion for attorneys' fees, Hammervold would have had a meaningful appellate remedy. However, since the Court applied the correct legal standard to Hammervold's motion, the component "unnecessary" parts that Defendants want use to collaterally estop Hammervold's claims in this case were effectively unreviewable.
[7] Due to the nature of the relief sought, Hammervold acknowledges that the Court was entirely within its discretion to decide the issue however it saw fit.

abbreviated arbitration conducted for limited purpose to future litigation.). The rationale underlying the doctrine of collateral estoppel supports allowing any convergent issues to be determined anew in this case. *See Wright v. Ripley*, 65 Cal. App. 4th 1189, 1195-1196 (Cal. App. 4th 1998) ("Nor do we believe allowing a party to pursue a malicious prosecution action after being summarily denied sanctions in the underlying proceeding will substantially increase the opportunity for vexatious litigation. Because the sanction proceeding is of a summary nature, it is not particularly burdensome, and the complaining party will still be entitled to only one opportunity to fully litigate the claim.").

The Defendants rely on two clearly inapposite cases (*Production Supply v. Fry Steel* and *Ball v. A.O. Smith*) in support of their issue preclusion argument. The *Production Supply* case is inapplicable to the collateral estoppel issue here for two separate reasons. First, the case applied a vastly different "primary right theory" of *res judicata* under California substantive law. 74 F.3d 76, 78- (5th Cir. 1996). This distinction is material because the plaintiffs in that case identified differences in the issues that would have foreclosed issue preclusion under Texas law, but "are irrelevant under California's 'primary right' analysis." *Id.* Under California's analysis, the only question is whether the two actions arise from the "same harm." *Id.* Second, the court found that the statutory remedy provided by Cal. Civ. Proc. § 128.5 was intended by the California legislature to be a mutually exclusive remedy. *Id.* at 80. In *Ball,* the issue was whether a debt arising from an order awarding sanctions against an attorney was dischargeable in bankruptcy. 451 F.3d 66, 69 (2d Cir. 2006). The case is not helpful as to determine whether collateral issue estoppel should apply because "both parties urge[d] [the court] to apply collateral estoppel to the judge's findings; they disagree[d] only as to the effect of those findings on the present proceeding." *Id.* at 70.

Since the trial court's decision to deny Hammervold's motion for attorneys' fees was not

the equivalent of a full and fair adjudication of the same issues, applying the same legal and evidentiary standards, Hammervold's claims are not collaterally estopped in this case.

## II.      HAMMERVOLD HAS ALLEGED A "SPECIAL INJURY."

Hammervold's had sufficiently pled a "special injury" for malicious prosecution and abuse of process because Illinois law should apply to this element, and Hammervold has clearly pled a "special injury" under Illinois law. Alternatively, it is premature to determine this choice of law issue against the pleader at the motion to dismiss stage before discovery, and without an appropriate evidentiary record. Finally, Hammervold has pled a "special injury" under Texas law.

### a.   Illinois Law Should Govern Whether Hammervold Suffered a "Special Injury" or "Special Damages" Due to Defendants' Tortious Conduct.

This Court should apply Illinois law to determine whether the Hammervold has alleged damages constituting a "special injury" or "special damages" because Illinois has the "most significant relationship" to this specific issue.

Hammervold agrees with Defendants[8] that the "most significant relationship" test should governs this choice of law issue, and the restatement factors outlined in § 6 and § 145 of the Second Restatement of Conflicts of Law should be weighed to determine the choice of law for Hammervold's claims. MTD at 10-11. However, Defendants' choice of law analysis is flawed because the "most significant relationship" choice-of-law test must be applied *by issue* – not by case, party, or claim – and therefore "the law of one state may govern one issue in the case and the law of a different state may govern another." *Energy Coal S.P.A. v. Citgo Petroleum Corp.,* 836 F.3d 457, 459 (5th Cir. 2016); *see* Second Restatement of Conflicts of Law § 155 (recognizing a a different state may have a "more significant relationship" "with respect to [a] particular issue" than the state where the malicious prosecution was filed).

---

[8] *See* MTD at 7-8.

Illinois law should apply to the "special injury" issue because Illinois has the "more significant relationship" to this issue based on the § 6 and § 145 Restatement factors.

A state's laws regarding which types of damages are compensable "balances the need to compensate the plaintiff against the goal of protecting resident defendants from undue liability and excessive litigation." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000). The "special injury" or "special damages"[9] rule involves a balancing of these same policy considerations. *See Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267, 279 (Ill. 1997) ("A common theme with respect to the special injury rule which runs throughout all of this court's opinions on the subject. . .is this court's recognition of its responsibility to maintain a proper balance between the societal interest in preventing harassing suits and in permitting the honest assertion of rights in our court rooms. . . .As our case law amply demonstrates, it is this balance which lies at the heart of the special injury rule.").

"For purposes of damages under the most significant relationship analysis, 'under Texas law, the most important factor is not where the injury occurred but rather where the plaintiff is domiciled.'" *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 289 (Tex. App. 9th 2019) (quoting *Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 878 (E.D. Tex. 2002).

Hammervold is an Illinois domicile, and he suffered the damages constituting his "special injury" or "special damages" principally, if not entirely, in Illinois. Dkt. 20, ¶ 2. Since these factors are the "most important" in selecting the choice of law for the "special damages" issue, and they weigh in favor of Illinois law, Illinois law should apply. *See Cook*, 581 S.W.3d at 289.

Other facts and restatement factors also weigh in favor of applying Illinois law for the

---

[9] Texas courts currently use the terms "special injury" and "special damages" interchangeably. *See e.g. Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 207 (Tex. 1996). This element for a malicious prosecution claim used to be described as "damages conforming to the legal standards under Texas." *Martin v. Trevino*, 578 S.W.2d 763, 766 (Tex. App. 1978).

"special injury" or "special damages" issue. David Blank and Diamond Doctor served Hammervold with process at his home in Illinois, and some of the Defendants' conduct at issue in the Complaint occurred in Illinois. *See* Dkt. 20, ¶ Compl., Dkt. 1, ¶¶ 135-136.

The "place" of the relationship between the Plaintiff and the Defendants includes – but is not limited to – Texas. Jewelers Mutual is a Wisconsin-based insurance company that operates nationwide, including in Illinois. *See* Dkt 1, ¶ 6. By August 2016, Hammervold was pursuing diamond overgrading claims against Jewelers Mutual insureds in multiple states, including in Illinois. *Id.* ¶ 96; Dkt. 20, ¶ 4. Diamonds Direct is a North Carolina-based company, with locations in thirteen different states. *Id.* ¶¶ 39; Dkt. 20, ¶ 7.

Diamond Doctor was a Texas-based jewelry retailer and David Blank is a Texas resident, but Diamond Doctor did business across the country, including by shipping jewelry to customers located in various states. Dkt. 20, ¶ 5. Blank and Diamond Doctor's lawsuit against Hammervold was targeted to Hammervold's activities in Illinois. Dkt. 20, ¶ 7. Blank and Diamond Doctor characterized Hammervold's actionable conduct as his "willingness and availability to prosecute and acceptance of representation of parties in suits against targeted jewelers is part of Manookian's overall scheme to extort jewelers," and rejected the notion that their claims were based not communication or action Hammervold undertook "regarding the over-grading of diamonds in the state court lawsuits against the Diamond Doctor" (in Texas). *Id.*; **Ex. 1** at 18.

While Jewelers' Mutual and Diamond Doctor chose to file the underlying lawsuit against Hammervold in federal court in Texas, the decision to file suit in that venue was incidental to the Parties' relationship because these Defendants could have sued Hammervold in a number of other venues where personal jurisdiction could be established over Hammervold, including *e.g.,* Illinois, Tennessee, or Florida. The gravamen of Defendant's claims against Hammervold arose under

federal substantive law (RICO), based on alleged federal and Tennessee law predicate offenses. *See* Dkt. 9-7 at 26-31, ¶¶ 77-88.

Although the underlying lawsuit was filed in Texas, the conduct Hammervold alleges was wrongful was directed towards Hammervold in Illinois. Defendants abused process because they "sought to use the civil lawsuit to prevent Hammervold from soliciting and prosecuting consumer claims against Blank, The Diamond Doctor, Diamonds Direct, and/or other Jewelers Mutual insureds." Dkt. 1 at ¶ 158(d). Since Hammervold was based in Illinois, the illicit restrictions that the Defendants sought to coerce Hammervold into accepting were primarily directed toward Hammervold's conduct in Illinois. Dkt. 20, ¶ 9. Likewise, the illicit benefits Defendants sought to obtain from Hammervold would not just be enjoyed in Texas, but anywhere they could be subject to a lawsuit by a future claimant represented by Hammervold. *Id.* ¶¶ 5, 7.

Illinois also has a stronger interest in its "special injury" rule being applied to its domicile's claims under the facts alleged by Hammervold because the Illinois Supreme Court has made a specific finding that the unique type of injury Hammervold suffered should constitute a compensable "special injury." Both Illinois and Texas courts require showing of a "special injury" for malicious prosecution or abuse of process claim because "[o]rdinary trouble and expense, as they arise from the ordinary forms of legal controversy, should be endured by the law-abiding citizen as one of the inevitable burdens which men must sustain under civil government." *Smith v. Michigan Buggy Co.*, 175 Ill. 619, 629 (1898); *see Pitts & Collard, L.L.P. v. Schechter,* 369 S.W.3d 301 (*citing Smith,* 175 Ill. 619)("These same considerations have been discussed by other state supreme courts adhering to the special injury requirement."). However, the Illinois Supreme Court has addressed the exact type of injury alleged in Hammervold's Complaint and has made a clear policy choice that such an injury constitutes a "special injury" that should be compensated in a

malicious prosecution case. *See Cult Awareness Network*, 177 Ill. 2d at 279, *see also infra* Section II(c).

Based on the § 6 and § 145 Restatement factors, including those factors that are most crucial to the "special injury" issue under Texas law, Illinois law should govern this element of Hammervold's claims.

> **b. Alternatively, it is Premature to Conclusively Decide the Choice-of-Law Issue Against the Pleader at this Stage of the Case Before Any Discovery and Without Any Evidentiary Record.**

Even if this Court finds that Hammervold has not conclusively demonstrated that Illinois law applies to the "special injury" element of his claims, this Court should nevertheless reserve its final decision on the choice-of-law issue until an appropriate evidentiary record is presented, because it is premature to determine this choice-of-law issue against the pleader at this time.

The balancing of the restatement factors under the "most significant relationship" test "under Texas law typically requires resolution of factual questions, making the analysis inappropriate in the Rule 12(b)(6) context." *Janvey v. Proskauer Rose LLP*, 2015 U.S. Dist. LEXIS 187809, *9-10 (N.D. Tex. Jun. 23, 2015) (declining to conduct a traditional choice of law analysis at the motion to dismiss stage); *see Floyd v. CIBC World Mkts., Inc.,* 426 B.R. 622, 641 (S.D. Tex. 2009)(Declining to apply Texas' "most significant relationship" test at motion to dismiss stage because it "lacks evidence at this stage of the proceedings to properly analyze all the Restatement factors."); *Blanchard & Co., Inc. v. Contursi,* 2000 U.S. Dist. LEXIS 6672, *14 (E.D. La. 2000) ("The choice of law issue, which is inherently fact-based, is not appropriately determined on a motion to dismiss."). *see also Leaf Trading Cards, LLC v. Upper Deck Co.,* 2020 U.S. Dist. LEXIS 27780, *5 (N.D. Tex. Feb. 19, 2020) (("[A]t this time, the Court declines to dismiss the counterclaims based on choice-of-law principles. The Court will determine the choice-of-law issue based on the record at trial."); *Southern Audio Servs. v. Carbon Audio, LLC*, 141 F. Supp. 3d 653,

662 n. 4 (M.D. La. 2015) ("In this case. . .the Court will defer its choice-of-law decision until the parties present a factual record sufficient to permit this Court to undertake Louisiana's choice of law analysis."); *Haynesville Shale Rentals, LLC v. Total Equip. & Serv.*, 2012 U.S. Dist. LEXIS 147297, *2-3 ("At this preliminary stage it seems appropriate to await at least some factual development of the case before making choice-of-law determination").

Hammervold has not had a sufficient opportunity to conduct discovery and to present evidence regarding some of the relevant § 6 and § 145 factors for the choice-of-law issue. As a result, this Court should at least defer its determination of the choice-of-law issue until after the Parties have had a fair opportunity to conduct discovery and to present the Court with an appropriate evidentiary record and full briefing on the choice-of-law issues.

### c. Hammervold has Clearly Alleged Damages Cognizable as a "Special Injury" Under Illinois Law.

Although the Complaint expressly gave notice to the Defendants that Illinois law should apply to the "special injury" element of his claims (including by citing the specific Illinois cases demonstrating the sufficiently of Hammervold's pleading of a "special injury"), *see* Dkt. 1 at 158 and n. 26-27, Defendants have not challenged that Hammervold has pled damages cognizable as a "special injury" under Illinois Law. *See* MTD at 19-22.

Hammervold has plead a "special injury" under Illinois law because he sufficiently alleged that the Defendants' malicious prosecution of Hammervold damaged his professional reputation in a manner that harmed his future job prospects and the Defendants "conspired to use [the underlying] litigation 'not to resolve any dispute between the parties but to keep [Hammervold] from engaging in [his] business." Compl., Dkt. 1 at ¶ 158(c),(d).

Under Illinois law, "[w]hile loss of reputation alone is not considered a special damage, loss of reputation that affects one's job prospects has been found to constitute special damages"

for both a malicious prosecution and an abuse of process claim. *Rothman v. City of Chicago*, 2003 U.S. Dist. LEXIS 8376, *17-18 (N.D. Ill. May 14, 2003). Here, Hammervold specifically alleged that "the Defendants' malicious prosecution … damaged Hammervold's professional reputation in a manner that harmed his future job prospects." Dkt. 1 at ¶ 158(c); *see* also ¶ 143.

The Illinois Supreme Court has also recognized that damages constitute a "special injury" when the defendants have used litigation not to resolve any good faith legal dispute, but to keep the plaintiff from engaging in its business. *Cult Awareness*, 177 Ill. 2d at 284-285. In *Cult Awareness*, a non-profit organization sued the Church of Scientology for malicious prosecution and abuse of process because the Church of Scientology conspired to have seventeen of its members file lawsuits against the non-profit across the country. *Id.* at 269-270. The plaintiff alleged that the lawsuits were filed "to keep plaintiff from engaging in its business of disseminating information regarding religious freedom." *Id.* at 285. The court found that under these circumstances, the injury alleged by the non-profit could not be deemed "ordinary." *Id.* As in *Cult Awareness,* Hammervold has alleged that these Defendants filed the underlying lawsuit "not to resolve any legal dispute, but to keep [Hammervold] from engaging in his business." Compl., Dkt. 1, ¶ 158(d). Here, Hammervold has alleged that the Defendants filed the lawsuit as a means to prevent Hammervold from engaging in his business of representing consumer claimants against jewelers. Specifically, Hammervold has alleged that Defendants filed and abused the process of the lawsuit to attempt to disqualify Hammervold from representing claimants against Diamond Doctor, to create a conflict of interest to prevent Hammervold from accepting additional representation of claimants, and to attempt to coerce Hammervold into agreeing to an unlawful "settlement" agreement to restrict his practice, so that he could not solicit or pursue representation of claimants against the Defendants. *Id.* at ¶¶ 105, 109-111, 119, 123, 145-147, 158. As such,

Hammervold has plead damages cognizable under Illinois law as a "special injury." *Cult Awareness*, 177 Ill. 2d at 285.

### d.   Even Under Texas Law, Hammervold has Pled a "Special Injury."

Hammervold has sufficiently alleged a "special injury" even under the more restrictive Texas standard because Hammervold alleged that (1) Defendants' abuse of process was directed towards interfering with his person and his property – not obtaining money from him – and that Defendants succeeded in restricting Hammervold's ability to represent additional claimants against Blank and Diamond Doctor; and (2) in furtherance of the conspiracy to abuse process, Defendants obtained an agreed injunction that applied Hammervold.

To show special damages under Texas law, a plaintiff "must have suffered more than just the 'mere filing of a lawsuit' or 'ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees.'" *Columbia Valley Healthcare Sys., L.P. v. Pisharodi,* 2020 Tex. App. LEXIS 806, *22-23 (Tex. App. 13th Jan. 30, 2020) (*quoting Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996). Instead, there "must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Id.* However, "once the special injury hurdle has been cleared, that injury serves as a threshold for recovery of the full range of damages incurred as a result of the malicious litigation." *Texas Beef Cattle Co.*, 921 S.W.2d at 209.

Hammervold has pled a "special injury" because the Defendants obtained an agreed injunction that applied against Hammervold. Hammervold has alleged that in connection with their settlement with Manookian, Defendants submitted an Agreed Permanent Injunction that was entered by the Court. Dkt. 1 at ¶ 117-118. This injunction not only applied to the Parties who agreed to its entry, but also "those persons in active concert or participation with [the Parties] who receive actual notice of this order by personal service or otherwise." *Id.* at 118. The Defendants

were targeting Hammervold with this injunction because they had alleged in the same lawsuit where the injunction was entered that Hammervold was part of an "association in fact" with Manookian and they "function as a unit with a common purpose…." Dkt. 9-7, p. 24, ¶ 72. The injunction was drafted to apply to Hammervold, without specifically naming Hammervold as a party to it, because the Defendants had requested Manookian agree and/or facilitate Hammervold agreeing to the terms of the injunction, but Hammervold would not agree. Compl. Dkt. 1, ¶ 116.

Defendants argue that they "never sought an injunction against Hammervold" and the Agreed Permanent Injunction did not apply to Hammervold, so his damages due to that injunction are merely "incidental,*"* and therefore, do not constitute a special injury. MTD at 20 (citing *Tex. Beef Cattle*, 921 S.W.2d at 210) (emphasis added). However, the Defendants did seek an injunction against Hammervold and the Agreed Permanent Injunction did apply to Hammervold on its face. Compl. Dkt. 1, ¶ 116, 118, 146(e). In *Tex. Beef Cattle,* the issue dispositive to whether the plaintiff had alleged a "special injury" was whether the injunction could be directly applied to interfere with the plaintiff's cattle:

> Because Green owned no cattle on Caprock IV at the time of the injunction and because the injunction applied to the 247 head of cattle delivered to Caprock IV and sold to Cargill, but not to any of Green's cattle remaining at the Beck Ranch, we hold that Green did not suffer an interference with his person or property for purposes of his malicious prosecution claim. 921 S.W.2d at 210.

The Court ruled that because the injunction was not targeted towards any cattle owned by the plaintiff, the effect on the plaintiff merely "incidental," and therefore, not a "special injury." *Id.* The plaintiff did not allege that the injunction could be applied to him or his cattle, only that he could suffer consequential harm due to the injunction being applied against a third party.. *Id.* Here, by contrast, Hammervold has alleged that the Agreed Permanent Injunction was written in a way to directly apply Hammervold as a "person in active concert or participation with [the Parties] who

receive actual notice of this order by personal service or otherwise," even though he was not identified by name. Compl. Dkt. 1, ¶¶ 118, 146(e).

The Defendants' bad faith filing of the underlying lawsuit also caused Hammervold a "special injury" – not just ordinary damages – because the Defendants' malicious filing of the lawsuit and abuses of process were directed towards interfering with Hammervold's person and property, and caused an actual interference with Hammervold's property because Defendants succeeded in restricting Hammervold's ability to continue accepting representation of claimants adverse to Diamond Doctor and Blank due to known conflict of interest rules. Compl., Dkt. 1, at ¶ 158(b)(d); *see* ¶ 109-111, 116, 119, 122, 127, 145-147. This interference can be considered interference with a "property interest" because  Hammervold had a "property interest" in his unrestricted ability to practice law and undertake representation of clients. *Durham v. Supreme Court of Tennessee*, 2007 U.S. Dist. LEXIS 23252, *12 (M.D. Tenn. Jan. 29, 2007) (recognizing property interest in right to practice law under Tennessee law); *Greening v. Moran*, 739 F. Supp. 1244, 1251 (C.D. Ill. 1990) (recognizing same under Illinois law); *see Pisharodi,* 2020 Tex. App. LEXIS 806, *22-23 (Tex. App. 13th Jan. 30, 2020) (restriction of medical admitting privileges due to peer reviews defendant initiated was considered "interference with a property right, akin to an injunction, and therefore satisfie[d] the special damages requirement.").

Hammervold has alleged a "special injury," even under Texas law.

## III.   HAMMERVOLD HAS PLEAD SUFFICIENT FACTS TO ESTABLISH THE FAVORABLE TERMINATION ELEMENT FOR MALICIOUS PROSECTION.

Hammervold has plead sufficient facts, when taken in the light most favorable to him, to establish that the underlying lawsuit terminated in his favor.

Under Texas law, "voluntary non-suits might satisfy the favorable-termination element depending upon the circumstances attending the non-suits." *McCall v. Tana Oil & Gas Corp*., 82

S.W.3d 337, 350 (Tex. App. – Austin 2001), *rev'd in part on other grounds*, 104 S.W.3d 80 (Tex. 2003); *Duzich v. Advantage Fin. Corp*., 424 F.Supp. 910, (S.D.Tex. 2003) ("The Court is inclined to follow the state court rule that voluntary dismissal may in some cases qualify as a favorable determination for the defendant."), *aff'd on other grounds*, 395 F.3d 527 (5th Cir. 2004). The Defendants acknowledge that "there can be limited circumstances where a voluntary dismissal may constitute a favorable termination." MTD at 18 (*citing McCall*, 82 S.W.3d at 350).[10]

A voluntary dismissal of a civil lawsuit "can be a favorable termination if (1) it was not pursuant to a settlement agreement or compromise, or (2) the circumstances under which the action was dismissed are not inconsistent with innocence." *Liberty Synergistics, Inc. v. Microflo Ltd*., 50 F. Supp. 3d 267 (E.D.N.Y. 2014); *see* Restatement (Second) of Torts § 674 cmt. j[11] (when determining whether the withdrawal of civil claims should constitute a favorable termination, "the same considerations are decisive as when criminal charges are withdrawn."); Restat 2d of Torts, § 660-661, 665 (A dismissal of a criminal action is <u>not</u> considered a favorable termination when charges are dismissed due to a negotiated compromise, due to misconduct by the accused, for mercy requested or accepted by the accused, or to later reinstate the charges); *Izen v. Catalina*, 256 F.3d 324, 328 (5th Cir. 2001) (the dismissal of charges without any *quid pro quo* with the accused is considered a favorable termination).

Hammervold has alleges circumstances demonstrating that the Defendants' dismissal of

---

[10] Since Texas appears to follow the Restatement approach and allow for the possibility that a voluntary dismissal could constitute a "favorable termination" under appropriate circumstances – and Defendants acknowledge this point – there is no apparent conflict with Illinois law, requiring a choice of law analysis. *See Cult Awareness Network*, 177 Ill. 2d at 278-279 (Illinois also follows same restatement approach). However, Hammervold has alleges that Illinois law should govern the "favorable termination" element of his malicious prosecution claim. Compl., Dkt. 1, ¶ 157(a). Should the Court interpret Texas law on the issue of "favorable termination" to be narrower than acknowledged by the Defendants in their Motion to Dismiss, Hammervold requests an opportunity to fully brief the choice-of-law issue. *See Byerly v. Std. Ins. Co.,* 2020 U.S. Dist. LEXIS 51854, *15 (E.D. Tex. Mar. 25, 2020) (J. Mazzant) (Because partial motion for summary judgment briefing inadequately addressed the choice of law issue, the court ordered the parties to each submit a supplemental brief on the choice-of-law issue).

[11] This Restatement section has been adopted by Texas. *See McCall*, 82 S.W.3d at 350, n. 6.

their own lawsuit was a "favorable termination" to Hammervold.[12] Specifically, Hammervold alleges that the "Plaintiffs dismissed their own lawsuit on February 28, 2019 because they knew that effectively-dispositive pending motions in limine were likely to be granted on March 30, 2019, and in any event, that Hammervold was likely to obtain a directed verdict in his favor after the court declined to allow Hammervold to file a motion for summary judgment based on Blank's deposition testimony." Compl., Dkt. 1, ¶ 142. The Defendants claimed that they were dismissing their case due to concerns about collecting against Hammervold, but this was false. *Id.* at ¶ 143. Throughout the case, the Plaintiffs' filing of the lawsuit "was never about collecting money, but about creating a mechanism to 'settle' with the defendants for unlawful non-monetary terms that could not be ordered by the Court." *Id.* Additionally, Hammervold has alleged that Defendants non-suited while effectively dispositive motions were pending that were likely to be granted. *Id.* at 132, 135. The Defendants were willing to dismiss their case with prejudice, but Hammervold would not agree to release Defendants. *Id.* at 139-140.

The Defendants attempt to negate the "favorable termination" element using language from this Court's order on the attorneys' fees motion that there was "not a clear successful litigant" after Hammervold did not argue that issue. MTD at 18; *see* Dkt. 9-7, p. 5 ("it does not appear that the Hammervold Defendants attempted to argue that Plaintiffs were unsuccessful litigants."). This argument has no merit because the Court's statement does not satisfy the requirements for either collateral issue estoppel or judicial notice. *See supra* Section I(b); *Taylor,* 162 F.3d 830. Here, Hammervold has alleged factual circumstances demonstrating the nonsuit was favorable

---

[12] Diamonds Direct, in its own Motion to Dismiss, Dkt. 10, *twice* acknowledges that Hammervold "prevailed." *See* Dkt. 10, p. 9, ¶ 7 ("Dissatisfied with having <u>prevailed</u>, on March 21, 2019, Hammervold filed a twenty five page motion, with forty six exhibits, asking the Court to award attorneys' fees against Diamond Doctor and its attorneys . . . .") and p. 22, ¶ 44 "Hammervold. . . <u>ultimately prevailed</u> when Diamond Doctor dismissed the lawsuit.") (emphasis added).

termination that must be accepted as true at this stage of the case. Compl., Dkt. 1, ¶ 142.

Accepting Plaintiff's allegations as true, and construing them in the light most favorable to the Plaintiff, the Plaintiff has sufficiently plead the element of "favorable termination."

## IV.   HAMMERVOLD HAS SUFFICIENTLY DEMONSTRATED THAT HE SUFFERED DAMAGES.

The Defendants' Motion to Dismiss contains a skeletal argument that Hammervold's Complaint should be dismissed because he "has failed to plead damages with specificity." MTD. This argument has no merit. Hammervold has clearly alleged that he was damaged by the Defendants' conduct. Dkt. 1, ¶¶ 143, 158(b)(c). These allegations are sufficient to establish the element of damages. Hammervold does not need to not provide a detailed accounting of the full scope of his damages at the pleading stage. *See e.g., Sadler v. Int'l Paper Co.*, 2010 U.S. Dist. LEXIS 130562, *19 (W.D. La. Sept. 29, 2010) ("The *Twombly* plausibility standard does not require a detailed listing of the problems claimed by [plaintiff]. . . .with the claimed damages, those factual details can be explored through discovery.").

## V.   HAMMERVOLD HAS STATED A CLAIM FOR CONSPIRACY.

Hammervold agrees with Defendants that his conspiracy claims "rises and falls on whether he stated a claim on an underlying tort." MTD at 22-23. However, since Hammervold has stated claims for malicious prosecution and abuse of process against these Defendants, he has also stated a claim for conspiracy against Defendants.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants David Blank and Diamond Doctor's Motion to Dismiss should be denied.

**RESPECTFULLY SUBMITTED,**

**s/Mark Hammervold**
Mark Hammervold, IL #6320744
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
**mark@hammervoldlaw.com**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 1, 2020, a true and correct copy of the foregoing filing was served upon all counsel of record via the Court's ECF system.

*/s/ Mark Hammervold*