**IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION**

| | | |
|---|---|---|
| **MARK HAMMERVOLD** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **No. 4:20-CV-00165-ALM** |
| **v.** | § | |
| | § | |
| **DIAMONDS DIRECT USA OF** | § | |
| **DALLAS, LLC; DAVID BLANK;** | § | |
| **DIAMOND CONSORTIUM, INC.** | § | |
| **d/b/a THE DIAMOND DOCTOR; and** | § | |
| **JEWELERS MUTUAL INSURANCE** | § | |
| **COMPANY** | § | |

<u>**PLAINTIFF MARK HAMMERVOLD'S RESPONSE IN OPPOSITION TO DEFENDANT JEWELERS MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS (DKT. 17)**</u>

**MARK HAMMERVOLD[1]**
Mark Hammervold, IL #6320744
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
<u>mark@hammervoldlaw.com</u>

*Pro Se Plaintiff*

---

[1] Mark Hammervold is admitted to practice in this district, but is representing himself *pro se* in this case.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iii

FACTUAL BACKGROUND AS TO JEWELERS MUTUAL .......................1

MOTION STANDARD ...................................................................................2

ARGUMENT ....................................................................................................3

I.     Hammervold's Claims for Malicious Prosecution and Abuse of Process were Not Adjudicated by this Court's Denial of Hammervold's Post-Judgment Sanctions Motion in the Underlying Lawsuit ......................................................3

     a.  Claim Preclusion Does Not Apply .........................................................3

     b.  Issue Preclusion Does Not Apply ...........................................................6

II.    Hammervold's Abuse of Process Claim is Not Time-Barred .........................11

III.   Hammervold has Stated a Claim for Abuse of Process....................................14

IV.   Hammervold has Pled Sufficient Facts to Establish the Favorable Termination Element for Malicious Prosecution ....................................................................17

V.    Hammervold has Pled a "Special Injury" ......................................................19

     a.  Illinois Law Should Govern Whether Hammervold Suffered a "Special Injury" or "Special Damages" Due to Defendants' Tortious Conduct.....19

     b.  Alternatively, it is Premature to Conclusively Decide the Choice-of-Law Issue Against the Pleader at this Stage of the Case Before Any Discovery and Without Any Evidentiary Record ......................................................23

     c.  Hammervold has Pled a "Special Injury" Under Illinois Law..................23

     d.  Even Under Texas Law, Hammervold has Pled a "Special Injury".........24

VI.   Hammervold has Stated a Claim for Conspiracy Against Jewelers Mutual..26

     a.  Hammervold has Sufficiently Alleged the "Meeting of the Minds" Element ................................................................................................................26

     b.  Hammervold has Sufficiently Alleged the "Overt Act" Element .............29

VII.  Even Without Conspiracy Liability, Hammervold has Sufficiently Pled Facts Establishing Jewelers Mutual's "Aiding and Abetting" Liability for Malicious Prosecution and Abuse of Process ....................................................................30

CONCLUSION ...............................................................................................30

# TABLE OF AUTHORITIES

*Alkek & Williams, Ltd. v. Tuckerbrook Alternative Invs., LP,* 2012 U.S. Dist. LEXIS 125 (S.D. Tex. Jan. 3, 2012) ................................................................................................................ 4

*Aly v. City of Lake Jackson,* 453 Fed. Appx. 538 (5th Cir. 2011) ............................................... 16

*Andrade v. Chojnacki,* 65 F. Supp. 2d 431 (W.D. Tex. 1999)...................................................... 9

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................................... 2

*Baros v. Tex. Mex. Ry.,* 400 F.3d 228 (5th Cir. 2005) ................................................................ 16

*Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992).......................................................... 5

*Baubles v. Beads,* 766 S.W.2d 377 (Tex. App 6th 1989) ............................................................ 14

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................................ 7

*Berry v. McLemore,* 795 F.2d 452 (5th Cir. 1986) ...................................................................... 6

*Blanchard & Co., Inc. v. Contursi,* 2000 U.S. Dist. LEXIS 6672 (E.D. La. 2000).................... 23

*Bossin v. Towber*, 894 S.W.2d 25 (Tex. App. 14th 1994) ................................................. 8,11,15

*Bradley v. Phillips Petroleum Co.,* 527 F. Supp. 2d 625 (S.D. Tex. 2007)................................. 29

*Brister v. A.W.I., Inc.,* 946 F.2d 350 (5th Cir. 1991) ................................................................. 7,9

*Bryant v. Military Dep't,* 597 F.3d 678 (5th Cir. 2010) ......................................................... 7, 10

*Byerly v. Std. Ins. Co.,* 2020 U.S. Dist. LEXIS 51854 (E.D. Tex. Mar. 25, 2020)..................... 17

*Bynum v. Am. Airlines,* 166 Fed. Appx. 730 (5th Cir. 2006)...................................................... 9

*Chambers v. NASCO,* 501 U.S. 32 (1991) ................................................................................... 7

*ChemTreat, Inc. v. Chemtech Chem. Servs.*, 2007 U.S. Dist. LEXIS 90175 (E.D. Tex. Dec. 6, 2007).......................................................................................................................... 13

*Cohen v. Lupo,* 927 F.2d 363 (8th Cir. 1991) ........................................................................... 4,5

*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995) .......................................... 6,7,10

*Columbia Valley Healthcare Sys., L.P. v. Pisharodi,* 2020 Tex. App. LEXIS 806 (Tex. App. 13th Jan. 30, 2020) ............................................................................................................ 25,26

*Constr. Cost Data, LLC v. Gordian Grp.*, 2017 U.S. Dist. LEXIS 77481 (S.D. Tex. Apr. 24, 2017).......................................................................................................................... 2-3

*Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill. 2d 267 (Ill. 1997) ............ *passim*

*D-1 Enterprises, Inc. v. Commercial State Bank,* 864 F.2d 36 (5th Cir. 1989)............................. 5

*Daniels v. Kelley*, 2010 Tex. App. LEXIS 5932 (Tex. App. 4th Jul. 28, 2010) .......................... 8

*Davis—Lynch, Inc. v. Moreno,* 667 F.3d 539 (5th Cir. 2012) .................................................... 29

*Dunn v. Koehring Co.* 546 F.2d 1193 (5th Cir. 1977)........................................................... 12,13

*Durham v. Supreme Court of Tennessee*, 2007 U.S. Dist. LEXIS 23252 (M.D. Tenn. Jan. 29, 2007)................................................................................................................................ 26

*Duzich v. Advantage Fin. Corp.*, 424 F.Supp. 910 (S.D.Tex. 2003) .......................................... 28

*Duzich v. Advantage Fin. Corp.*, 395 F.3d 527 (5th Cir. 2004) ................................................. 28

*Ellis County State Bank v. Keever*, 888 S.W.2d 790 (Tex. 1994) ................................................ 9

*Energy Coal S.P.A. v. Citgo Petroleum Corp.,* 836 F.3d 457 (5th Cir. 2016)....................... 19,20

*FDIC v. Conner*, 20 F.3d 1376 (5th Cir. 1994) ....................................................................... 7, 9

*Floyd v. CIBC World Mkts., Inc.,* 426 B.R. 622 (S.D. Tex. 2009) .............................................. 23

*Gatheright v. Clark*, 680 F. App'x 297 (5th Cir. 2017)............................................................. 15

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999)..................................................................... 7

*Goldstein v. Dobashi,* 2012 Cal. App. Unpub. LEXIS 6598 (Cal. App. 1st Sept. 11, 2012) ......... 9

*Graber v. Fuqua*, 279 S.W.3d 608 (Tex. 2009)..................................................................... 4,7,8

*Greening v. Moran,* 739 F. Supp. 1244 (C.D. Ill. 1990)............................................................ 26

*Gunnels v. City of Brownfield*, 153 S.W.3d 452 (Tex. App. 2013) ............................................... 8

*Haynesville Shale Rentals, LLC v. Total Equip. & Serv*., 2012 U.S. Dist. LEXIS 147297 (S.D. Tex. Oct. 12, 2012) ................................................................................................................... 23

*Holmes v. Slay*, 2015 U.S. Dist. LEXIS 37493 (E.D. Mo. Mar. 25, 2015) ................................. 30

*Howard v. CitiMortgage,* 2014 U.S. Dist. LEXIS 167842 (S.D. Miss. Dec. 2, 2014)................. 16

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007)....................................... 2

*In re: Paige*, 610 F.3d 865 (5th Cir. 2010) ................................................................................... 6

*Incas & Monterey Printing & Packaging v. M/V Sang Jin*, 747 F.2d 958 (5th Cir. 1984) ........... 5

*Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203 (Tex. 1999) ................................. 5

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018)............................................................................................................................................ 29

*Izen v. Catalina*, 256 F.3d 324 (5th Cir. 2001) ........................................................................... 18

*Janvey v. Proskauer Rose LLP*, 2015 U.S. Dist. LEXIS 187809 (N.D. Tex. Jun. 23, 2015)....... 23

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004)..................................................................... 29

*Jordan v. Jordan*, 2001 Tex. App. LEXIS 5106 (Tex. App. 5th Jul. 30, 2001) ........................... 11

*Leaf Trading Cards, LLC v. Upper Deck Co.,* 2020 U.S. Dist. LEXIS 27780 (N.D. Tex. Feb. 19, 2020)............................................................................................................................................ 23

*Lewis v. Continental Airlines*, 80 F. Supp. 2d 686 (S.D. Tex. 1999) ......................................... 18

*Liberty Synergistics, Inc. v. Microflo Ltd*., 50 F. Supp. 3d 267 (E.D.N.Y. 2014) ....................... 18

*Liverman v. Payne-Hall*, 486 S.W.3d 1(Tex. App. 8th 2015) ......................................... 12,14,15

*Macias v. Gomez*, 2014 Tex. App. LEXIS 13197 (Tex. App. 13th Dec. 11, 2014) .................... 29

*Martin v. Tex. Dep't of Protective & Regulatory Servs.*, 405 F. Supp. 2d 775(S.D. Tex. 2005).. 29

*McCall v. Tana Oil & Gas Corp*., 82 S.W.3d 337 (Tex. App. – Austin 2001) ............................. 17

*Parsons v. Deutsche Bank Nat'l Trust Co.*, 2019 U.S. Dist. LEXIS 19978 (N.D. Tex. Jan. 22, 2019)............................................................................................................................................ 29

*Partrich v. Farber*, 448 Fed. Appx. 526 (6th Cir. Aug. 24, 2011) ............................................... 12

*Pet Silk, Inc. v. Jackson*, 2010 U.S. Dist. LEXIS 2826 (S.D. Tex. Jan. 14, 2010) ...................... 4,5

*Pic-Walsh Freight Co. v. Cooper*, 618 S.W.2d 449 (Mo. App. E.D. 1981)................................. 8

*Pitts & Collard v. Schechter*, 369 S.W.3d 301 (Tex. App. 1st 2011)........................................... 22

*Pizza Hut, Inc. v. Lundy Enters., LLC*, 2013 U.S. Dist. LEXIS 201172 (N.D. Tex. Jun. 11, 2003) ..................................................................................................................................................... 10

*Production Supply v. Fry Steel*, 74 F.3d 76 (5th Cir. 1996) ................................................... 10,11

*Recoveredge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995)..................................................... 7

*Rothman v. City of Chicago*, 2003 U.S. Dist. LEXIS 8376 (N.D. Ill. May 14, 2003)............. 23,24

*Samsung Elecs. Am., Inc. v. Chung*, 2017 U.S. Dist. LEXIS 21700 (N.D. Tex. Feb. 16, 2017). ................................................................................................................................................. 26,27

*SB Int'l, Inc. v. Jindal*, 2007 U.S. Dist. LEXIS 34999 (N.D. Tex. May 14, 2007)........................ 3

*Smith v. Michigan Buggy Co.*, 175 Ill. 619 (1898) ...................................................................... 22

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016) ..................................... 4

*Southmark Corp. v. Coopers & Lybrand (in Re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999) .............................................................................................................................................. 4,5, 7

*Southern Audio Servs. v. Carbon Audio, LLC*, 141 F. Supp. 3d 653 (M.D. La. 2015) ............... 23

*Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687 (Tex. App. 11th 2019) ............. 13

*Tarpley v. Texaco, Inc.,* 1998 U.S. Dist. LEXIS 3482 (N.D. Tex. Mar. 16, 1998) ..................... 16

*Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830 (5th Cir. 1998).......................................... 3,19

*Test Masters Educ. Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ......................................... 9,10

*Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996)........................................................ 25

*Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) ............................................................ 20

*Toyota Motor Co. v. Cook*, 581 S.W.3d 278 (Tex. App. 9th 2019)........................................ 20,21

*Troice v. Proskauer Rose LLP*, 2015 U.S. Dist. LEXIS 36672 (N.D. Tex. Mar. 4, 2015).......... 27

*United States v. Ashley,* 555 F.2d 462 (5th Cir. 1977)................................................................ 28

*Upjohn Co. v. Freeman*, 885 S.W.2d 538 (Tex. App. 5th Aug. 26, 1994) .................................. 15

*Wesolek v. Layton*, 2014 U.S. Dist. LEXIS 33103 (S.D. Tex. Mar. 14, 2014).......................... 4,5

*Wilcon v. Travelers Indem. Co*., 654 F.2d 976 (5th Cir. 1981) ................................................ 8,11

*Williams v. Divotoria*, 777 F. Supp. 1332 (E.D. La. 1991) ........................................................ 10

*Wright v. Ripley*, 65 Cal. App. 4th 1189 (Cal. App. 4th 1998).................................................... 10

## FACTUAL BACKGROUND AS TO JEWLERS MUTUAL

Hammervold's previous Responses to Blank/Diamond Doctor's Motion to Dismiss and Diamonds Direct's Motion to Dismiss provide a detailed factual summary of Hammervold's claims as to the same issues. Dkt. 21 at 1-6; Dkt. 22 at 1-6. This summary adopts those general factual recitations by reference, *see* Fed. R. Civ. P. 10(c), and will focus only on the facts specific to Jewelers Mutual's involvement in the malicious prosecution and abuse of process at issue.

Jewelers Mutual insures jewelry retailers across the country, and it insured Diamond Doctor at least from 2012 to 2016. Compl. Dkt. 1, ¶ 94. Due to the EGL scam, Jewelers Mutual faced massive liability for insureds like Diamond Doctor who were significantly involved in the EGL scam, and by August 2016, Jewelers Mutual was adverse to Hammervold in threatened litigation in a number of states, including Illinois and Texas. *Id.* ¶¶ 32, 95, 96.

In May 2016, when Diamond Doctor offered to buy-off Manookian by proposing a "settlement" that would have paid Manookian $2.4 million, but required him to stop soliciting claims and to lie to prospective claimants about Diamond Doctor, Jewelers Mutual participated in these negotiations and agreed to provide at least part of the money. *Id.* ¶¶ 87-89. After this deal hit a snag because Hammervold refused to agree to it, Jewelers Mutual took over both the prosecution of the federal case and the defense against Hammervold's clients consumer claims. *Id.* 97-99.

Shortly after Jewelers Mutual took over the federal case, Blank and Diamond Doctor added Hammervold as a defendant. *Id.* ¶ 99-110. Jewelers Mutual "insisted that Hammervold be named as a defendant" and "aided, abetted, encouraged, and supported the prosecution of Hammervold by paying attorneys to affirmatively prosecute those claims." *Id.* ¶ 154. Jewelers Mutual did this even though its insurance contract with Diamond Doctor "would not and should not have covered Jewelers Mutual pursuing claims against [Hammervold]." *Id.* In doing so, Jewelers Mutual acted

with malice and without probable cause. *Id.* ¶¶ 155-156.

After Hammervold was added to the lawsuit, "Jewelers Mutual. . .conspired with Blank and Diamond Doctor to abuse process against Hammervold in the federal case and in the state law consumer cases, in order to coerce Hammervold into entering into an illegal settlement agreement, in which Hammervold agreed to never solicit or pursue claims against The Diamond Doctor, Blank and Diamonds Direct, or alternatively, to intimidate, embarrass, discredit and/or invalidate Hammervold if Hammervold was unwilling to agree to same." *Id.* ¶ 147. Defendants primarily abused process against Hammervold by repeatedly demanding that "Hammervold agree not to solicit for and/or accept any other diamond cases against Defendants." *Id.* ¶ 146(a). With respect to this conduct, Hammervold specifically alleges that Jewelers Mutual "sign[ed] off on settlement demands communicated to Hammervold that would unlawfully seal Hammervold off from soliciting future claimants against Blank, Diamond Doctor, and/or Diamonds Direct." *Id.* One of these settlement demands was communicated in writing by Howard Klatsky, a lawyer that Jewelers Mutual specifically retained and controlled in the federal litigation. *Id.* ¶ 97-99, 123; Dkt. 1-13.

## <u>MOTION STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a Rule 12 motion, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader." 5B Charles A. Wright, Federal Practice & Procedure § 1357 & n.11 (3d ed.) (Rule 12(b)(6)); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

A claim may be dismissed due to an affirmative defense only "if a successful affirmative

2

defense appears clearly on the face of the pleadings." *Constr. Cost Data, LLC v. Gordian Grp.*, 2017 U.S. Dist. LEXIS 77481, *15 (S.D. Tex. Apr. 24, 2017) (*quoting Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). However, "a plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense." *Id.*

Jewelers Mutual's Statement of Facts does not address Hammervold's allegations, but exclusively recites statements from this Court's order denying Hammervold's motion for attorneys' fees. MTD at 2, n. 1. In its "Legal Standard" section, Defendant asks this Court to take judicial notice of this order, as well as the "entire records" in this prior lawsuit. MTD at 7. While this Court may take judicial notice of limited judicial facts, this Court may not take judicial notice of its prior factual findings or of other factual content appearing in the record from the prior case for the truth of the matter asserted. *See Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830 (5th Cir. 1998); *SB Int'l, Inc. v. Jindal*, 2007 U.S. Dist. LEXIS 34999, *6 (N.D. Tex. May 14, 2007).

## ARGUMENT

Jewelers Mutual's motion to dismiss should be denied because this Court's order denying Hammervold's motion for attorneys' fees was not an adjudication of Hammervold's malicious prosecution or abuse of process claims, and Hammervold has sufficiently alleged claims for abuse of process, malicious prosecution, and civil conspiracy against Jewelers Mutual.

**I.      Hammervold's claims for Malicious Prosecution and Abuse of Process were Not Adjudicated by this Court's Denial of Hammervold's Post-Judgment Sanctions Motion in the Underlying Lawsuit.**

### a.   Claim Preclusion Does Not Apply.

Hammervold's malicious prosecution and abuse of process claims are not barred by the doctrine of claim preclusion because the trial court's previous denial of Hammervold's post-judgment motion for attorneys' fees did not adjudicate Hammervold's malicious prosecution and abuse of process claims because those claims *were not* and *could not have* raised in that motion.

3

Claim preclusion only applies when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Snow Ingredients, Inc. v. SnoWizard*, 833 F.3d 512, 521 (5th Cir. 2016).

Claim preclusion does not apply to the claims in this case because the denial of a post-judgment motion for attorneys' fees is not the equivalent of an adjudication of malicious prosecution or abuse of process claims. The denial of a motion for attorneys' fees under § 1927, like the denial of Rule 11 motion,[2] does not preclude a lawsuit for malicious prosecution or abuse of process. Rule 11 cannot "serve as a surrogate for an action based upon a claim of malicious prosecution. . ." ." *Graber v. Fuqua*, 279 S.W.3d 608, 613 (Tex. 2009) (*quoting McShares, Inc. v. Barry*, 266 Kan. 479, 970 P.2d 1005, 1014 (Kan. 1998)). "It is well settled that the Federal Rules of Civil Procedure, including Rule 11, do not preempt malicious prosecution claims predicated on federal civil actions." *Id.* "[T]he denial of a Rule 11 motion," or by extension a § 1927 motion, "does not foreclose assertion of a subsequent suit for malicious prosecution under state law." *Alkek & Williams, Ltd. v. Tuckerbrook Alternative Invs., LP,* 2012 U.S. Dist. LEXIS 125, *19 (S.D. Tex. Jan. 3, 2012); *see Cohen v. Lupo,* 927 F.2d 363, 365 (8th Cir. 1991)[3] (Adjudication of Rule 11 sanctions motion "does not have res judicata effect in [subsequent malicious prosecution case] because [a] malicious prosecution cause of action does not raise the same claim.").

Plaintiff's malicious prosecution and abuse of process claims are obviously not the "same claim" as Plaintiff's previous motion for attorneys' fees pursuant to § 1927,[4] but Defendant argues

---

[2] A post-judgment motion for an award of attorneys' fees under 28 U.S.C. § 1927 is similar to a motion for sanctions under Fed. R. Civ. P. 11, but the "standard for awarding sanctions under § 1927 is higher than that applicable to Federal Rule of Civil Procedure 11." *Wesolek v. Layton*, 2014 U.S. Dist. LEXIS 33103, *20 (S.D. Tex. Mar. 14, 2014).
[3] *Cohen v. Lupo* was cited with approval by both the Texas Supreme Court in *Graber* and the district court in *Alkek. See* 279 S.W.3d at 613 (citing *Cohen*); 2012 U.S. Dist. LEXIS 125, *21 (citing *Cohen*).
[4] 28 U.S.C. § 1927 and a court's inherent authority to sanction are procedural mechanisms a district court can use to discipline parties, not "claims" for which the doctrine of claim preclusion can apply. *See Pet Silk, Inc. v. Jackson,*

that Plaintiff's claims are barred under the doctrine of *res judicata* under the "transactional test" because they arise from a similar subject matter. MTD, p. 10-11. This argument has no merit.

Claim preclusion only bars re-litigation of claims that were (1) actually litigated, or (2) "claims or defenses that, through diligence, should have been litigated in the prior suit but were not." *Ingersoll-Rand v. Valero Energy*, 997 S.W.2d 203, 207 (Tex. 1999). However, for claim preclusion to apply to a claim that was not actually litigated in the prior lawsuit, the standard is "similar to the rule of compulsory counterclaims." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992); *see Ingersoll-Rand*, 997 S.W.2d at 207 (Tex. 1999). Claim preclusion does *not* apply to an unlitigated claim unless the defendant "could and should have been brought in the earlier litigation."). *D-1 Enterprises v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989).

Hammervold's malicious prosecution and abuse of process claims are not precluded because those claims were not actually litigated, those claims were not mandatory counterclaims in the prior suit, and Hammervold *could not* have raised those claims in post-judgment motion for sanctions. *See Incas & Monterey Printing & Packaging v. M/V Sang Jin*, 747 F.2d 958, 964-965 (5th Cir. 1984) ("[E]ven under th[e] liberal standard [for compulsory counterclaims], it is clear that an action in the nature of wrongful seizure or malicious prosecution does not lie as a compulsory counterclaim under F.R. Civ. P. 13(a). Such a counterclaim [is] not 'arising out of the same transaction or occurrence' as the original action for purposes of federal practice. . . ."); *Cohen*, 927 F.2d at 365 (noting that while "Rule 11 sanctions must be sought by motion in a pending case. . .[t]he nucleus of operative fact necessary to maintain an action for malicious prosecution includes the conclusion of the underlying action. Whether Cohen would be victorious in the Bastien litigation could not have been determined until the conclusion of that case.").

---

2010 U.S. Dist. LEXIS 2826, *4-6 (S.D. Tex. Jan. 14, 2010); *c.f. Southmark Corp. v. Coopers & Lybrand (in Re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir. 1999).

Jeweler's Mutual's citation to *In re: Paige*, MTD at 10, is distinguishable from the instant case because there, the Fifth Circuit found that the plaintiff in the second suit *could have* and *should have* raised the his fraud claim in the previous bankruptcy proceeding alongside the motion for sanctions. 610 F.3d 865, 874-876 (5th Cir. 2010). At oral argument, the plaintiff in that case conceded he could have brought his cause of action for fraud at the time he filed his sanctions motion due to special rules that apply in bankruptcy court. *Id.* at 875-876. This distinction was outcome dispositive in *In re: Paige,* as the Fifth Circuit expressly stated: "[o]nly if we determine that the claims asserted here could and should have been asserted in the earlier sanctions proceeding are [plaintiff's] claims barred by res judicata." *Id.* at 873. In contrast to the procedural circumstances in *In re: Paige*, Hammervold *could not* have raised his substantive causes of action for malicious prosecution or abuse of process alongside his post-judgment motion for attorneys' fees. *See Berry v. McLemore,* 795 F.2d 452, 455 (5th Cir. 1986) (district court's ancillary post-judgment jurisdiction "is limited to those actions that a court may take in that same action" and does not allow the district court "to consider claims in a new and independent action. . .").

### b. Issue Preclusion Does Not Apply.

Defendant also argues that Hammervold's malicious prosecution and abuse of process are also barred due to issue preclusion. MTD at 12-13. This argument has no merit because the issues, legal standard, evidentiary standard, and the underlying policy considerations are different. The issues were also not previously "fully and vigorously litigated" and it would be unfair to apply issue preclusion to disputed factual issues that should be resolved by a jury.

Issue preclusion only applies when: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Copeland v. Merrill Lynch*, 47 F.3d

1415, 1421-1422 (5th Cir. 1995). Issue preclusion is defeated where the issues, legal standards, or policies underlying the legal standards in the earlier judgment differ from the second suit. *Copeland*, 47 F.3d at 1422; *see Recoveredge v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995); *Brister v. A.W.I.* 946 F.2d 350, 354 & n.1 (5th Cir. 1991); *Southmark*, 163 F.3d 925, 932 (5th Cir. 1999).

First, the Court's denial of Hammervold's motion for attorneys' fees does not preclude any issues here because the factual issues and legal standards used to assess the issues are different. *See Copeland*, 47 F.3d at 1422 ("Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings.").

Courts have inherent authority "to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement." *Chambers v. NASCO,* 501 U.S. 32, 33 (1991). However, the court "must find that the very temple of justice has been defiled by the sanctioned party's conduct." *Goldin v. Bartholow*, 166 F.3d 710, 722–23 (5th Cir. 1999). Under § 1927, courts have discretion to award attorneys' fees if the party "multiplies the proceedings unreasonably and vexatiously." *Bryant v. Military Dep't*, 597 F.3d 678, 694 (5th Cir. 2010). However, such sanctions "are punitive in nature and require clear and convincing evidence, that every facet of the litigation was patently meritless and evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Id.* Section 1927 sanctions "should be employed only in instances evidencing a serious and standard disregard for the orderly process of justice." *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994).

The issues and legal standards for adjudicating a malicious prosecution claim are different. The elements are: (1) the institution of proceedings; (2) by or at the insistence of the defendant;

(3) malice; (4) lack of probable cause; (5) favorable termination; and (6) special damages. *Graber,*
279 S.W.3d at 617 n. 9. In denying Hammervold's prior motion, the Court did not adjudicate any
of these issues. Specifically, this Court did not decide "probable cause" or "malice." Probable
cause means "the existence of such facts and circumstances as would excite belief in a reasonable
mind, acting on the facts within the knowledge of the [plaintiff], that the person charged was
[liable] of the [claims] for which he was prosecuted." *Gunnels v. City of Brownfield*, 153 S.W.3d
452, 458 (Tex. App. 2013).[5] Malice, in this context, means "ill will, evil motive, gross indifference,
or reckless disregard of the rights of others." *Daniels v. Kelley*, 2010 Tex. App. LEXIS 5932, *16-
17 (Tex. App. 4th Jul. 28, 2010). The Court simply did not decide these issues. *See* Dkt. 9-1.

The elements for abuse of process are (1) defendant made an improper use of the process;
(2) defendant had an ulterior motive or purpose; and (3) plaintiff suffered damages. *Bossin v.
Towber*, 894 S.W.2d 25, 33 (Tex. App. 14th 1994). The legal standard for showing an "improper"
use of process is whether process is used "not to enforce some legal remedy that the process was
designed to afford, but was instead used to force the plaintiff to do some collateral thing which he
could not legally and regularly be compelled to do." *Wilcon v. Travelers Indem.*, 654 F.2d 976,
982 (5th Cir. 1981). This Court did not decide that issue. While this Court stated that Defendants'
"conduct throughout the course of the litigation appropriate," this finding was in reference to
Defendants "method of prosecution" (*e.g.,* no apparent excessive motion practice). Dkt. 9-1 at 7.
This Court did not address or approve as "appropriate" the conduct at issue in Hammervold's abuse
of process claim. *Compare* Dkt. 9-1 *with* Compl., Dkt. 1, ¶¶ 105, 109, 146-147.

---

[5] While the Court noted that the claims were complex and it had previously denied Hammervold's motion to dismiss
in connection with its assessment of the "frivolousness" of the claims in the underlying suit, Dkt. 9-1 at 6, this does
not amount to a finding of "probable cause." *See Pic-Walsh Freight Co. v. Cooper*, 618 S.W.2d 449, 452 (Mo. App.
E.D. 1981) (denial of a motion to dismiss in the underlying case does not defeat probable cause element in subsequent
malicious prosecution claim). The Court expressly declined to entertain Hammervold's argument that no evidence
supported Defendants' claims. Dkt. 9-1 at 6, n. 6.

This Court's denial of the motion for attorneys' fees also did not collaterally estop the claims in this case because the evidentiary standard for the prior motion was "clear and convincing evidence" and the evidentiary standard applicable in this case is only "preponderance of the evidence." *Compare* Dkt. 9-1 at 3-4 (applying "clear and convincing" evidentiary standard) *with Ellis County State Bank v. Keever*, 888 S.W.2d 790, 793 (Tex. 1994). Since a stricter evidentiary was applied in the prior case, there can be no collateral estoppel. *See Copeland,* 47 F.3d at 1422.

Collateral estoppel also does not apply because the purpose and policy considerations underlying the Court's discretion to reassess fees is different from those underlying Hammervold's state law claims for malicious prosecution and abuse of process. *See Brister*, 946 F.2d at 354 & n.1; *compare Bynum v. Am. Airlines*, 166 Fed. Appx. 730, 733 (5th Cir. 2006) (purpose of inherent authority to sanction is to allow courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") and *FDIC,* 20 F.3d at 1384 (§ 1927 is "penal in nature" so "a strict construction of § 1927 is necessary) *with  Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 469 (W.D. Tex. 1999) (noting that the purpose of the abuse of process tort is to provide compensation); *see also Goldstein v. Dobashi,* 2012 Cal. App. Unpub. LEXIS 6598, *33 (Cal. App. 1st Sept. 11, 2012) (explaining that "allowing a person denied sanctions to pursue a malicious prosecution case would not undermine the integrity of the judicial system by creating the possibility of inconsistent results" because sanctions serves a "different purpose" than a malicious prosecution action.).

Collateral estoppel also should not be applied because the Court's prior decision to decline to award attorneys' fees was entirely discretionary, so none of its factual findings were "necessary" to that decision. Collateral estoppel only precludes a party from re-litigating an issue previously raised in an earlier action when "the determination of the issue in the prior action was a ***necessary part*** of the judgment in that action." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 572 (5th

Cir. 2005). While a finding of "bad faith" is *necessary* to an order granting sanctions, it is not necessary for a court to decline to exercise its discretion to award sanctions. *See e.g., Bryant*, 597 F.3d at 694 (affirming denial of sanctions, even though trial court did not explain its reasoning).[6]

The issues decided by the Court in denying the motion for attorneys' fees were also not "fully and vigorously litigated in the prior action." *Copeland,* 47 F.3d at 1422. "Collateral estoppel is unavailable when a new determination on the issue is warranted by differences in the quality or extensiveness of the procedure followed in the two courts*." Id.* The Court summarily decided the motion for attorneys' fees on the briefs alone, without any evidentiary hearing or even oral argument. While this was appropriate in that context, a fresh determination of any overlapping issues is warranted by the differences in procedure employed by the Court for the previous motion and the adjudication process to which Hammervold is entitled in this case. *See Williams v. Divotoria*, 777 F. Supp. 1332, 1334 (E.D. La. 1991) (malice and probable cause are issues of fact to be decided by the jury); *Baros v. Tex. Mex. Ry.,* 400 F.3d 228 (5th Cir. 2005) (finding issues were not "fully and vigorously litigated" when adjudicated in the context of a TRO); *Pizza Hut, v. Lundy Enters.,* 2013 U.S. Dist. LEXIS 201172, *30 (N.D. Tex. Jun. 11, 2003) (declining to apply collateral estoppel based on  abbreviated arbitration conducted for limited purpose). The rationale underlying collateral estoppel is not frustrated by allowing any overlapping issues to be determined anew in this case. *See Wright v. Ripley*, 65 Cal. App. 4th 1189, 1195-1196 (Cal. App. 4th 1998) ("Because the sanction proceeding is of a summary nature, it is not particularly burdensome, and the complaining party will still be entitled to only one opportunity to fully litigate the claim.").

Defendant cites *Production Supply v. Fry Steel* in support of its issue preclusion argument,

---

[6] The element of "necessity" is consequential here because *if* the absence of bad faith were *required* to deny the motion for attorneys' fees, Hammervold would have had a meaningful appellate remedy as to this issue. However, since the Court applied the correct legal standard to Hammervold's motion, various the "unnecessary" parts that Defendants want use to collaterally estop Hammervold's claims in this case were effectively unreviewable.

but *Production Supply* applied a vastly different "primary right theory" of *res judicata* per California law. 74 F.3d 76, 78- (5th Cir. 1996). This distinction is material because the plaintiffs in that case identified differences in the issues that would have foreclosed issue preclusion under Texas law, but "are irrelevant under California's 'primary right' analysis." *Id.* Under California's analysis, the only question is whether the two actions arise from the "same harm." *Id.*

## II.     Hammervold has Stated a Claim for Abuse of Process.

Hammervold has stated a claim for abuse of process because he has alleged that the Defendants conspired to use the underlying lawsuit after it was filed to attempt to accomplish an end that could not lawfully have been achieved through that process: to coerce Hammervold into agreeing not to solicit or represent additional claimants against Defendants.

The elements of an abuse of process claim are: "(1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act." *Bossin*, 894 S.W.2d at 33. "Texas has generally recognized a cause of action for abuse of process where the original process . . . has been abused to accomplish an end which is beyond the purview of the process and compels a party to do a collateral thing which he could not be compelled to do." *Id.* The "critical aspect" of abuse of process "is the improper use of the process after it has been issued." *Jordan v. Jordan*, 2001 Tex. App. LEXIS 5106, *6 (Tex. App. 5th Jul. 30, 2001). The key inquiry "is whether the procedure at issue was used not to enforce some legal remedy that the process was designed to afford, but was instead used to force the plaintiff to do some collateral thing which he could not legally and regularly be compelled to do." *Wilcon*, 654 F.2d at 982. "There is, in other words, a form of extortion, and ***it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort***." *Id.* (*quoting* W. Prosser, Torts §

11

857 (1971)); *Liverman v. Payne-Hall*, 486 S.W.3d 1, 5 (Tex. App. 8th 2015) (same).

A settlement offer "becomes an improper use of process where the offer seeks more than objectives commonly sought by claimants who initiate similar lawsuits." *Partrich v. Farber*, 448 Fed. Appx. 526, 529 (6th Cir. Aug. 24, 2011). Such a settlement offer "perverts the regular process because his or her true objective is merely collateral to the suit's proper purpose." *Id.*

In *Dunn v. Koehring Co.,* the Fifth Circuit affirmed a finding of liability for abuse of process in favor of a Contractor plaintiff and reversed the trial court's finding of no-liability for abuse of process as to its co-plaintiff, the Contractor's Attorney. 546 F.2d 1193, 1203 (5th Cir. 1977). The Attorney obtained a large verdict in a lawsuit filed in state court in favor his client, the Contractor, against a Company. *Id.* at 1196-1197. The Company thereafter initiated, pursued, and participated in a myriad of other litigation, civil and criminal, against the Contractor and the Attorney for over a decade, to collaterally attack the judgment and to frustrate collection efforts on it. *Id.* at 1197-1198. The trial court found in favor of the Contractor because the Company had used the filing of various civil actions to cause "delay and harassment" and to "frustrate" collection on the judgment, and had used criminal proceedings against the Contractor "for [its] private gain." *Id.* at 1199. The trial court explained that the Company's "resort to judicial process as a club or form of extortion constitutes abuse of process." *Id.* However, the trial court declined to find the Company liable to the Attorney because the Company "did not misuse any processes issued" as to him. *Id.* at 1201. The Fifth Circuit reversed, finding that the Company's zealous participation in a criminal prosecution for contempt against the Attorney constituted an abuse of process because the Company's "only reasons for aiding in [the Attorney's] prosecution were either a desire to see [the Attorney] personally punished or to use this prosecution as a means to gain an advantage in the Mississippi suit for breach of warranty, [but] [e]ither reason would be a use of criminal process

to accomplish an ulterior purpose for which it was not designed." *Id.* at 1203.

Hammervold has alleged that Defendants used process in an "illegal or perverted manner for which it was never intended" because he has alleged that "Defendants conspired to abuse process in the federal case and in the consumer cases to attempt to achieve unlawful objectives, including to pressure and incent Hammervold to provide false inculpatory testimony against Manookian, to use the filed lawsuit as a basis to disqualify Hammervold in the pending consumer cases against Blank and The Diamond Doctor, and to obtain Hammervold's agreement that he would not solicit or pursue any claims against Blank, Diamond Doctor and/or Diamonds Direct." Compl. Dkt. 1, ¶ 109; *see* ¶¶ 105, 141, 145, 147. "Throughout the case, the [Defendants'] filing [and prosecution] of the lawsuit was never about collecting money, but about creating a mechanism to 'settle' with the defendants for unlawful non-monetary terms that could not be ordered by the Court." *Id.* at 141. Hammervold's Complaint contains incredibly detailed allegations and exhibits supporting his allegations that Defendants used the federal and state court lawsuits to achieve illicit collateral ends that could never be granted in those lawsuits and are not objectives that plaintiffs can ethically include in settlement agreements. *See id.* ¶¶ 87, 88, 92 (and Exhibit 11), 93, 101, 110, 111, 119, 122, 123 (and Exhibit 13), 124, 136. Hammervold has also alleged that Defendants, including Jewelers Mutual, had an ulterior motive. *Id.* ¶¶ 94-109, 119, 127, 143, 145-148.

Jewelers Mutual challenges Hammervold's abuse of process claim by arguing that it was not the party that issued or carried out the abuse of process. MTD at 17. However, since Hammervold has alleged a "conspiracy" that includes Jewelers Mutual,[7] *see infra* § VI, and "aiding

---

[7] *See ChemTreat v. Chemtech Chem. Servs.*, 2007 U.S. Dist. LEXIS 90175, *17 (E.D. Tex. Dec. 6, 2007) ("to prevail on a civil conspiracy claim against a particular defendant, a plaintiff need only prove that: (1) at least one named defendant committed a tortious act, and (2) the defendant at issue conspired to commit that tort."); *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 719 (Tex. App. 11th 2019) ("each coconspirator is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.").

and abetting" liability, *see infra* § VII, Jewelers Mutual need not have been the party that actually carried out the acts constituting the abuse of process.

Jewelers Mutual also argues, based on *Baubles v. Beads*, that no abuse of process occurred. MTD at 18. However, the factual circumstances of *Baubles* are inapposite, and the court's holding demonstrates that Hammervold has alleged an abuse of process here. In *Baubles*, the court found that the allegations failed to state a claim for abuse of process because the plaintiff "[did] not allege any coercive use of the process." 766 S.W.2d 377, 379 (Tex. App 6th 1989). While that plaintiff alleged the defendant had "improperly" used process to obtain publicity, to increase its sales, to decrease plaintiff's sales, and falsely accuse plaintiff of a crime, there was no allegation that the defendant attempted to *leverage* plaintiff in any way into agreeing "to do a collateral thing which he could not be compelled to do." *Id.* In contrast to *Baubles*, Hammervold clearly alleges that Defendants conspired to abuse process against him "in order to **coerce** Hammervold into entering into an illegal settlement agreement, in which Hammervold agreed to never solicit or pursue claims against [Defendants]." Compl., Dkt. 1, ¶ 147 (emphasis added); *see also* ¶¶ 105, 109, 141, 145.

Since Hammervold alleges Defendants conspired to use the process of the prior lawsuit to attempt to achieve an unlawful *collateral* objective, *i.e.* to *coerce* Hammervold into agreeing to unethical and illegally restrict his law practice, rather than for any legitimate relief available through that process, Hammervold has stated a claim for abuse of process.

### III. Hammervold's Abuse of Process Claim is Not Time-Barred.

In its motion, Jewelers Mutual argues that Hammervold's abuse of process claim is time-barred because it was filed more than two (2) years after the *issuance* of the process that Defendants conspired to abuse. MTD at 13-16. Jewelers Mutual's argument has no merit.

Jeweler Mutual's argument that an abuse of process claim accrues when process is *issued,* cannot be true because the *sin que non* of an "abuse of process" claim is the misuse of process

*after* process has already been issued. *See Liverman*, 486 S.W.3d at 5; *Bossin*, 894 S.W.2d at 33. Indeed, "[i]f wrongful intent or malice caused the process to be issued ***initially***, the claim is instead one for malicious prosecution." *Bossin*, 894 S.W.2d at 33 (emphasis added).

Hammervold alleges that "Defendants' conspiracy to abuse process was ***ongoing*** and ***remained continuous*** until Blank and the Diamond Doctor dismissed their lawsuit against Hammervold on February 28, 2019. Compl., Dkt. 1, ¶ 152 (emphasis added), *see also* ¶¶ 119, 122, 141, 145, 152. He also alleges incurring damages throughout the prior lawsuit due to Defendants' continuous abuse of process. *Id.* at ¶¶ 143, 150.

Under the "continuous tort" doctrine, the two-year statute of limitations on Hammervold's claim arising from Defendants' continuous abuse of process only began to run on February 28, 2019, when Defendants ceased abusing the process of the federal lawsuit.[8] *See Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542-543 (Tex. App. 5th Aug. 26, 1994); Compl., Dkt. 1, ¶ 152. Under the "continuous tort" doctrine, a "cause of action for a continuing tort does not accrue until the defendant's tortious act ceases." *Upjohn Co.*, 885 S.W.2d at 542.[9] To demonstrate a "continuous tort," the plaintiff must allege "not only continuing wrongful conduct, but continuing injury as well." *Id.* "In a continuing-tort case, the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops." *Id.* As such, so long as a defendant's conduct continues effecting injury upon a plaintiff,  the plaintiff's "cause of action for damages [is] not complete and [does] not accrue until the wrongful conduct ended." *Id.* at 542-543. This rule prevents a plaintiff from having to file a "multiplicity of suits" for a continuing tort. *Id.* at 542.

---

[8] Hammervold's Complaint not only alleges that Defendants consistently abused process throughout the case, *see* Dkt. 1 at ¶¶ 119, 122, 141, 145, 152, but also that the Defendants' latest attempt to coerce Hammervold into an illicit agreement restricting his practice occurred on February 25, 2019, just days before the Defendants finally abandoned this settlement posture and dismissed the case. *Id.* at ¶¶135-136.

[9] This is consistent with Jeweler Mutual's citation of *Gatheright v. Clark*, 680 F. App'x 297, 302 (5th Cir. 2017) for the principle that "the cause of action accrues and limitations begins to run upon the ***termination*** of the acts which constitute the abuse complained of. . ." MTD at 14 (emphasis added).

Hammervold has sufficiently pled the continuing tort doctrine at this stage of the case. "While Texas law supplies the applicable statute of limitations in this diversity case, federal law governs the pleading requirements of a case in federal court." *Tarpley v. Texaco, Inc.,* 1998 U.S. Dist. LEXIS 3482, *5 (N.D. Tex. Mar. 16, 1998). The "continuing tort doctrine. . .need not be specifically pleaded in federal court." *Id.* at *5-6; *see Howard v. CitiMortgage,* 2014 U.S. Dist. LEXIS 167842, *21 (S.D. Miss. Dec. 2, 2014) ("the Court finds that the Plaintiffs have not pled themselves 'out of court' and [defendant's] request for dismissal 'on the basis of limitations at the pleadings stage' is denied. Whether the Plaintiffs' claims are, in fact, timely via the continuing tort doctrine or some other ground is not being decided today. These issues may be revisited following the development of the facts through discovery and upon summary judgment briefing."). Hammervold has alleged that Defendants' abuse of process remained constant and continued throughout the case, from September 14, 2016 through February 28, 2019. Compl., Dkt. 1, ¶¶ 100, 119, 122, 141, 145, 152. The nature of the injury Hammervold suffered due to Defendants' abuse of process was also continuous. *Id.* at ¶¶ 143, 150, 152. Jewelers Mutual's motion does not address the continuous tort doctrine or the sufficiency of Hammervold's pleading of it. MTD at 13-16.

Jewelers Mutual's citation to *Aly v. City of Lake Jackson* is inapposite. MTD at 14. In *Aly,* the issue was the accrual date for the statute of limitations applicable to the plaintiff's § 1983 claim for a false arrest. 453 Fed. Appx. 538, 538-539 (5th Cir. 2011). In contrast to Hammervold's claims against Defendants, that plaintiff's claim arose entirely from the city's decision to arrest and charge him on January 26, 2007 and was limited to conduct that occurred on that single date. *Id.* at 539.[10]

Alternatively, even without the continuing tort doctrine, Hammervold has still alleged timely claims for abuse of process against the Defendants because the Defendants abused process

---

[10] Indeed, the plaintiff in *Aly* expressly "stipulated" that he was not pursuing a malicious prosecution or false improvement claim based on the city's actions after his arrest. *Id.*

throughout the pendency of the federal lawsuit, including during a meeting in Chicago that occurred on February 25, 2019. Compl., Dkt. 1, ¶¶ 119, 122, 135-136, 141, 145, 152.

Since Hammervold has stated a timely claim for abuse of process, Diamonds Direct's motion to dismiss should be denied.

## IV.     Hammervold has Pled Sufficient Facts to Establish the Favorable Termination Element for Malicious Prosecution.

Hammervold has pled sufficient facts, when taken in the light most favorable to him, to establish that the underlying lawsuit terminated in his favor.

Under Texas law, "voluntary non-suits might satisfy the favorable-termination element depending upon the circumstances attending the non-suits." *McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337, 350 (Tex. App. – Austin 2001), *rev'd in part on other grounds*, 104 S.W.3d 80 (Tex. 2003); *Duzich v. Advantage Fin. Corp.*, 424 F.Supp. 910, (S.D.Tex. 2003) ("The Court is inclined to follow the state court rule that voluntary dismissal may in some cases qualify as a favorable determination for the defendant."), *aff'd in* 395 F.3d 527 (5th Cir. 2004).[11] [12]

A voluntary dismissal of a civil lawsuit "can be a favorable termination if (1) it was not pursuant to a settlement agreement or compromise, or (2) the circumstances under which the action

---

[11] Jewelers Mutual cites *Duzich,* 395 F.3d at 530 for the proposition that "Texas law is clear" that a "voluntary dismissal is not a favorable termination for the plaintiff," MTD at 20, but this is not true. First, in *Duzich* the Fifth Circuit affirmed the trial court on the *primacy* ground that "we agree with the district court. The record in this case provides nothing from which to infer that the voluntary dismissal of the bankruptcy proceeding by the Trustee was a favorable termination for Duzich on the merits." 395 F.3d at 527. Regardless, Texas law is at best unclear on this issue because as Jewelers Mutual acknowledges: "some Texas courts have suggested that a voluntary dismissal could constitute a favorable termination under the right circumstances. . ." MTD at 20 (*citing McCall*, 82 S.W.3d at 337.

[12] Since Texas appears to follow the Restatement approach and allow for the possibility that a voluntary dismissal could constitute a "favorable termination" under appropriate circumstances – and Jewelers Mutual appears to acknowledge this point at last in part –  there is no apparent conflict with Illinois law, requiring a choice of law analysis. *See Cult Awareness Network*, 177 Ill. 2d 267, 278-279 (Ill. 1997) (Illinois also follows same restatement approach). However, Hammervold has alleges that Illinois law should govern the "favorable termination" element of his malicious prosecution claim. Compl., Dkt. 1, ¶ 157(a). Should the Court interpret Texas law on the issue of "favorable termination" to be narrower than acknowledged by the Defendants in their Motion to Dismiss, Hammervold requests an opportunity to fully brief the choice-of-law issue. *See Byerly v. Std. Ins. Co.,* 2020 U.S. Dist. LEXIS 51854, *15 (E.D. Tex. Mar. 25, 2020) (J. Mazzant) (Because partial motion for summary judgment briefing inadequately addressed the choice of law issue, the court ordered the parties to each submit a supplemental briefs on the choice-of-law issue).

was dismissed are not inconsistent with innocence." *Liberty Synergistics v. Microflo*, 50 F. Supp. 3d 267 (E.D.N.Y. 2014); *see* Restat. 2d of Torts § 674, cmt. j[13] (when determining whether the withdrawal of civil claims should constitute a favorable termination, "the same considerations are decisive as when criminal charges are withdrawn."); Restat. 2d of Torts, § 660-661, 665 ( dismissal of a criminal action is <u>not</u> considered a favorable termination when charges are dismissed due to a negotiated compromise, due to misconduct by the accused, for mercy requested or accepted by the accused, or to later reinstate the charges); *Izen v. Catalina*, 256 F.3d 324, 328 (5th Cir. 2001) (dismissal of charges without *quid pro quo* with the accused is considered a favorable termination).

Hammervold alleges circumstances demonstrating that the Defendants' dismissal of their lawsuit was a "favorable termination" to Hammervold.[14] Specifically, Hammervold alleges that the "Plaintiffs dismissed their own lawsuit on February 28, 2019 because they knew that effectively-dispositive pending motions in limine were likely to be granted on March 30, 2019, and in any event, that Hammervold was likely to obtain a directed verdict in his favor after the court declined to allow Hammervold to file a motion for summary judgment based on Blank's deposition testimony." Compl., Dkt. 1, ¶ 142. The Defendants claimed that they were dismissing their case due to concerns about collecting against Hammervold, but this was false. *Id.* at ¶ 143. Throughout the case, the Defendants' filing and prosecution of the prior lawsuit "was never about collecting money, but about creating a mechanism to 'settle' with the defendants for unlawful non-monetary terms that could not be ordered by the Court." *Id.* Additionally, Defendants were willing to dismiss with prejudice, but Hammervold would not agree to release Defendants. *Id.* at 139-140.

Jewelers Mutual attempts to negate the "favorable termination" element using language

---

[13] This Restatement section has been adopted by Texas. *See McCall*, 82 S.W.3d at 350, n. 6.
[14] Diamonds Direct, in its own Motion to Dismiss, *twice* acknowledges that Hammervold "prevailed." *See* Dkt. 10, p. 9 ("Dissatisfied with having <u>prevailed</u>, . . . Hammervold filed a twenty five page motion, . . . asking the Court to award attorneys' fees. . . .") and p. 22 ("Hammervold. . . ultimately prevailed when Diamond Doctor dismissed the lawsuit.").

from this Court's order on the attorneys' fees issue that there was "not a clear successful litigant" after Hammervold did not even argue that issue at that time. MTD at 21; *see* Dkt. 9-7, p. 5 ("it does not appear that the Hammervold Defendants attempted to argue that Plaintiffs were unsuccessful litigants."). This has no merit because the Court's statement does not satisfy the requirements for either collateral issue estoppel or judicial notice. *See supra* Section I(b); *Taylor,* 162 F.3d 830. Here, Hammervold has alleged factual circumstances demonstrating the nonsuit was favorable termination that must be accepted as true at this stage of the case. Compl., Dkt. 1, ¶ 142.

Accepting Plaintiff's allegations as true and construing them in the light most favorable to the Plaintiff, the Plaintiff has sufficiently plead the element of "favorable termination."

## V.   Hammervold has Pled a "Special Injury."

Hammervold's has pled a "special injury" for malicious prosecution and abuse of process under Illinois law. Alternatively, it is premature to determine this choice of law issue against the pleader and Hammervold has pled a "special injury" under Texas law.

### a.   Illinois Law Should Govern Whether Hammervold Suffered a "Special Injury" or "Special Damages" Due to Defendant's Tortious Conduct.

This Court should apply Illinois law to determine whether the Hammervold has alleged damages constituting a "special injury" or "special damages" because Illinois has the "most significant relationship" to this specific issue.

Hammervold agrees with Jewelers Mutual[15] that the "most significant relationship" test should governs this choice of law issue, and the restatement factors outlined in § 6 and § 145 of the Second Restatement of Conflicts of Law should be weighed to determine the choice of law for Hammervold's claims. MTD at 7-8. However, Defendant's choice of law analysis is flawed because the "most significant relationship" choice-of-law test must be applied *by issue*. *See Energy*

---

[15] *See* MTD at 7-8.

*Coal S.P.A. v. Citgo Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) ("the law of one state may govern one issue in the case and the law of a different state may govern another."); *see* 2d Restat. of Confl. of Law § 155 (recognizing a different state may have a "more significant relationship" "with respect to [a] particular issue" where the malicious prosecution was filed).

Illinois law should apply to the "special injury" issue because Illinois has the "most significant relationship" to this issue based on the § 6 and § 145 Restatement factors.

A state's laws regarding which types of damages are compensable "balances the need to compensate the plaintiff against the goal of protecting resident defendants from undue liability and excessive litigation." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000). The "special injury" or "special damages"[16] rule involves a balancing of these same policy considerations. *See Cult Awareness Network,* 177 Ill. 2d at 279 ("A common theme with respect to the special injury rule which runs throughout all of this court's opinions on the subject. . .is this court's recognition of its responsibility to maintain a proper balance between the societal interest in preventing harassing suits and in permitting the honest assertion of rights in our court rooms. . . .As our case law amply demonstrates, it is this balance which lies at the heart of the special injury rule.").

"For purposes of damages under the most significant relationship analysis, 'under Texas law, the most important factor is not where the injury occurred but rather where the plaintiff is domiciled.'" *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 289 (Tex. App. 9th 2019).

Hammervold is an Illinois domicile, and he suffered the damages constituting his "special injury" or "special damages" principally, if not entirely, in Illinois. Dkt. 23, ¶ 2. Since these factors are the "most important" in selecting the choice of law for the "special damages" issue, and they

---

[16] Texas courts currently use the terms "special injury" and "special damages" interchangeably. *See e.g. Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 207 (Tex. 1996). This element for a malicious prosecution claim used to be described as "damages conforming to the legal standards under Texas." *Martin v. Trevino*, 578 S.W.2d 763, 766 (Tex. App. 1978).

weigh in favor of Illinois law, Illinois law should apply. *See Cook*, 581 S.W.3d at 289.

Other facts and restatement factors also weigh in favor of applying Illinois law for the "special injury" or "special damages" issue. David Blank and Diamond Doctor served Hammervold with process at his home in Illinois, and some of the Defendants' conduct at issue in the Complaint occurred in Illinois. *See* Dkt. 23, ¶ Compl., Dkt. 1, ¶¶ 135-136.

The "place" of the relationship between Hammervold and Jewelers Mutual includes both Illinois and Texas. Jewelers Mutual is a Wisconsin-based insurance company that operates nationwide, including in Illinois. *See* Dkt 1, ¶ 6. By August 2016 – before the prior lawsuit was filed against Hammervold – Hammervold was pursuing diamond overgrading claims against Jewelers Mutual insureds in multiple states, including Illinois. *Id.* ¶ 96; Dkt. 20, ¶ 4.

Diamond Doctor was a Texas-based jewelry retailer and David Blank is a Texas resident, but Diamond Doctor did business across the country, including by shipping jewelry to customers located in various states. Dkt. 22, ¶ 5. Blank and Diamond Doctor's lawsuit against Hammervold was targeted to Hammervold's activities in Illinois. Dkt. 22, ¶ 7. Blank and Diamond Doctor characterized Hammervold's actionable conduct as his "willingness and availability to prosecute and acceptance of representation of parties in suits against targeted jewelers is part of Manookian's overall scheme to extort jewelers," and rejected the notion that their claims were based not communication or action Hammervold undertook "regarding the over-grading of diamonds in the state court lawsuits against the Diamond Doctor" (in Texas). *Id.*; Dkt. 21-1 at 18.

While Jewelers' Mutual and Diamond Doctor chose to file the underlying lawsuit against Hammervold in federal court in Texas, the decision to file suit in that venue was incidental to the Parties' relationship because these Defendants could have sued Hammervold in a number of other venues where personal jurisdiction could be established over Hammervold, including *e.g.,* Illinois,

Tennessee, or Florida. The gravamen of Defendant's claims against Hammervold arose under federal substantive law (RICO), based on alleged federal and Tennessee law predicate offenses. *See* Dkt. 9-7 at 26-31, ¶¶ 77-88.

Although the underlying lawsuit was filed in Texas, the conduct Hammervold alleges was wrongful was directed towards Hammervold in Illinois. Defendants abused process because they "sought to use the civil lawsuit to prevent Hammervold from soliciting and prosecuting consumer claims against Blank, The Diamond Doctor, Diamonds Direct, and/or other Jewelers Mutual insureds." Dkt. 1 at ¶ 158(d). Since Hammervold was based in Illinois, the illicit restrictions that the Defendants sought to coerce Hammervold into accepting were primarily directed toward Hammervold's conduct in Illinois. Dkt. 23, ¶ 9. Likewise, the illicit benefits Defendants sought to obtain from Hammervold would not just be enjoyed in Texas, but anywhere they could have to defend against a lawsuit by a future claimant represented by Hammervold. *Id.* ¶¶ 5, 7.

Illinois also has a stronger interest in its "special injury" rule being applied to its domicile's claims under the facts alleged by Hammervold because the Illinois Supreme Court has made a specific finding that the unique type of injury Hammervold suffered should constitute a compensable "special injury." Both Illinois and Texas courts require showing of a "special injury" for malicious prosecution or abuse of process claim because "[o]rdinary trouble and expense, as they arise from the ordinary forms of legal controversy, should be endured by the law-abiding citizen as one of the inevitable burdens which men must sustain under civil government." *Smith v. Michigan Buggy Co.*, 175 Ill. 619, 629 (1898); *see Pitts & Collard v. Schechter,* 369 S.W.3d 301 (*citing Smith,* 175 Ill. 619)("These same considerations have been discussed by other state supreme courts adhering to the special injury requirement."). However, the Illinois Supreme Court has addressed the exact type of injury alleged by Hammervold and has made a clear policy choice that

such an injury constitutes a "special injury" that should be compensated in a malicious prosecution case. *See Cult Awareness Network*, 177 Ill. 2d at 279, *see also infra* Section II(c).

Based on the § 6 and § 145 Restatement factors, including those factors that are most crucial to the "special injury" issue under Texas law, Illinois law should govern this issue.

> **b. Alternatively, it is Premature to Conclusively Decide the Choice-of-Law Issue Against the Pleader at this Stage of the Case Before Any Discovery and Without Any Evidentiary Record.**

Even if this Court finds that Hammervold has not conclusively demonstrated that Illinois law applies to the "special injury" element of his claims, this Court should nevertheless reserve its final decision on the choice-of-law issue until an appropriate evidentiary record can be presented, because it is premature to determine this choice-of-law issue against the pleader at this time. *See Janvey v. Proskauer Rose LLP*, 2015 U.S. Dist. LEXIS 187809, *9-10 (N.D. Tex. Jun. 23, 2015); *Floyd v. CIBC World Mkts., Inc.,* 426 B.R. 622, 641 (S.D. Tex. 2009); *Blanchard & Co., Inc. v. Contursi,* 2000 U.S. Dist. LEXIS 6672, *14 (E.D. La. 2000); *see also Leaf Trading Cards, LLC v. Upper Deck Co.,* 2020 U.S. Dist. LEXIS 27780, *5 (N.D. Tex. Feb. 19, 2020); *Southern Audio Servs. v. Carbon Audio, LLC,* 141 F. Supp. 3d 653, 662 n. 4 (M.D. La. 2015); *Haynesville Shale Rentals, LLC v. Total Equip. & Serv*., 2012 U.S. Dist. LEXIS 147297, *2-3.

> **c. Hammervold has Pled a "Special Injury" Under Illinois Law.**

Hammervold has plead a "special injury" under Illinois law because he has alleged damage to his professional reputation in a manner that harmed his future job prospects and the Defendants "conspired to use [the underlying] litigation 'not to resolve any dispute between the parties but to keep [Hammervold] from engaging in [his] business." Compl., Dkt. 1 at ¶ 158(c),(d).

Under Illinois law, "[w]hile loss of reputation alone is not considered a special damage, loss of reputation that affects one's job prospects has been found to constitute special damages" for both a malicious prosecution and an abuse of process claim. *Rothman v. City of Chicago*, 2003

23

U.S. Dist. LEXIS 8376, *17-18 (N.D. Ill. May 14, 2003); *see* Dkt. 1 at ¶ 143, 158(c).

The Illinois Supreme Court has also recognized that damages constitute a "special injury" when the defendants have used litigation not to resolve any good faith legal dispute, but to keep the plaintiff from engaging in its business. *Cult Awareness*, 177 Ill. 2d at 284-285. In *Cult Awareness*, a non-profit organization sued the Church of Scientology for malicious prosecution and abuse of process because the Church of Scientology conspired to have seventeen of its members file lawsuits against the non-profit across the country. *Id.* at 269-270. The plaintiff alleged that the lawsuits were filed "to keep plaintiff from engaging in its business of disseminating information regarding religious freedom." *Id.* at 285. The court found that under these circumstances, the injury alleged by the non-profit could not be deemed "ordinary." *Id.* As in *Cult Awareness,* Hammervold has alleged that these Defendants filed the underlying lawsuit "not to resolve any legal dispute, but to keep [Hammervold] from engaging in his business." Compl., Dkt. 1, ¶ 158(d). Here, Hammervold has alleged that the Defendants filed the lawsuit as a means to prevent Hammervold from engaging in his business of representing consumer claimants against jewelers. Specifically, Hammervold has alleged that Defendants filed and abused the process of the lawsuit to attempt to disqualify Hammervold from representing claimants against Diamond Doctor, to create a conflict of interest to prevent Hammervold from accepting additional representation of claimants, and to attempt to coerce Hammervold into agreeing to an unlawful "settlement" agreement to restrict his practice, so that he could not pursue further litigation against Defendants. *Id.* at ¶¶ 105, 109-111, 119, 123, 145-147, 158. As such, Hammervold pled damages cognizable under Illinois law as a "special injury." *See Cult Awareness*, 177 Ill. 2d at 285.

### d.  Even Under Texas Law, Hammervold has Pled a "Special Injury."

Hammervold has sufficiently alleged a "special injury" even under Texas law because Hammervold alleged that (1) Defendants' abuse of process was directed towards interfering with

his person and his property – not obtaining money from him – and Defendants succeeded in restricting Hammervold's ability to represent additional claimants against Defendants; and (2) Defendants obtained an agreed injunction that applied Hammervold.

To show special damages under Texas law, a plaintiff "must have suffered more than just the 'mere filing of a lawsuit' or 'ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees.'" *Columbia Valley Healthcare Sys., L.P. v. Pisharodi,* 2020 Tex. App. LEXIS 806, *22-23 (Tex. App. 13th Jan. 30, 2020) (*quoting Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996). Instead, there "must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Id.*

Hammervold has pled a "special injury" because Defendants obtained an agreed injunction that applied against Hammervold. Dkt. 1 at ¶ 117-118. This injunction applied to "those persons in active concert or participation with [the Parties] who receive actual notice of this order by personal service or otherwise." *Id.* at 118. The Defendants were targeting Hammervold with this injunction because they were alleging in the same lawsuit where the injunction was entered that Hammervold was part of an "association in fact" with Manookian and they "function as a unit with a common purpose…." Dkt. 9-7, p. 24, ¶ 72. The injunction was drafted to apply to Hammervold, without specifically naming him, because the Defendants had requested Manookian agree and/or facilitate Hammervold agreeing to the terms of the injunction, but Hammervold would not agree. Compl. Dkt. 1, ¶ 116. Jewelers Mutual argues that Hammervold "merely pleads the incidental effects on an injunction" citing *Tex. Beef Cattle*, MTD at 19-20, but that case is distinguishable because the injunction in that case was not alleged to target the plaintiff or his cattle, it was only alleged to result in consequential damages. 921 S.W.2d at 210.

The Defendants' bad faith filing and abuse of the underlying lawsuit also caused Hammervold a "special injury" – not just ordinary damages – because the Defendants' malicious filing of the lawsuit and abuses of process were directed towards interfering with Hammervold's person and property, and caused an actual interference with Hammervold's property because Defendants succeeded in restricting Hammervold's ability to continue accepting representation of claimants adverse to Diamond Doctor and Blank due to known conflict of interest rules. Compl., Dkt. 1, at ¶ 158(b)(d); *see ¶* 109-111, 116, 119, 122, 127, 145-147. This interference can be considered interference with a "property interest" because  Hammervold had a "property interest" in his unrestricted ability to practice law and undertake representation of clients. *Durham v. Supreme Court of Tennessee*, 2007 U.S. Dist. LEXIS 23252, *12 (M.D. Tenn. Jan. 29, 2007) (recognizing property interest in right to practice law under Tennessee law); *Greening v. Moran*, 739 F. Supp. 1244, 1251 (C.D. Ill. 1990) (recognizing same under Illinois law); *see Pisharodi,* 2020 Tex. App. LEXIS 806, *22-23 (Tex. App. 13th Jan. 30, 2020) (restriction of medical admitting privileges due to peer reviews defendant initiated was considered "interference with a property right, akin to an injunction, and therefore satisfie[d] the special damages requirement.").

## VI.     Hammervold has Stated a Claim for Conspiracy Against Jewelers Mutual.

Hammervold has stated a claim for civil conspiracy against Jewelers Mutual because he has alleged that Jewelers Mutual conspired to maliciously prosecute him and abuse process against him. Jewelers Mutual challenges Hammervold's pleading of a conspiracy claim against it on the basis that (a) Hammervold has not alleged enough details to show a "meeting of the minds at the outset of the scheme that included Diamonds Direct"; and (b) Hammervold has not alleged an "*unlawful*, overt act by any defendant." MTD at 24 (emphasis in original). These arguments fail.

### a.  Hammervold has Sufficiently Alleged the "Meeting of the Minds" Element.

To satisfy the "meeting of the minds" element of civil conspiracy, the plaintiff "must allege

26

that defendants had the 'specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *Samsung Elecs. Am., Inc. v. Chung*, 2017 U.S. Dist. LEXIS 21700, *34 (N.D. Tex. Feb. 16, 2017). A plaintiff must plead facts that, when viewed through the lens most favorable to plaintiff, raises a reasonable inference that the defendants agreed, expressly or tacitly, to accomplish the unlawful purpose, or to use unlawful means to accomplish a lawful purpose. *See Troice v. Proskauer Rose LLP*, 2015 U.S. Dist. LEXIS 36672, *30 (N.D. Tex. Mar. 4, 2015), *rev'd on other grounds by* 816 F.3d 341 (5th Cir. 2016).

Jewelers Mutual argues that Hammervold has not pled "no meeting of the minds" as to Jewelers Mutual because "there is no allegation that Jewelers Mutual knew the object and the purpose of the conspiracy at the outset, agreed to join the scheme, and did so with the specific intent to injure Hammervold." MTD at 24. These arguments have no merit.

With respect to the conspiracy to abuse process, Hammervold directly alleges that "Jewelers Mutual. . . conspired with Blank and Diamond Doctor to abuse process against Hammervold in the federal case and in the state law consumer cases, in order to coerce Hammervold into entering into an illegal settlement agreement, in which Hammervold agreed to never solicit or pursue claims against The Diamond Doctor, Blank and Diamonds Direct, or alternatively, to intimidate, embarrass, discredit and/or invalidate Hammervold if Hammervold was unwilling to agree to same." Dkt. 1 ¶ 147. With respect to the conspiracy to maliciously prosecute, Hammervold alleges "Jewelers Mutual. . .insisted that Hammervold be named as a defendant. . . and aided, abetted, encouraged and supported the prosecution of Hammervold by paying attorneys to affirmatively prosecute those claims. . ." *Id.* ¶ 154.[17]

Jewelers Mutual claims that its "role in Diamond Doctor's lawsuit was limited to the role

---

[17] Hammervold was not added as a Defendant to the lawsuit until after Jewelers Mutual's retained attorneys formally took control of the federal lawsuit and the state consumer claims. *See Id.* at ¶¶ 97-100.

every insurance carrier plays in litigation involving their insured: providing an attorney, paying for legal costs and monitoring settlements," MTD at 18, but Hammervold did not assert any affirmative claims against Blank or Diamond Doctor in the federal case, and the "insurance agreement with [Blank and Diamond Doctor] would not and should not have covered Jewelers Mutual pursuing claims against the attorney of a consumer claimant." Dkt. 1 ¶ 154. Furthermore, Jewelers Mutual "continued to pay for Blank and the Diamond Doctor's attorneys fees and expenses in prosecuting the federal lawsuit against Hammervold" even after its insureds settled with Manookian and there were no affirmative claims against its insureds *at all*. *Id.* ¶ 127. Jewelers Mutual acted beyond the requirements of its insurance contract and "continued to fund and participate in the lawsuit against Hammervold as a way to intimidate and seal-off Hammervold from accepting consumer claims against Diamond Doctor and/or other Jewelers Mutual Insureds." *Id.* Jewelers Mutual was also directly involved in not only insisting that Hammervold be sued, but it also "sign[ed] off on settlement demands communicated to Hammervold that would unlawfully seal Hammervold off from soliciting future claimants against Blank, Diamond Doctor, and/or Diamonds Direct. *Id.* ¶¶ 148, 154. One of those settlement overtures was communicated in writing to Hammervold by a lawyer that was retained and controlled by Jewelers Mutual. *Id.* ¶¶ 97, 123.

Jewelers Mutual suggests that Hammervold has not sufficiently pled "meeting of the minds" because Hammervold does not allege that Jewelers Mutual was involved in the "concoction" of the conspiracy in January 2016. MTD at 23. This argument fails as a matter of law because "it is axiomatic that it is not necessary for each conspirator to have entered into the unlawful agreement at its inception." *United States v. Ashley,* 555 F.2d 462, 467 (5th Cir. 1977).

Jewelers Mutual also claims that since Hammervold's allegations regarding Jewelers Mutual involvement are made on "information and belief" they are "insufficient as a matter of law.

MTD at 32. However, this argument also fails as a matter of law, as the Fifth Circuit has repeatedly

recognized that "'information and belief pleadings are generally deemed permissible under the

Federal Rules, especially in cases in which the information is more accessible to the defendant."

*Johnson v. Johnson*, 385 F.3d 503, 531, n. 19 (5th Cir. 2004); *see Innova Hosp. San Antonio, L.P.*

*v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018).

### b.  Hammervold has Sufficiently Alleged the "Overt Act" Element.

Jewelers Mutual argues that Hammervold has not alleged an "*unlawful* overt act" because

Hammervold has not identified an illegal act by any of the Defendants[18] in furtherance of the

conspiracy. MTD at 24-25. This argument clearly fails because the conduct constituting the

underlying intentional torts satisfy the "unlawful overt act" element of civil conspiracy. *Parsons*

*v. Deutsche Bank Nat'l Trust Co.*, 2019 U.S. Dist. LEXIS 19978, *17 (N.D. Tex. Jan. 22, 2019).

*See Davis—Lynch, Inc. v. Moreno,* 667 F.3d 539, 553 (5th Cir. 2012) ("To establish the required

'overt act,' a plaintiff must show that the defendant committed an act that, if done alone, would

give rise to a cause of action."). One conspirator's commission of the intentional tort that was the

object of the conspiracy is sufficient to satisfy the "overt act" element required for a conspiracy.

*See Parsons,* 2019 U.S. Dist. LEXIS 19978, *17; *Martin v. Tex. Dep't of Protective & Regulatory*

*Servs.*, 405 F. Supp. 2d 775, 799 (S.D. Tex. 2005); *c.f. Bradley v. Phillips Petroleum Co.,* 527 F.

Supp. 2d 625, 657-658 (S.D. Tex. 2007) (where plaintiff fails to state underlying intentional tort,

conspiracy claim also fails for lack of "unlawful overt act" requirement.").

Even if a conspirator were required to commit a criminal offense in order to show the "overt

act" element of a conspiracy to commit an intentional tort (this is not required), Hammervold's

Complaint has still alleged this. *See* Compl., Dkt. 1, ¶¶ 110-112; 18 U.S.C. § 1512(b)(1).

---

[18] Only one or more conspirator need undertake an overt act in furtherance of the conspiracy. *See United States v. Chagra,* 638 F. Supp. 1389, 1409 (W.D. Tex. 1986).

**VII.    Even Without Conspiracy Liability, Hammervold has Sufficiently Pled Facts Establishing Jewelers Mutual's "Aiding and Abetting" Liability for Malicious Prosecution and Abuse of Process.**

Separate and apart from its conspiracy liability, Jewelers Mutual is liable for abuse of process and malicious prosecution based on "aiding and abetting" liability. *See* Compl., Dkt. 1, ¶¶ 148, 154; *Lewis v. Continental Airlines*, 80 F. Supp. 2d 686, 695 (S.D. Tex. 1999) (applying Texas law) ("Anyone who commands, directs, advises, encourages, procures, controls, aids, or abets a wrongful act by another, is just as responsible for the wrongful act as the one who actually committed it."); *J. C. Penney Co. v. Gilford*, 422 S.W.2d 25 (Tex. App. 1st 1967) ("Liability for an abuse of process . . .extends to all persons who knowingly procure, aid, abet, participate in, or subsequently adopt or ratify the act which constitutes the abuse"); Prosser and Keeton on Torts 872 (5th ed. 1984) ("if the defendant advises or assists another person to begin the proceeding, ratifies it when it is begun in defendant's behalf, or takes any active part in directing or aiding the conduct of the case, the defendant will be responsible.");[19] *c.f. Macias v. Gomez*, 2014 Tex. App. LEXIS 13197 *12 (Tex. App. 13th Dec. 11, 2014) ("conspiracy and aiding and abetting are both derivative claims that require the commission of an underlying tort to be viable."). Jewelers Mutual has not challenged Hammervold's pleading of its "aiding and abetting" liability.

## CONCLUSION

For the foregoing reasons, Jewelers Mutual's Motion to Dismiss should be denied.

**RESPECTFULLY SUBMITTED,**

**s/Mark Hammervold**
Mark Hammervold, IL #6320744
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
**mark@hammervoldlaw.com**

---

[19] *Quoted* in *Holmes v. Slay*, 2015 U.S. Dist. LEXIS 37493, *22-23 (E.D. Mo. Mar. 25, 2015).

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 5, 2020, a true and correct copy of the

foregoing filing was served upon all counsel of record via the Court's ECF system.

*/s/ Mark Hammervold*