**IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION**

| | | |
|---|---|---|
| **MARK HAMMERVOLD** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **No. 4:20-CV-00165-ALM** |
| **v.** | § | |
| | § | |
| **DIAMONDS DIRECT USA OF** | § | |
| **DALLAS,  LLC; DAVID BLANK;** | § | |
| **DIAMOND CONSORTIUM, INC.** | § | |
| **d/b/a THE DIAMOND DOCTOR; and** | § | |
| **JEWELERS MUTUAL INSURANCE** | § | |
| **COMPANY** | § | |

**PLAINTIFF MARK HAMMERVOLD'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT DIAMONDS DIRECT'S MOTION TO DISMISS**

**MARK HAMMERVOLD[1]**
Mark Hammervold, IL #6320744
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
mark@hammervoldlaw.com

*Pro Se Plaintiff*

---

[1] Mark Hammervold is admitted to practice in this district, but is representing himself *pro se* in this case.

1

I. **Diamonds Direct's Assertion of Res Judicata and Collateral Estoppel Affirmative Defenses for the First Time in its Reply is Improper.**

In its Reply, Diamonds Direct indicates that it is now also seeking dismissal based on res judicata and collateral estoppel, after failing to raise either defense in its motion to dismiss. Dkt. 27 at 3. This is improper. *See Petty v. Portofino Council of Coowners*, 702 F. Supp. 2d 721, 729 n. 3 (S.D. Tex. 2010) ("This Court need not address any new issues brought in Defendant's reply brief because the scope of the reply brief must be limited to addressing the arguments raised by the response."). However, to the extent that the Court considers these new defenses, Hammervold incorporates, by reference, its previous briefing at Dkt. 21 at 8-18, Dkt. 24 at 3-16, Dkt. 30 at 2-4.

II. **Hammervold's Abuse of Process Claim is Not Time-Barred.**

Both sides agree that "a cause of action for abuse of process accrues upon 'the ***termination of the acts*** which constitute the abuse complained of." Reply, Dkt. 27 at 3 (*citing Gatheright v. Clark*, 680 F. App'x 297, 302 (5th Cir. 2017) (emphasis added). Under this accrual rule, Hammervold's abuse of process claim is clearly timely because Hammervold has  alleged that the Defendants' conspiracy to abuse process did not terminate until February 2019. Compl., Dkt. 1, ¶ 119; *see* ¶¶ 110-111, 123, 145.[2] Therefore, Hammervold's abuse of process claim is not time-barred based on the facts alleged in the complaint. *See Constr. Cost Data v. Gordian Grp.*, 2017 U.S. Dist. LEXIS 77481, *15 (S.D. Tex. Apr. 24, 2017) ("Only when a plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).").

In its Reply, Diamonds Direct continues to advance a statute of limitation argument based on a clear misunderstanding of Hammervold's abuse of process claim. Diamonds Direct's

---

[2] The Defendants' latest attempt to coerce Hammervold into an illicit agreement restricting his practice occurred on February 25, 2019, just days before the Defendants finally abandoned this settlement posture and dismissed the case. *Id.* at ¶¶135-136.

argument is still based on the false premise that the "'acts which constitute the abuse of complained of' by Hammervold *are the issuance of process* in *Diamond Consortium v. Manookian* and *Diamond Consortium v. Hammervold*." Dkt. 27 at 3 (emphasis added). Hammervold has alleged that the Defendants conspired to abuse process in the underlying lawsuit *after* process of that lawsuit was initiated and did not terminate the acts constituting its abuse of process until February 2019. *See* Compl., Dkt. 1, ¶ 119; *see* ¶¶ 110-111, 123, 135-136, 145; *see Bossin v. Towber,* 894 S.W.2d 25, 33 (Tex. App. 14th 1994) (noting that an abuse of process claim is distinct from a malicious prosecution claim because "[i]t is critical to a cause of action for abuse of process that the process *be improperly used after it has been issued*.") (emphasis added).

### III.    Illinois Law Should be Applied to the "Special Damages" Issue.

After failing to address the choice-of-law issue in its motion to dismiss, Diamonds Direct challenges Hammervold's choice-of-law analysis in a footnote of its Reply based on a patently false factual representation and a clearly incorrect legal premise. Reply, p. 7, n. 2.

Diamonds Direct first argues that this Court should reject Hammervold's choice-of-law analysis because "[t]he fact that Hammervold *currently lives*  in Illinois is the only thing tying that state to this litigation. . . .At the time [of the underlying lawsuit], Hammervold lived in Tennessee." *Id.* This statement is patently false, as Hammervold lived in Illinois at the time of the underlying lawsuit. *See* Dkt. 23 at ¶¶ 2, 6; *see also* Second Am. Compl., Dkt. 9-7 at p. 2, ¶ 4 (adding Hammervold as a defendant and alleging "Mark Hammervold is a natural person and resident of the State of Illinois. His address is 1758 North Artesian Avenue, Chicago, Illinois 60647.").[3]

---

[3] Diamonds Direct also asks the rhetorical question: "At the time, Hammervold lived in Tennessee. Would he have that law apply if it were more favorable to him in this unique aspect?" Dkt. 27 at 7, n. 2. The answer is clearly "no," as Tennessee does not impose any "special damages" requirement for a malicious prosecution claim. *See Roberts v. Federal Express Corp.,* 842 S.W.2d 246, 247-248 (Tenn. 1992) (listing elements of a malicious prosecution claim under Tennessee law).

Diamonds Direct also objects to Hammervold's issue-specific choice-of-law analysis because "[n]one of the authority Hammervold cites stands for the proposition that the Court can mix and match *elements of the cause of action* as stated in Texas and Illinois law." Reply, p. 7, n. 2 (emphasis in original). But, Diamonds Direct is clearly wrong again. *Energy Coal S.P.A. v. Citgo Petroleum* – cited by Hammervold in Dkt. 22 at 16 – stands for this very proposition. 836 F.3d 457, 459 (5th Cir. 2016) ("the law of one state may govern one issue in the case and the law of a different state may govern another."); *see also Toyota Motor v. Cook*, 581 S.W.3d 278, 283 (Tex. App. 9th 2019) ("the laws of a single state do not necessarily govern all substantive issues; accordingly, we consider each issue separately and apply the state law having the most significant relationship to the issue."*); Ashland Oil v. Miller Oil Purchasing*, 678 F.2d 1293, 1304 (5th Cir. 1982) ("If the application of the law of one interested state would produce a different resolution of a particular issue than would the application of the law of another interested state, then this Court is bound to separately analyze that issue in order to ascertain which state has greatest concern in the determination of that issue."); *Barrett v. Ambient Pressure Diving*, 2008 U.S. Dist. LEXIS 96075, *7 (D.N.H. Nov. 17, 2008) ("While it might seem strange to apply the law of one jurisdiction to resolve liability issues, and the law of another to resolve damages claims . . . the application of different states' laws to different issues is not uncommon.") (internal citations removed).[4]

---

[4] Diamonds Direct cites Second Restatement of Conflicts of Law § 155 for the proposition that "[i]t is blackletter law that malicious prosecution and abuse of process claims are determined by the law of the state where the proceeding complained of occurred," Dkt. 27 at 7, n. 2, but Diamonds Direct fails to acknowledge that § 155 expressly qualifies that general rule with the following caveat, directly applicable here: "***unless, with respect to the particular issue***, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied" (emphasis added).

IV.     **Hammervold has Alleged the "Meeting of the Minds" Element of Conspiracy as Against Diamonds Direct.**

Diamonds Direct argues in its Reply that the principle of law reflected in *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) requires dismissal of the Hammervold's civil conspiracy claim. Diamonds Direct is wrong.

In *Parker*, the court held that "even where a conspiracy is established, wrongful acts by one member of the conspiracy that occurred before the agreement creating the conspiracy do not simply carry forward, tack on to the conspiracy, and support liability for each member of the conspiracy as to the prior acts. Rather, for conspirators to have individual liability as a result of the conspiracy, the actions agreed to by the conspirators must cause the damages claimed." *Id.* at 224. Thus, in a civil context, a defendant can only be liable for acts that occur in connection with the conspiracy that the defendant agreed to join, and not acts that occurred *before* the defendant joined the conspiracy. *See id.* This rule is reflective of a broader principle that "a party cannot be a co-conspirator without knowledge of the wrong intended to be committed." *Id.* at 223 (*citing Schlumberger Well Surveying v. Nortex Oil & Gas,* 435 S.W.2d 854, 857 (Tex. 1968)).

In *Parker,* the plaintiff (a church) alleged a conspiracy by a law firm and two lawyers (Lamb and Parker) to steal money from the church and to cover-up that theft. 514 S.W.3d at 217, 222-224. Lamb stole the money from the Church, and when Parker *thereafter* found out about it, Parker agreed with Lamb that they money should be replaced (rather than coming clean to the church). *Id.* The court found that Parker could not be liable for the original theft under a conspiracy theory and that the church was not damaged by the portion of the conspiracy to which Parker agreed (covering up the theft):

> Here the church does not reference evidence of a conspiracy between Parker and Lamb to take or spend the church's money. Rather, it points to evidence that once Parker learned that the church's money was gone, he was concerned—as he well

should have been—and he agreed with Lamb to try to replace it. The evidence that Parker conspired with Lamb to cover up the fact that the money was missing and attempt to replace it was evidence that Parker tried to mitigate the church's loss, not that he conspired to cause it. The damage to the church had already been done when Parker and Lamb agreed to cover up the theft and try to replace the money.

*Id.* at 224.

*Parker* does not stand for the proposition that a defendant can never be liable for anything based on civil conspiracy, so long as some aspect of the conspiracy occurred before that defendant became involved. The principle for which Hammervold cited *U.S. v. Ashley* – "that it is not necessary for each conspirator to have entered into the unlawful agreement at its inception" – remains generally true for both civil and criminal conspiracy. *See e.g., Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & ERISA Litig.),* 762 F. Supp. 2d 942, 971 (S.D. Tex. 2010) (citing the challenged holding from *Ashley*, 555 F.2d at 467 with approval in the civil conspiracy context). If the plaintiff in *Parker* could have shown damages attributable to Parker's joining of the conspiracy to cover-up Lamb's theft of the money (rather than only mitigation), Parker would have been liable for those damages based on conspiracy liability. 514 S.W.3d at 224.

Here, Hammervold has alleged that the Defendants abused process against him in furtherance of the specific conspiracy that Diamonds Direct knowingly and intentionally joined, and (in contrast to *Parker*) that Hammervold suffered damages due to that conspiracy *after* Diamonds Direct joined in it. Compl., Dkt. 1, ¶ 105, 109, 119, 144-147, 149-152. *Parker* is not relevant to Hammervold's claims against Diamonds Direct because Hammervold is not seeking to hold Diamonds Direct liable for conduct that occurred *before* it conspired with Blank and Diamond Doctor.[5]

---

[5] Hammervold alleges that Diamonds Direct joined the conspiracy to abuse process in October or November 2016, *after* Hammervold was sued in September 2016. Compl., Dkt. 1 at ¶¶ 100, 105, 109. As such, Hammervold has not plead his malicious prosecution claim against Diamonds Direct. *See Id.* at ¶¶ 153-161. However, Hammervold reserves the right to seek to amend his Complaint to add such a claim against Diamonds Direct based on discovery.

**V.     Hammervold has Alleged an "Illegal Overt Act" because He has Successfully Alleged his Underlying Abuse of Process Claim.**

In its motion to dismiss, Diamonds Direct initially argued that "to the extent the Court finds that Hammervold has adequately pleaded a cause of action against Diamond Doctor and Blank for abuse of process" Hammervold had still not pled a claim for civil conspiracy because he "has not alleged an *unlawful*, overt act by any defendants." Dkt. 10 at 23-24 (emphasis in original). Diamonds Direct then appeared to argue that Hammervold was required to allege that one or more conspirators committed an "illegal" criminal offense – not just conduct constituting the underlying abuse of process claim. *Id.* at 26 ("Violating ethical rules is disfavored, of course, and can lead to suspension of one's law licensed and perhaps imposition of a civil fine, but it is not unlawful.").

In its Reply, Diamonds Direct now acknowledges that "Hammervold's lead argument…that the 'unlawful overt act' element is satisfied by Hammervold's successful pleading of the underlying abuse of process intentional tort. . .*is the law of course*." Dkt. 27 at 9 (emphasis added). Thus, it is now clear that Diamonds Direct's challenge to Hammervold's pleading of an "overt illegal act" is entirely duplicative of its challenge to the sufficiency of Hammervold's pleading of his abuse of process claim.

As such, the nexus question for both Hammervold's pleading of his abuse of process claim and the "overt illegal act" element of his conspiracy claim converges into whether Hammervold has alleged a "coercive use of the process. . .to accomplish an end which was beyond the purview of the process or compelled a party to do a collateral thing which he could not be compelled to do." *Baubles & Beads v. Louis Vuitton*, 766 S.W.2d 377, 379 (Tex. App. 6th 1989). Hammervold has clearly done so because he has alleged that the Defendants conspired to abuse the process of the federal lawsuit "in order to coerce Hammervold into entering into an illegal settlement agreement, in which Hammervold [would] agree[] to never solicit or pursue claims against

[Defendants]." Compl., Dkt. 1, ¶ 147; see also ¶¶ 105, 109, 141, 145; *see Partrich v. Farber,* 448 Fed. Appx. 526, 529 (6th Cir. Aug. 24, 2011) (A settlement offer "becomes an improper use of process where the offer seeks more than objectives commonly sought by claimants who initiate similar lawsuits.").

## CONCLUSION

For the reasons in Hammervold's previous Response to the Motion to Dismiss (Dkt. 22), and the additional reasons herein, Diamonds Direct's Motion to Dismiss should be denied.

**RESPECTFULLY SUBMITTED,**

**s/Mark Hammervold**
Mark Hammervold, IL #6320744
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
**mark@hammervoldlaw.com**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2020, a true and correct copy of the foregoing filing was served upon all counsel of record via the Court's ECF system.

*/s/ Mark Hammervold*