# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| MARK HAMMERVOLD § | |
| § | |
| *Plaintiff*, § | Civil Action No.  4:20-cv-165 |
| § | Judge Mazzant |
| v. § | |
| § | |
| DAVID BLANK, DIAMOND § | |
| CONSORTIUM, INC. d/b/a THE § | |
| DIAMOND DOCTOR, and JEWELERS § | |
| MUTUAL INSURANCE CO. § | |
| § | |
| *Defendants*. § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court are: (1) Defendants David Blank and Diamond Consortium, Inc. d/b/a the Diamond Doctor's 12(b)(6) Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Dkt. #9), and (2) Jewelers Mutual Insurance Company's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #17). Having considered the motions and the relevant pleadings, the Court finds that both motions should be **GRANTED**.

### **BACKGROUND**

The present case arises out of a prior action ("underlying lawsuit").[1]  In the underlying lawsuit, Diamond Consortium, Inc. ("Diamond Consortium") and David Blank sued Brian Manookian, Brian Cummings, and Cummings Manookian, PLC (collectively, "Initial Defendants") alleging that the Initial Defendants engaged in a scheme to defame and defraud them. The allegations against the Initial Defendants were that they created a website and advertisements

---

[1] Diamond Consortium, Inc. v. Manookian, No. 4:16-cv-94 (E.D. Tex. Feb. 3, 2016).

falsely accusing Mr. Blank and Diamond Consortium of committing diamond fraud and cheating customers by over-grading diamonds. According to the allegations, the Initial Defendants had threatened lawsuits against Mr. Blank and Diamond Consortium unless they retained Cummings Manookian as counsel and paid a $25,000 retainer fee for a period of 120 months, totaling three million dollars. This retainer would conflict the Initial Defendants off of cases asserted against Mr. Blank and Diamond Consortium. The Initial Defendants were alleged to have made these retainer agreements with other jewelers as well.

On September 14, 2016, Mark Hammervold and Hammervold, PLC ("Hammervold Defendants") were added to the suit. According to Mr. Blank and Diamond Consortium, the Hammervold Defendants were necessary because the Initial Defendants would solicit clients and then refer them to the Hammervold Defendants to prosecute the case, thereby avoiding the appearance of a conflict when the Initial Defendants sought to enter retainer agreements with targeted jewelers. Based on this allegation, Mr. Blank and Diamond Consortium added the Hammervold Defendants to the lawsuit and brought claims against them for violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1926(c) ("the RICO Act") and for civil conspiracy.

The Hammervold Defendants filed a motion to dismiss for failure to state a claim, which the Court denied. The Hammervold Defendants' then-counsel additionally filed a motion to withdraw as counsel based on "limited resources" of the Hammervold Defendants and to permit the Hammervold Defendants to continue in litigation represented by Mark Hammervold, which the Court denied. The Hammervold Defendants filed a notice of appeal as to both orders on May 25, 2017 and June 6, 2017. After filing the appeal, the Hammervold Defendants filed a motion to stay the case and the Initial Defendants filed a motion to sever. The Court granted the motions on

June 27, 2017 and opened the separate case against just the Hammervold Defendants.[2] The Fifth Circuit issued opinions affirming the Court's decisions regarding the Texas Citizens Participation Act and the motion to withdraw on June 12, 2018 and August 8, 2018. The case resumed on July 16, 2018.

The Hammervold Defendants then filed a motion to withdraw and motion to proceed pro se. The Court granted the motion on January 15, 2019. On February 28, 2019, Mr. Blank and Diamond Consortium filed a voluntary notice of dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41. After conferring with the parties by e-mail on the agreement thereto, the Court granted the motion for voluntary dismissal, using the proposed order on February 28, 2019. Subsequently, on March 14, 2019, the Hammervold Defendants filed a motion to amend the judgment that the Court entered, arguing that because the judgment was silent as to fees and costs, the Court should amend it to allow reassessment of costs and attorney's fees (Dkt. #90). Additionally, on March 21, 2019, the Hammervold Defendants filed a motion for sanctions and attorneys' fees (Dkt. #94). On February 20, 2020, the Court issued a Memorandum Opinion and Order denying both motions ("Sanctions Order") (Dkt. #107).

In the Sanctions Order, after reviewing the merits of the case and the parties' conduct, the Court found that Mr. Blank and Diamond Consortium did not act in bad faith in prosecuting the underlying lawsuit; that their conduct throughout the course of the underlying lawsuit was appropriate; and that their motion practice was not duplicative or harassing (Dkt. #107).

In response to the underlying lawsuit and the Court's Sanctions Order, on February 27, 2020, Mr. Hammervold filed the above-styled action alleging malicious prosecution and abuse of process against Mr. Blank, Diamond Consortium, and Jewelers Mutual Insurance Co. ("Jewelers

---

[2] Diamond Consortium, Inc. v. Hammervold, No. 4:17-cv-452.

Mutual") (Dkt. #1). On May 1, 2020, Mr. Blank and Diamond Consortium filed a motion to dismiss (Dkt. #9). On June 1, 2020, Mr. Hammervold filed a response (Dkt. #21). On June 8, 2020, Mr. Blank and Diamond Consortium filed a reply (Dkt. #25). On June 15, 2020, Mr. Hammervold filed a sur reply (Dkt. #30).

On May 22, 2020, Jewelers Mutual filed a motion to dismiss (Dkt. #17). On June 5, 2020, Mr. Hammervold filed a response (Dkt. #24). On June 12, 2020, Jewelers Mutual filed a reply (Dkt. #29). On June 19, 2020, Mr. Hammervold filed a sur reply (Dkt. #32). [3]

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable

---

[3] On August 4, 2020, the Court denied as moot Diamonds Direct's motion to dismiss in light of its notice of settlement with Mr. Hammervold. *See* (Dkt. #37).

inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Mr. Blank, Diamond Consortium, and Jewelers Mutual ask the Court to dismiss this case on the ground that Mr. Hammervold's malicious prosecution and abuse of process claims are barred by res judicata and/or collateral estoppel. Specifically, they argue that the Court's findings and conclusions in the Sanctions Order (Dkt. #107) in the underlying lawsuit preclude Mr. Hammervold's subsequent lawsuit alleging malicious prosecution and abuse of process. For the following reasons, the Court agrees.

**I.     Choice of Law**

At the outset, the parties disagree as to the applicable substantive law. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Thus, this Court applies Texas choice of law rules. Texas courts use the "most significant relationship" test when resolving choice of law questions in tort cases. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 696 (Tex. 2002). The Court must weigh four factors, outlined in § 145 of the Restatement (Second) of Conflict of Laws, when determining which state's law applies: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145); *see also Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-CV-00483-JRG, 2019 WL 2084426, at *6 (E.D. Tex. May 13, 2019) (applying the § 145 factors).

Weighing these factors, the Court finds that Texas substantive law applies. The alleged injury—the underlying lawsuit that gave rise to the present action—occurred in federal court in Texas, as did the conduct causing the alleged injury. And the relationship between the parties, which is based on the litigation that has transpired between the parties thus far, is centered in federal court in Texas. While Mr. Hammervold apparently lives and practices law in Illinois now, this is not enough to tip the analysis in favor of applying Illinois law when the rest of the factors weigh in favor of applying Texas law. In fact, at the time the actions giving rise to Mr. Hammervold's alleged injury occurred, he lived and worked in Tennessee (Dkt. #27), not Illinois.

If anything, Texas and Tennessee have a greater connection to this litigation than Illinois; thus, the Court is unpersuaded by Mr. Hammervold's argument regarding the application of Illinois law.

Because Texas has the most significant relationship to the present litigation, the Court will apply Texas substantive law.[4]

## II.     Claims Against Defendants Mr. Blank and Diamond Consortium

In Texas, to prevail on a malicious prosecution claim, the plaintiff must show: "(1) Commencement of a . . . civil proceeding against the plaintiff at the instigation of the defendant; (2) Termination of the proceeding in favor of the plaintiff . . . ; (3) Absence of probable cause for the proceeding; (4) Malice on the part of the defendant; and (5) Damage to the plaintiff." *Mims v. Carrier Corp.*, 88 F. Supp. 2d 706, 721 (E.D. Tex. 2000) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)); *see also Airgas-Sw., Inc. v. IWS Gas & Supply of Texas, Ltd.*, 390 S.W.3d 472, 478 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

In the Sanctions Order, after considering the arguments by Mr. Hammervold, the Court found that Diamond Consortium and Mr. Blank did in fact act in good faith in prosecuting the underlying lawsuit against Mr. Hammervold. Specifically, the Court denied sanctions and/or reassessment of costs based on a finding that Diamond Consortium and Mr. Blank acted *appropriately* throughout the litigation and that they *did not* act in bad faith. So, if the Court's judgment on the Sanctions Order is entitled to preclusive effect in this action, then Mr. Hammervold would be unable as a matter of law to meet one or more of the elements of a malicious

---

[4] On top of that, § 155 of the Restatement (Second) of Conflicts of Laws has specific rules with respect to malicious prosecution and abuse of process claims, which also counsel in favor of applying Texas law. Section 155 provides that "[t]he rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 155. Because "the proceeding complained of"—the initial lawsuit brought by Mr. Blank and Diamond Consortium—occurred in Texas, Texas substantive law governs the present case.

7

prosecution cause of action. *See Mims*, 88 F. Supp. 2d at 721. Thus, the Court will turn next to the question whether the Sanctions Order is entitled to preclusive effect.

To determine the preclusive effect that the Court's Sanctions Order has on the present action, the Court applies the federal law of preclusion, which directs federal courts sitting in diversity to look to the preclusive effect that a Texas state court would give the judgment in the Sanctions Order. *See Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001) ("This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits."). Under Texas law, to establish res judicata, the defendant must show: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Barnes v. Deadrick*, 464 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

The parties' dispute about whether res judicata precludes Mr. Hammervold's malicious prosecution cause of action centers primarily around the third factor.[5] Mr. Hammervold's argument is essentially that the elements of malicious prosecution were not actually and fully litigated in his sanctions motion and resolved by the Sanctions Order. Mr. Blank and Diamond Consortium disagree, arguing that the sanctions issue and the present case raise the same claim under the transactional test.

Texas courts and the Fifth Circuit use the transactional test to determine whether two suits involve the same claim or cause of action. *Motient Corp. v. Dondero*, 269 S.W.3d 78, 83 (Tex.

---

[5] Mr. Hammervold does not argue that this Court is not one of competent jurisdiction or that the Sanctions Order, which he did *not* appeal, was not a final judgment on the merits. Indeed, this clearly is a Court of competent jurisdiction, and orders denying Rule 11 motions that are not appealed are considered final judgments on the merits for res judicata purposes. *See, e.g.*, *Prod. Supply Co., Inc. v. Fry Steel Inc.*, 74 F.3d 76, 77–78 (5th Cir. 1996).

App.—Dallas 2008, no pet.) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

> Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a transaction or series of transactions must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit confirms to the parties' expectations or business understanding or usage. . . . [T]he critical issue is not the relief granted or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts.

*Id.* (internal citations and quotation marks omitted).

Here, it is readily apparent that Mr. Hammervold's sanctions motion in the underlying lawsuit and the complaint in the present lawsuit arise out of the same nucleus of operative fact. Indeed, it was Mr. Blank's and Diamond Consortium's conduct in the underlying lawsuit that compelled Mr. Hammervold to seek sanctions and reassessment of costs against them. And that very same conduct gave rise to the present cause of action for malicious prosecution. A comparison of Mr. Hammervold's motions for sanctions and for reassessment of costs and his complaint in the present lawsuit illustrates as much. There is no meaningful distinction between the facts underlying his Rule 11, 41(a)(2), and 59(e) motions and the facts underlying this cause of action; they share the same nucleus of operative fact and are part of the same "transaction or series of transactions." After considering all that conduct, the Court concluded that there was no bad faith and that Mr. Blank's and Diamond Consortium's prosecution of the underlying lawsuit was appropriate. In the Court's view, this is res judicata on Mr. Hammervold's malicious prosecution claim.

First, based on the Sanctions Order, Mr. Hammervold would be unable as a matter of law to meet the third element of a malicious prosecution claim: absence of probable cause for the

proceeding. "The existence of probable cause for a claim of malicious prosecution is determined as of the time that the charges are brought." *Mims*, 88 F. Supp. 2d at 721; *see generally Rios v. United States*, 364 U.S. 253, 261 (1960); *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). "The Texas Supreme Court has held that there is always a presumption that the defendant acted reasonably and in good faith, and *therefore* had probable cause, unless the plaintiff produces evidence that the grounds, motives, and evidence upon which the defendant acted upon were not probable cause to commence proceedings." *Mims*, 88 F. Supp. 2d at 721 (citing *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex. 1983)) (emphasis added). The Court found, and Mr. Hammervold was unable to contradict, that Mr. Blank and Diamond Consortium brought the underlying lawsuit in good faith. Therefore, there was probable cause, and Mr. Hammervold is precluded on this ground from pursuing a malicious prosecution cause of action here.

Second, based on the Sanctions Order, Mr. Hammervold would be unable as a matter of law to meet the fourth element of a malicious prosecution claim: malice on the part of the defendant. In Texas, malice is defined as "ill will, evil motive, or such gross indifference or reckless disregard for the rights of others as to amount to a willful and wanton act." *Dahl v. Akin*, 645 S.W.2d 506, 515 (Tex. App.—Amarillo 1982), *reversed on other grounds*, 661 S.W.2d 917 (Tex. 1983). While bad faith in the context of a malicious prosecution claim is not precisely defined under Texas law, there is at least some commentary likening it to malice. *See, e.g.*, *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) (Alito, J., dissenting on other grounds) ("[S]ubjective bad faith, *i.e., malice*, is the core element of a malicious prosecution claim . . . .") (emphasis added). In any event, the Court is persuaded that bad faith in this context is *no worse than* malice. Meaning, of course, that the Court's finding of no bad faith in the Sanctions Order would preclude a finding of malice for purposes of a malicious prosecution claim. Accordingly,

Mr. Hammervold is precluded on this ground from pursing a malicious prosecution cause of action here.

The same goes for Mr. Hammervold's abuse of process cause of action. In Texas, to prevail on an abuse of process claim, the plaintiff must show: "(1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act." *Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

For the same reasons as discussed above, based on the Court's findings and conclusions in the Sanctions Order, Mr. Hammervold would be unable to establish the first element of an abuse of process claim—that the defendant made an illegal, improper, or perverted use of the process. Because Mr. Hammervold's abuse of process claim arises from the same nucleus of operative fact as his sanctions motion in the initial lawsuit, the Court's findings and conclusions in the Sanctions Order—namely, that Mr. Blank and Diamond Consortium acted appropriately in prosecuting their initial case and did not act in bad faith—precludes his present claim that they abused the process.

Accordingly, the Court dismisses Mr. Hammervold's claims of malicious prosecution and abuse of process against Mr. Blank and Diamond Consortium.

### III. Claims Against Jewelers Mutual

Mr. Hammervold also brings malicious prosecution and abuse of process claims against Jewelers Mutual. Jewelers Mutual was not a party to the underlying lawsuit; however, in the complaint initiating the present lawsuit, Mr. Hammervold pleaded essentially that Jewelers Mutual directed or controlled the underlying lawsuit by insisting that Mr. Hammervold be named as a defendant in the initial lawsuit and by aiding, abetting, encouraging, supporting, and financing

"the prosecution of Hammervold by paying attorneys to affirmatively prosecute those claims, even though their insurance agreement . . . would not and should not have covered Jewelers Mutual pursuing claims against [Mr. Hammervold]" (Dkt. #1 at pp. 34–35). On that basis, Jewelers Mutual claims that they were in privity with Mr. Blank and Diamond Consortium in the underlying lawsuit and, therefore, that the preclusive effect of the Court's Sanctions Order extends to them for purposes of the causes of action in the present lawsuit. Unfortunately, Mr. Hammervold does not discuss the privity element of res judicata either in his response or his sur reply to Jewelers Mutual's motion to dismiss.

The Fifth Circuit recognizes privity as a broad concept, and it looks "to the surrounding circumstances" to determine whether privity exists and whether claim preclusion is justified. *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). Privity is merely the "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Sw. Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977). "In short, parties which are sufficiently related to merit the application of claim preclusion are in privity." *Russell*, 962 F.2d at 1174. "[The] analysis is particularly fact-based, and hinges upon [Jewelers Mutual's] precise relationship to [Mr. Blank and Diamond Consortium]." *See id.*

It is noteworthy here that Mr. Hammervold essentially *pleads* privity between Jewelers Mutual and Mr. Blank and Diamond Consortium. Mr. Hammervold's complaint and motions indicate that Jewelers Mutual, Diamond Consortium, and Mr. Blank acted of one mind in prosecuting the underlying lawsuit—with Diamond Consortium and Mr. Blank filing the suit itself, and Jewelers Mutual aiding, abetting, encouraging, supporting, and financing the same. It is,

therefore, unsurprising that Mr. Hammervold does not contest Jewelers Mutual's assertion of privity—that is effectively his theory of the case.

Accordingly, based on the complaint and motions, the Court is of the opinion that Diamond Consortium and Mr. Blank and Jewelers Mutual are "sufficiently related to merit the application of claim preclusion." *See Russell*, 962 F.2d at 1174. The underlying lawsuit was brought at the collective behest of Diamond Consortium, Mr. Blank, and Jewelers Mutual; they are one and the same for purposes of who is responsible for prosecuting the underlying lawsuit. It would make little sense to hold that the Sanctions Order precludes Mr. Hammervold's ability to bring a malicious prosecution and abuse of process claim against Diamond Consortium and Mr. Blank while holding that he can bring those claims, based on the same underlying conduct, against Jewelers Mutual. Accordingly, the Court dismisses Mr. Hammervold's claims of malicious prosecution and abuse of process against Jewelers Mutual.[6]

## IV. Civil Conspiracy Claim

Finally, Mr. Hammervold brings a civil conspiracy claim against Mr. Blank and Diamond Consortium and against Jewelers Mutual. As all Defendants have correctly observed, civil conspiracy is a derivative tort under Texas law. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Because Mr. Hammervold has failed "to state a separate underlying claim on which the court may grant relief, [his] claim for civil conspiracy necessarily fails." *See id.* Accordingly, the Court dismisses Mr.

---

[6] The Court's usual practice is to give parties leave to amend their complaint before dismissing for failure to state a claim unless doing so would be futile. Mr. Hammervold did not request leave to amend his complaint on issues the Court found dispositive, and the Court is of the opinion that even if he had, doing so would be futile. For the reasons discussed, *supra*, any effort by Mr. Hammervold to amend his complaint to avoid the privity issue would be fatal to his malicious prosecution claim since it is only because of privity between Jewelers Mutual and Diamond Consortium and Mr. Blank that Mr. Hammervold even has a claim of malicious prosecution against Jewelers Mutual in the first place.

Hammervold's claim of civil conspiracy against Mr. Blank, Diamond Consortium, and Jewelers Mutual.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that: (1) Defendants David Blank and Diamond Consortium, Inc. d/b/a the Diamond Doctor's 12(b)(6) Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Dkt. #9), and (2) Jewelers Mutual Insurance Company's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #17) are **GRANTED**.

The Clerk is directed to terminate Diamond Consortium Inc. d/b/a the Diamond Doctor, David Blank, and Jewelers Mutual Insurance Company as parties to this case.

**IT IS SO ORDERED.**
**SIGNED this 6th day of August, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE